## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF AIRPORT AUTHORITIES AND (II) GRANTING RELATED RELIEF THERETO

The debtors and debtors in possession (collectively, the "**Debtors**," and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**") for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") and a final order substantially in the form attached hereto as **Exhibit B** (the "**Final Order**," and together with the Interim Order, the "**Orders**") granting the relief described below.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Jamere Jackson in Support of Debtors' Petitions and Requests for First Day Relief* (the "**First Day Declaration**"),[2] filed concurrently herewith.  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

---

[1]     The last four digits of The Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928.  Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2]     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## RELIEF REQUESTED

1.      By this Motion, pursuant to sections 105(a), 363(b), and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of the Interim Order and the Final Order authorizing, but not directing, the Debtors to honor certain prepetition obligations (the "**Airport Authority Claims**") owed to airport operators in the United States and Canada (the "**Airport Authorities**"), which are generally governmental bodies, boards, or authorities.

2.      Additionally, the Debtors request that the Orders (a) authorize all applicable banks and other financial institutions (collectively, the "**Banks**"), when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), made in connection with the Airport Authority Claims, whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors; (b) authorize the Banks to rely on any directions and representations of the Debtors as to which Payments are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors; (c) authorize, but not direct, the Debtors to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may be inadvertently dishonored or rejected; and (d) authorize, but not direct, the Debtors to continue in the ordinary course to make Payments on account of the Airport Authority Claims.

2

3.      In addition, the Debtors request that the Court schedule a final hearing (the "**Final Hearing**")[3] to consider the relief requested herein on a final basis and entry of the Final Order.

4.      For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

5.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6.      The predicates for the relief requested by this Motion are sections 105(a), 363(b), and 503 of the Bankruptcy Code, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

---

[3]      The period between the date this Motion was filed and the Final Hearing is referred to herein as the "**Interim Period**."  The Debtors estimate that the Interim Period will last thirty (30) days where such an estimate is required for the purposes of the relief requested herein.

3

## BACKGROUND

### I.   Overview

8.      On May 22, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

9.      The Company is a leading provider of vehicle rentals around the world, serving customers under the Hertz, Dollar, Thrifty, and Firefly brands.  The Company and its franchisees operate a total of more than 10,000 locations across North America, Europe, Latin America, Africa, Asia, Australia, the Caribbean, the Middle East and New Zealand.  Hertz's motto, "we're here to get you there," reflects the Company's fundamental function: to help its customers move about and explore, whether close to home or on the other side of the globe.

10.      In addition to their vehicle rental businesses, the Debtors offer leasing and fleet management services in the United States and Canada through Debtor Donlen Corporation ("**Donlen**") and certain of its subsidiaries.  Donlen provides a variety of fleet services to North American companies that operate vehicle fleets of all different sizes, allowing customers to focus on their core businesses while Donlen helps them achieve efficiencies in their fleet operations.

11.      With air travel at record levels in 2018 and 2019, the Company was prospering.  It reported adjusted corporate EBITDA of $433 million and $649 million in those years,

4

respectively, and, through the end of 2019, achieved ten consecutive quarters of year-over-year revenue growth.  In March of 2020, however, the Company's business was acutely impacted by reductions in travel and restrictions on movement brought about by the coronavirus pandemic.  Whether voluntarily or by government mandate, the air travelers the Company serves largely stopped flying and its local customers largely stopped driving.  The effect on the Company's revenue was devastating.

12.     At the same time, the crisis subjected the Company to unanticipated demands on its cash reserves.  A sharp and unexpected reduction in used car values precipitated by the coronavirus crisis burdened the Company with a substantial cash payment due April 27, 2020 in connection with its primary U.S. rental fleet financing arrangement.  The Company elected not to consume its precious liquidity and did not make that payment.  A short forbearance and waiver period allowed the Company to reach accords with creditors in Europe and Australia on additional temporary or permanent waivers.  However, it failed to yield a longer-term solution with the Company's primary U.S. and Canadian creditor groups.  Accordingly, the Debtors commenced these Chapter 11 Cases with the goals of stabilizing their operations, assessing their options, and charting a course for a strong future.

13.     Additional background and information regarding the Company, including its business operations, its corporate and capital structure, its restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## II.     The Airport Authorities

14.     The Company's airport locations are the backbone of their domestic and foreign vehicle rental business.  The Company derives the majority of its revenue from these airport

locations.  Indeed, in 2019, 66% of the Company's domestic revenue and 56% of its international

revenue was generated from their airport business segment.  Accordingly, the Debtors' contracts

with Airport Authorities are crucially important to the Debtors' overall business and success.

A.    **The Airport Authority Claims**

15.    Through this motion, the Debtors seek authority to pay prepetition amounts owed

to Airport Authorities on account of Concession Fees, CFCs, and ConRAC Charges (each

defined and described in greater detail below) on an interim and final basis, as follows:

| Category | Estimated Amount To Be Paid Within Interim Period (in millions) | Total Estimated Amount To Be Paid (in millions) |
|---|---|---|
| **Concession Fees** | $3.9 | $6.9 |
| **CFCs** | $3.6 | $3.6 |
| **ConRAC Charges** | $1.4 | $1.4 |
| **Totals:** | **$8.9** | **$11.9** |

B.    **Concession Agreements**

16.    In order to operate at airport locations, the Debtors must enter into concession

agreements (the "**Concession Agreements**") with the relevant Airport Authority.  Concession

Agreements typically grant Debtors a non-exclusive right to operate a car rental concession at a

particular airport in exchange for payment of certain fees, charges, and rents.  Concession

Agreements typically have one to thirty year terms.  Most Concession Agreements provide for a

competitive bidding process upon renewal, while a minority are subject to a negotiated renewal

process.  Of the Debtors' top 200 Concession Agreements, approximately thirty will be up for

renewal within the next twelve months or are operating on a month-to-month basis as of the

Petition Date.

6

17.     Where renewal is accomplished through a competitive bidding process, the Airport Authority generally calls for requests for proposal, requests for quotes, or other bid solicitation from rental vehicle companies.  The Airport Authority then evaluates the bids and the standing of the bidders and allocates limited airport locations to the winners.  Notably, even among the winning bidders, Airport Authorities assign the most desirable (and profitable) locations to the highest, most favored bid.  For example, a top bidder might succeed in securing the location closest to incoming customer traffic as compared to its competitors, thereby giving it a substantial competitive advantage.  Airport Authorities that engage in competitive bidding processes typically require bidders to be in good standing with respect to their Concession Fees and CFCs (each as defined below) to participate in bidding.  Airport Authorities also look unfavorably upon past defaults, which, in any event, the Debtors would be required to cure in order to secure renewal of their Concession Agreements.  Although the Debtors intend to take full advantage of the protections of Section 525(a) of the Bankruptcy Code (preventing government units like Airport Authorities from refusing to renew a grant based on the Debtors' failure to make a payment on a dischargeable claim), there is a risk that Airport Authorities may act in a manner contrary to section 525(a) in the renewal or renegotiation processes.

C.     **Obligations Owed Under Concession Agreements**

1.     **Concession Fees and Customer Facilities Charges**

18.     The Debtors' primary obligations under concession agreements consist of certain fees that are based upon a specified percentage (typically 10%) of the revenue the Debtors generate at the airport.  Those fees are generally charged directly to rental customers and passed on to airports (the "**Concession Fees**"). The Concession Fees are subject to a minimum annual guarantee ("**MAG**"), which the Debtors are required to pay regardless of the revenue generated

7

by a concession.  The Debtors are generally required to make a MAG payment in the relevant pro-rata monthly amount on the first of each month, with any Concession Fees over that amount to be remitted at a later date.   As discussed in more detail below, the Debtors have accrued significant outstanding MAG obligations as a result of the steep drop in airport revenue caused by the coronavirus pandemic.  The Debtors' airport concessions have not generated sufficient revenue to cover the MAG.  As discussed below, the Debtors are not seeking authority to pay such outstanding MAG payments pursuant to this Motion.

19.     In addition to Concession Fees, the Debtors are obligated to pay Airport Authorities certain customer facilities charges ("**CFCs**"), which are instituted by ordinance and required under the Concession Agreements.  CFCs are used to fund airport facility projects, including improvements to shared facilities and services for the benefit of the rental car industry. The Airport Authorities also use CFCs collected from rental car companies to service municipal bonds that they issue to support facility projects.  CFCs may only be waived if all bondholders vote in favor of doing so.

20.     The terms of the Debtors' Concession Agreements—and in the case of CFCs, the applicable ordinance—typically contemplate that the Debtors will seek reimbursement from customers for Concession Fees and CFCs.  Where applicable Concession Agreements and ordinances permit and contemplate that rental car companies will seek reimbursement from their customers for Concession Fees and CFCs, as is the case in all or almost all instances, the Debtors do so.  As such, the prepetition Concession Fees and CFCs owed are pass through fees collected from customers and held for the relevant Airport Authority.

8

2.    ConRACs and ConRAC Charges

21.     In addition to traditional concessions arrangements, a growing number of larger airports are building consolidated rental car facilities ("**ConRACs**") to alleviate congestion at airports.  ConRACs streamline the car rental process and provide common services, such as shuttle service, for the customers of participating vehicle rental car companies.  The centralized nature of ConRACs gives customers a common experience and benefits all rental car brands operating at an airport, while reducing some the competitive advantages among brands.  As with all airport arrangements, maintaining their position at these facilities is a rental car company's only way to bring in customers from that given airport.

22.     At ConRACs, the Debtors are required to pay a pro rata share of monthly operational expenses ("**ConRAC Charges**"), including for standard operations and maintenance of ConRAC common areas and customer transportation.  ConRACs are generally thinly collateralized and failing to pay one installment of ConRAC Charges would likely harm the enterprise and thereby the Debtors.  Moreover, Airport Authorities strictly enforce ConRAC Charges and have been known to remove rental car companies for missing payments. Additionally, the Debtors typically enter into separate joint ventures with the other rental car companies that operate at a given ConRAC.  In this highly competitive airport setting, it is important that the Debtors maintain their share of the upkeep of ConRAC Charges in order to maintain the facility and their ability to operate there.  Finally, the Debtors' outstanding prepetition ConRAC Charges are relatively small (only $1.4 million of the $11.9 million the Debtors seek to pay), and therefore the cost is relatively modest compared to the benefit to the Debtors by ensuring continued operations at these historically profitable locations.

AMERICAS 102856860
RLF1 23473713v.1

### 3.    MAG Payments and Other Rent

23.    As described in more detail in the First Day Declaration, the COVID-19 crisis and stay-at-home orders issued in response have virtually halted air travel.  Indeed, TSA data shows that the number of travelers that passed through airport security checkpoints decreased by 94% from March 1, 2020 to April 1, 2020.[4]  Daily passenger volume has remained at a small fraction of historical numbers through to the Petition Date.  Due to the substantial reduction in air travel and business at airport locations as a result of the coronavirus pandemic, fees collected from customers have fallen far short of pro-rated monthly MAG amounts.  As such, the Debtors are required to make up more of the difference than usual from sources other than collecting Concession Fees from rental receipts.  This deficit has resulted in significant MAG obligations accruing during these slow months.

24.    The Debtors have negotiated (or have been attempting to negotiate) reductions in their outstanding MAG payments leading up to the Petition Date.  As of the Petition Date, over half of the Airport Authorities have temporarily deferred or altogether abated MAG obligations in light of the pandemic.  To the extent the Debtors are not able to make up for slow months by collecting greater than usual monthly revenues from customers once the impacts of the pandemic have subsided or renegotiate their agreements with applicable airports, the Debtors will owe substantial prepetition obligations to Airport Authorities on account of deferred MAG payments.  The Debtors estimate that $23.1 million in outstanding prepetition MAG payments have been deferred.  In addition, the Debtors failed to make many of their monthly MAG payments or other rent payments for the months of March, April, and/or May that have not been deferred.  The

---

[4]    *TSA checkpoint travel numbers for 2020 and 2019*, TSA  https://www.tsa.gov/coronavirus/passenger-throughput.

AMERICAS 102856860
RLF1 23473713v.1

Debtors estimate that they owe $25.1 million for such MAG payments and other outstanding rent payments not classified as Concession Fees, CFCs, or ConRAC Charges to Airport Authorities. At this time, the Debtors are not seeking authority to pay any of the $23.1 million in deferred obligations owed to Airport Authorities or the additional $25.1 million in outstanding MAG payments and other rent, though the Debtors recognize that they may later seek to cure some such amounts as needed in connection with assumption of certain Concession Agreements and reserve the right to amend the final relief sought herein to include a portion of such amounts.

> **D.**    **Letters of Credit and Other Security for the Debtors' Obligations Under Concession Agreements**

25.    Most Airport Authorities require that the Debtors post letters of credit or other security to backstop their obligations to pay Concession Fees (the "**Letters of Credit**").  Letters of Credit are generally renewed on an annual basis.  The Letters of Credit with respect to the Airport Authorities are issued predominately in connection with the Debtors' L/C Facility (as defined in the First Day Declaration).  The L/C Facility is secured by Senior Secured Debt Collateral (as defined in the First Day Declaration).  In some cases the Debtors' obligations are backstopped by the ALOC Facility (as defined in the First Day Declaration). Additionally, in some cases the Debtors' obligations under the Concession Agreements are secured by bonds ("**Bonds**") or cash deposits ("**Deposits**").  By this Motion the Debtors seek authorization to replace Letters of Credit and Bonds securing their obligations under the Concession Agreement as needed in the ordinary course of business.

> **E.**    **The Debtors Seek Authority to Pay Prepetition Concession Fees, CFCs, and ConRAC Charges Owed to Airport Authorities**

26.    For the reasons detailed above and further below, timely payment of Concession Fees, CFCs, and ConRAC Charges is essential to ensure the Debtors' the ability to continue to

AMERICAS 102856860
RLF1 23473713v.1

operate at crucial airport locations into the future without disruption.  The failure to pay these fees could have a substantial negative impact on the Debtors' business.  As such, payment of such prepetition fees and charges is appropriate and necessary to maintain the going concern of the Debtors' business.  The Debtors request authority, but not direction, to pay prepetition amounts owed to Airport Authorities on account of Concession Fees, CFCs, and ConRAC Charges and reserve the right to amend their final relief to include a portion of their other outstanding Airport Authority obligations on a final basis only.

## BASIS FOR RELIEF

### I.    Payment of Airport Authority Claims Is Authorized by the Bankruptcy Code

27.    The Court may authorize the Debtors' payment of the Airport Authority Claims pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) authorizes courts, after notice and hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  *See* 11 U.S.C. § 363(b)(1); *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay prepetition wages and stating, "[s]ection 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances"); *In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  For a court to apply section 363(b), the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ."  *In re Ionosphere Clubs*, 98 B.R. at 175 (ruling that debtor's payment of prepetition claims was necessary to protect its business and to ensure successful reorganization); *Stanziale v. Nachtomi* (*In re Tower*

12

*Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").  Once a debtor has articulated a valid business justification, the business judgment rule is applied to the Debtors' decision. *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

28.    As discussed above, the Debtors believe that their ability to continue to operate at their many airport locations without disruption is crucial to the overall success of their reorganization.  Failure to pay the Airport Authority Claims would have a material adverse impact on the day-to-day operations of the business and would very likely disrupt the Debtors' ability to continue to rent vehicles during the Chapter 11 Cases from key locations.

29.    Moreover, section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R at 175.  "Under 11 U.S.C. § 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).  For the reasons described above and in light of the Debtors' need to preserve the going concern value of their businesses, the relief requested in this Motion is proper and should be granted.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) (noting that courts are authorized to approve orders allowing payment of prepetition claims because it is necessary for the debtors to have a successful reorganization).

13

30.      The paramount goal of the parties in interest during these Chapter 11 Cases is protecting the value of the Debtors' business by avoiding damaging operational disruptions.  The maintenance of the Debtors' businesses during these Chapter 11 Cases is crucial to the Debtors' ability to preserve their business as a going concern, which provides enhanced value for the benefit of all of the Debtors' stakeholders.  The Debtors are also not seeking authority to pay all Airport Authority Claims immediately, but only to pay undisputed amounts on account of particular types of fees and charges as they come due on terms consistent with prepetition practice.  Indeed, at this time, the Debtors are not seeking authority to pay any of the approximately $50 million in outstanding MAG payments and other rent that they currently owe to Airport Authorities.  Thus, the Debtors believe the relief requested is narrowly tailored to and consistent with the paramount goal of chapter 11 to preserve value by "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs*, 98 B.R. at 176.

31.      In addition to using the Court's equitable powers under section 105(a), the Court may also rely on the "doctrine of necessity."  The doctrine of necessity is a well-established doctrine that permits a court to authorize the payment of certain pre-plan prepetition claims when payment is necessary to the continued operations of a debtor's business and restructuring efforts. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that court may authorize payment of prepetition claims if such payment is essential to continued operation of debtor); *In re Ionosphere Clubs*, 98 B.R. at 176 (recognizing that the doctrine of necessity is derived from "the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where a debtor

14

"cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment).

32.     Here, the relief sought is vital for the Debtors' successful reorganization.  If the Debtors cannot pay the Airport Authorities for Concession Fees, CFCs, and ConRAC charges, the negative impact would likely be almost as immediate.  The Debtors' already strained relationships with Airport Authorities could further deteriorate and they may attempt to take action to restrict the Debtors operations at their facilities.  Further, with a number of Concession Agreements up for renewal in the near term, there is a real risk that the Debtors could quickly lose the ability to operate at these facilities altogether if they miss prepetition payments.  This is especially true since, given the impacts of the coronavirus pandemic, airports are depending on revenue from rental car companies now more than ever.  Although the Debtors are aware of and intend to fully utilize the protections afforded them under section 525(a) of the Bankruptcy Code,[5] there is a risk that Airport Authorities may act in a manner contrary to section 525(a) and allow the Debtors' failure to pay their prepetition claims to affect their evaluation of bids or renewal.  Even if the Debtors sought relief for violation of section 525(a) in the event an Airport Authority retaliates against a missed payment by restricting the Debtors' Concession Agreements or failing to select their bid upon renewal, recourse available for the disruption would likely be less valuable than avoiding the disruption to begin with.  This is especially true given how crucial the Debtors' airport locations are to their overall operations.

33.     Crucially, if the Debtors compromise their ability to operate at airports by failing to make a payment, there are no alternatives.  Airport Authorities are the only source of

---

[5]     Section 525(a) provides that governmental units "may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant" on the basis of a debtor's chapter 11 filing or failure to pay a debt that is dischargeable in the case.  11 U.S.C. § 525(a).

AMERICAS 102856860
RLF1 23473713v.1

arrangement for the Debtors to operate at the key airport locations that generate most of their revenue.   As such, particular care must be given to maintain these relationships.

34.    Accordingly, the Debtors have concluded that if they do not pay the Airport Authorities for the certain fees and charges specified herein, the value of their business will be reduced by amounts in excess of the amounts that the Debtors seek authorization to pay.   As such, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the doctrine of necessity, the Debtors respectfully request that the Court grant the relief requested herein.

35.    This Court has specifically granted debtors authority to pay prepetition claims owed to Airport Authorities in another large rental car company's chapter 11 proceedings.   *In re Budget Grp., Inc.*, No. 02-12152 (MFW) (Bankr. D. Del. August 20, 2002) (D.I. 229).

## II.    Airport Authorities May Assert that Certain of the Airport Authority Claims are Trust Fund Obligations

36.    As noted above, the outstanding Concession Fees and CFCs are collected from customers as a charge on their rental and passed on to the relevant Airport Authority pursuant to the terms of the parties' Concession Agreement and relevant ordinances, as applicable.   As such, Airport Authorities may argue that such Concession Fees and CFCs constitute so-called "trust fund" obligations.   Trust fund obligations are obligations required to be collected from third parties and held in trust for payment to an authority.[6]   *See Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc.* (*In re Columbia Gas Sys. Inc.*), 997 F.2d 1039, 1056 (3d Cir. 1993) ("Federal common law imposes a trust when an entity acts as a conduit, collecting money from one source and forwarding it to its intended recipient.").

---

[6]    Nothing herein should be construed as an admission that the Concession Fees or CFCs are trust fund obligations.

16

37.     Trust fund obligations are not property of a Debtor's estate within the meaning of section 541 of the Bankruptcy Code.  *See Begier v. IRS*, 496 U.S. 53, 55-67 (1990) (holding that taxes such as excise taxes and withholding taxes are property held by debtor in trust for another and, as such, do not constitute property of estate); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors); *Shipley Co. v. Darr* (*In re Tap, Inc.*), 52 B.R. 271, 278 (Bankr. D. Mass. 1985) (funds paid by employer to debtor for payment of employer's federal taxes were returnable to employer and not part of debtor's estate).

38.     Here, the Concession Fees and CFCs are collected from customers with the purpose of passing them on to Airport Authorities pursuant to the Concession Agreements and applicable ordinances.  Indeed, Concession Fees and CFCs are typically even listed on customer receipts as separate line items.  Accordingly, the Airport Authorities may argue the Debtors are required to pay prepetition Concession Fees and CFCs to them notwithstanding other provisions of the Bankruptcy Code.  Although the Debtors would challenge such a contention and even if the Airport Authorities do not ultimately succeed, the burden and expense of the fight and the lasting impact on the Debtors' relationship with Airport Authorities would likely cause more disruption to the Debtors' estates than simply paying the Concession Fees and CFCs fees in the first instance.  As such, the Debtors respectfully request authority to pay the Airport Authorities for prepetition Concession Fees and CFCs, which make up the bulk of the overall Airport Authority Claims.

17

III.    **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Electronic Fund Transfers**

39.    The Debtors also request that all applicable banks and other financial institutions be authorized, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all Payments made by the Debtors related to the Airport Authority Claims, so long as sufficient funds are available in the applicable accounts to make the Payments.

40.    To stabilize the Company's operations, and to smoothly transition into chapter 11, it is imperative that the Debtors normalize their business.  Failure to do so would result in extremely adverse business effects.  Under the Debtors' existing cash management system, the Debtors represent that wire and other electronic bank transfer requests can be readily identified as relating to an authorized payment made on account of Airport Authority Claims. Accordingly, the Debtors believe that unauthorized wire and electronic bank transfer requests will not be honored inadvertently and that all applicable financial institutions may rely on the representations of the Debtors as to which wire or electronic bank transfers are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## RESERVATION OF RIGHTS

41.    The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's

18

rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor, interest holder, or otherwise affected party; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Motion; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Further, and without limiting the generality of the foregoing, (y) the Debtors expressly reserve all of their rights to contest any Airport Authority Claims, and (z) if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not and should not be construed as an admission as to the validity of any Airport Authority Claims or as a waiver of the Debtors' rights to subsequently dispute such claims.

### IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

42.    For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition Date, it must establish that such payments satisfy the requirements mandated by Bankruptcy Rule 6003—namely, that the relief requested is necessary to avoid "immediate and irreparable harm."  Immediate and irreparable harm exists when, absent the requested relief, a debtor's prospect of reorganizing is threatened or a swift diminution in the value of the debtor's estate is likely.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate irreparable harm" exists where loss of the business threatens ability to reorganize).  The Third Circuit has interpreted the language "immediate irreparable injury" in the

19

context of preliminary injunctions and has instructed that irreparable injury is a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

43.     Here, as more fully detailed above, immediate and irreparable harm would result without the relief requested herein because failure to pay the Airport Authorities could result in restricting or otherwise disrupting the Debtors' operations at their most prime locations. This needless disruption to the Debtors' business and added risk to the success of their operations can be avoided if the Debtors are permitted to pay Airport Authorities in the ordinary course as their claims become due during the Interim Period. For these reasons, the Debtors submit that the relief requested in the Orders is essential to prevent immediate and irreparable harm to the Debtors' operations and preserve the ongoing value of the Debtors' business and thus stakeholder recoveries.

## **WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

44.     To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rule 6004(a) are met and (y) the 14-day stay under Bankruptcy Rule 6004(h) is waived. Such waiver is warranted here because payment of the Airport Authority Claims is essential to prevent potentially irreparable harm to the Debtors' business, value, and ability to reorganize.

20

## NOTICE

45.     Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) the U.S. Notes Agent; (iii) the Senior Credit Agreement Agent; (iv) the administrative agent under the ALOC Facility; (v) the successor trustee under the Promissory Notes; (vi) the U.S. ABS Agent; (vii) the indenture trustee under the HFLF ABS Notes; (viii) the administrative agent and collateral agent under the U.S. Vehicle RCF; (ix) the indenture trustee under the European Vehicle Notes; (x) the administrative agent and collateral agent under the European ABS Notes; (xi) the indenture trustee and collateral agent under the Hertz Canadian Securitization Notes; (xii) the lender under the Donlen Canada Securitization Program; (xiii) the administrative agent and the security trustee under the Australian Securitization Notes; (xiv) the lender under the New Zealand RCF; (xv) the lender under the U.K. Financing Facility; (xvi) holders of the fifty (50) largest unsecured claims against the Debtors (on a consolidated basis); (xvii) the Internal Revenue Service; (xviii) the Securities and Exchange Commission; (xix) the United States Attorney for the District of Delaware; (xx) any such other party entitled to notice pursuant to Local Rule 9013-1(m); (xxi) the state attorneys general for all states in which the Debtors conduct business; and (xxii) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

46.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

AMERICAS 102856860
RLF1 23473713v.1

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court grant the relief requested in this Motion, the Interim Order, the Final Order, and such other

and further relief as is just and proper.

Dated: May 24, 2020

*/s/ Mark D. Collins*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Brett M. Haywood (No. 6166)
Christopher M. De Lillo (No. 6355)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Collins@rlf.com
Knight@rlf.com
Haywood@rlf.com
DeLillo@rlf.com
Noble@rlf.com

—and—

**WHITE & CASE LLP**

Thomas E. Lauria (*pro hac vice* pending)
Matthew C. Brown (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:      (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (*pro hac vice* pending)
David M. Turetsky (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone:      (212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com

Jason N. Zakia (*pro hac vice* pending)
111 South Wacker Drive
Chicago, IL 60606
Telephone:      (312) 881-5400
jzakia@whitecase.com

AMERICAS 102856860
RLF1 23473713v.1

Ronald K. Gorsich (*pro hac vice* pending)
Aaron Colodny (*pro hac vice* pending)
Andrew Mackintosh (*pro hac vice* pending)
Doah Kim (*pro hac vice* pending)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:     (213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
amackintosh@whitecase.com
doah.kim@whitecase.com

*Proposed Co-Counsel to the Debtors and
Debtors-in-Possession*

23

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
|  | Case No. 20-11218 (MFW) |
| The Hertz Corporation, *et al.*,[1] | (Joint Administration Requested) |
| Debtors. | **Re: Docket No. _____** |

### INTERIM ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF AIRPORT AUTHORITIES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Interim Order**") pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, authorizing, but not directing, the Debtors to pay the prepetition Airport Authorities Claims in the ordinary course of business, all as more fully set forth in the Motion; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District for the District of Delaware, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local

---

[1]    The last four digits of The Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928.  Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Rules, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First Day Declaration; and the record of the Hearing; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, in the reasonable exercise of their business judgment, to pay, in the ordinary course of business, some or all of the prepetition Airport Authority Claims to the Airport Authorities; *provided* that the Debtors are authorized, but not directed, to pay only amounts due and payable as of the Petition Date and amounts that are or become due and payable between the Petition Date and the date that a final order on the Motion is entered, in an amount not to exceed $8.9 million, unless otherwise ordered by this Court.

3.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to renew and replace all bonds or letters of credit supporting any obligations owed to Airport Authorities in the ordinary course of business.

4.      Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider

AMERICAS 102856860
RLF1 23473713v.1

entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

5.　　The Debtors are authorized to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Interim Order.

6.　　All applicable banks and financial institutions (collectively, the "**Banks**") are authorized, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "**Payments**"), on account of the Airport Authorities Claims, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors.

7.　　Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Airport Authorities Claims pursuant to the Motion and this Interim Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Interim Order.

8.　　The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

9.　　Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of

3

any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor, interest holder, or otherwise affected party (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party subject to this Interim Order, (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Interim Order nor any payment of any Airport Authorities Claims pursuant to this Interim Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Airport Authorities Claims allegedly due or owing to any Airport Authority, and all of the Debtors' rights with respect thereto are hereby reserved.

10.    The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

11.    Under the circumstances, the notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

12.    This Interim Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

13.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

AMERICAS 102856860
RLF1 23473713v.1

14.     The deadline by which objections to entry of a final order on the Motion must be filed is _____, 2020 at ____ __.m. (Eastern Time) (the "**Objection Deadline**"). The Final Hearing, if required, will be held on _____, 2020 at ____ __.m. (Eastern Time).

Dated: _____, 2020
       Wilmington, Delaware


                                            _____
                                            UNITED STATES BANKRUPTCY JUDGE

AMERICAS 102856860
RLF1 23473713v.1

# **EXHIBIT B**

## **Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| | |
| | (Joint Administration Requested) |
| Debtors. | |
| | **Re: Docket No. ____** |

### FINAL ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF AIRPORT AUTHORITIES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**") pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code and Bankruptcy Rule 6003, authorizing, but not directing, the Debtors to pay the prepetition Airport Authorities Claims in the ordinary course of business, all as more fully set forth in the Motion; and the Court having found that it has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District for the District of Delaware, dated February 29, 2012 (Sleet, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local  Rules, and it

---

[1]     The last four digits of The Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928.  Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

appearing that no other or further notice need be provided; and a hearing having been held, if necessary, to consider the relief requested in the Motion (the "**Hearing**"); and upon consideration of the First- Day Declaration; and the record of the Hearing, if any; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and all other parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.  Any objections or reservations of rights filed in respect of the Motion are overruled, with prejudice.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, in the reasonable exercise of their business judgment, to pay, in the ordinary course of business, some or all of the prepetition Airport Authority Claims to Airport Authorities in full, in an amount not to exceed, unless otherwise ordered by this Court up to the total cap of $11.9 million.

3.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to renew and replace all bonds or letters of credit supporting any obligations owed to Airport Authorities in the ordinary course of business.

4.      The Debtors are authorized to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

5.      All applicable banks and financial institutions (collectively, the "**Banks**") are authorized, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively,

the "**Payments**"), on account of the Airport Authorities Claims, whether such Payments were submitted before, on, or after the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors.

6.      Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Airport Authorities Claims pursuant to the Motion and this Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Order.

7.      The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

8.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (a) an admission as to the validity, extent, perfection, priority, allowability, or enforceability of any claim or any security interest which purportedly secures such claim, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a promise to pay any claim, (d) a waiver of any claims or causes of action which may exist against any creditor, interest holder, or otherwise affected party (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any

3

party subject to this Order, (f) granting third-party beneficiary status or bestowing any additional rights on any third party, or (g) being otherwise enforceable by any third party.  Without limiting the generality of the foregoing, nothing in the Motion or this Order nor any payment of any Airport Authorities Claims pursuant to this Order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Airport Authorities Claims allegedly due or owing to any Airport Authority, and all of the Debtors' rights with respect thereto are hereby reserved.

9.      The notice requirement set forth in Bankruptcy Rule 6004(a) is satisfied.

10.     This Order is immediately effective and enforceable notwithstanding the provisions of Bankruptcy Rule 6004(h) or otherwise.

11.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2020
        Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

AMERICAS 102856860
RLF1 23473713v.1