## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline:  [TBD]**<br>**Hr'g Date:  [TBD]** |

## DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO ENTER INTO A SALE AGREEMENT WITH JEFFERIES LLC AND TO SELL SHARES OF COMMON STOCK OF DEBTOR HERTZ GLOBAL HOLDINGS, INC. <u>THROUGH AT-THE-MARKET TRANSACTIONS</u>

The debtors and debtors in possession (collectively, the "**Debtors**" or "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Order**") authorizing, but not requiring, the Debtors to enter into a sale agreement with Jefferies LLC ("**Jefferies**") and to sell shares of common stock of Debtor Hertz Global Holdings, Inc. ("**Hertz**") through at-the-market transactions for an aggregate offering price of up to and including $1,000,000,000, which in no event will result in the issuance of more than 246,775,008 shares of common stock.  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

---

[1]       The last four digits of The Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928.  Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been ordered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructuring.primeclerk.com/hertz.

## PRELIMINARY STATEMENT

1.        On May 26, 2020, the first trading day after the Debtors commenced the above-captioned cases, the common stock of the Debtors' holding company, Hertz Global Holdings, Inc. ("**Hertz**"), closed at a price of $0.56 per share.  Over the next two weeks, Hertz's stock price rose significantly, closing at a price of $5.53 on June 8—a nearly tenfold increase. Although the trading price of Hertz' common stock has declined since then, closing at $2.52 on June 10, 2020, the common stock continues to actively trade. Given these developments, the Debtors now seek emergency relief from this Court to allow the Debtors to capture the potential value of unissued Hertz shares for the benefit of the Debtors' estates.

2.        By this Motion, the Debtors seek an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code authorizing, but not requiring, the Debtors to (i) enter into a sale agreement with Jefferies, and (2) issue up to and including 246,775,008 shares of common stock through at-the-market transactions under Hertz's existing shelf registration statement on Form S-3 (File No. 333-231878) previously filed by Hertz with the U.S. Securities and Exchange Commission and declared effective on June 12, 2019.  The recent market prices of and the trading volumes in Hertz's common stock potentially present a unique opportunity for the Debtors to raise capital on terms that are far superior to any debtor-in-possession financing.  If successful, Hertz could potentially offer up to and including an aggregate of $1.0 billion of common stock, the net proceeds of which would be available for general working capital purposes.  Unlike typical debtor-in-possession financing, the common stock issuance would not impose restrictive covenants on the Debtors and would not impair any of the creditors of the Debtors.  Moreover, the stock issuance would carry no repayment obligations, and the Debtors would not pay any interest or fees to those who provide the funding by buying shares at the

2

market. Hertz would include disclosure in any prospectus used to offer common stock highlighting that an investment in Hertz's common stock entails significant risks, including the risk that the common stock could ultimately be worthless.

3.    The Debtors bring this Motion on an emergency basis given the volatile state of trading in Hertz's stock and to ensure that the Debtors are in a position to capture the potential value of Hertz's unissued shares.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

4.    This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.). This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

5.    The predicates for the relief requested by this Motion are sections 105 and 363 of the Bankruptcy Code, rules 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**")

6.    Pursuant to rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### A.    Overview

7.    On May 22, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The Chapter 11 Cases are jointly administered for procedural purposes

3

only pursuant to Bankruptcy Rule 1015(b).  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

8.    Additional background and information regarding the Company, including its business operations, its corporate and capital structure, its restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the *Declaration of Jamere Jackson in Support of the Debtors' Petitions and Requests for First Day Relief* [ECF No. 28] (the "**First Day Declaration**").

**B.    The Proposed Sale of Common Stock**

9.    On May 26, 2020, the first trading day after the Debtors commenced the Chapter 11 Cases, Hertz's common stock closed at a price of $0.56 per share.[2]  Hertz's stock price rose significantly over the next two weeks, closing at a price of $5.53 price on June 8—approximately a 900% increase.[3]  Although the trading price of Hertz' common stock has declined since then, closing at $2.52 on June 10, 2020, the common stock continues to actively trade.

10.    There are currently 400 million authorized shares of Hertz common stock[4] and 246,775,008 unissued shares.  The Debtors now seek to capture the potential value in these unissued shares for the benefit of their estates by seeking approval to issue and sell Hertz shares at the market price.

---

[2] https://www.nyse.com/quote/XNYS:HTZ

[3] *Id.*

[4] Hertz Global Holdings, Inc., Quarterly Report (Form 10-Q) (May 11, 2020)

AMERICAS 102986717

11.     The Debtors seek this Court's permission to enter into a sale agreement with Jefferies LLC (**"Jefferies"**), as sales agent, in substantially the form attached hereto as **Exhibit B** (the "**Sale Agreement**").  Under the Sale Agreement, the Company may offer and sell over time, and from time to time, shares of Hertz common stock having an aggregate offering price not to exceed $1,000,000,000, which in no event will result in the issuance of more than 246,775,008 shares of common stock. Subject to the terms and conditions of the Sale Agreement, Jefferies will use its commercially reasonable efforts to sell, as sales agent and on the Company's behalf, all of the designated shares of common stock on any trading day or as otherwise agreed upon by the Company and Jefferies.

12.     From time to time, the Company may submit orders to Jefferies relating to the shares of common stock to be sold through Jefferies, which orders may specify any price, time or size limitations relating to any particular sale. The Company may instruct Jefferies not to sell shares of common stock if the sales cannot be effected at or above a price designated by the Company in any such instruction. The Company or Jefferies may suspend the offering of shares of common stock by notifying the other party.

13.     Jefferies would receive from the Debtors a selling commission at a mutually agreed rate, up to 3.0% of the gross proceeds of any shares of Hertz's common stock sold through it. The remaining sales proceeds, after deducting transaction fees imposed by any governmental, regulatory or self-regulatory organization in connection with the sales, would equal the Debtors' net proceeds for the sale of such shares.  The Company would also pay all costs, fees and expenses incurred in connection with the transactions contemplated by the Sale Agreement, including fees and disbursements of Jefferies' counsel not to exceed an aggregate of $200,000.

14.     Hertz would agree to indemnify and hold Jefferies harmless against any loss, claim, damage, liability or expense, as incurred, to which Jefferies may become subject, under the Securities Act of 1933, as amended (the "**Securities Act**"), the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), other federal or state statutory law or regulation, or the laws or regulations of foreign jurisdictions where the shares have been offered or sold, arising out of or (i) based upon any untrue statement or alleged untrue statement of a material fact contained in the registration statement by which the common stock is registered under the Securities Act, or any amendment thereto, including any information deemed to be a part thereof pursuant to Rule 430B under the Securities Act, (ii) based upon any untrue statement or alleged untrue statement of a material fact contained in any Free Writing Prospectus (as defined in the Sale Agreement) that the Company has used, referred to or filed, or is required to file, pursuant to Rule 433(d) of the Securities Act or its prospectus (or any amendment or supplement thereto), and (iii) based upon or otherwise related to or arising out of or in connection with Jefferies' participation, services or performance under the Sale Agreement or the sale of shares or the offering contemplated hereby, provided that the Company shall not be liable to the extent a court determines a claim resulted directly from Jefferies' gross negligence or willful misconduct.  The Company will also agree to reimburse Jefferies for any and all expenses reasonably incurred by Jefferies in connection with investigating, defending, settling, compromising or paying any such loss, claim, damage, liability, expense or action.

15.     The Company has filed with the Securities and Exchange Commission a shelf registration statement on Form S-3 (File No. 333-231878), as amended by Amendment No. 1 filed with the Commission on June 10, 2019, including a prospectus relating to the securities. The Company will file a prospectus supplement that will contain enhanced disclosures around

the risks of purchasing Hertz's common stock, including the fact the Hertz is currently a debtor in possession in these Chapter 11 Cases and recoveries to shareholders are uncertain.

## BASIS FOR RELIEF

**I.**    **While Some Courts Have Held that Unissued Shares Are Not Property of the Estate, The Debtors Seek Approval from this Court Out of an Abundance of Caution**

16.    Section 363(b)(1) of the Bankruptcy Code authorizes courts, after notice and hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  See 11 U.S.C. § 363(b)(1).  Certain courts have found that a debtor does not have a property interest in unissued stock, and therefore a debtor could issue stock without complying with section 363 of the Bankruptcy Code.  In *Intramerican Oil & Minerals, Inc. v. Mid-America Petroleum, Inc. (In re Mid-America Petroleum, Inc.)*, 71 B.R. 140, 141 (Bankr. N.D. Tex. 1987), the court held that authorized but unissued stock "cannot be considered an asset of a corporation" and cannot be owned by the corporation.  As a result, the court specifically concluded the debtor could issue share of authorized stock without complying with the requirements of section 363 of the Bankruptcy Code.  *Id.* ("[A]ny dealings with [unissued shares of] stock may be done outside § 363 limitations."); *see also Decker v. Advantage Fund (In re Jts Corp.)*, 2001 Bankr. LEXIS 2066, at *13 (Bankr. N.D. Cal. May 21, 2001) (citing *Mid-America* and finding that because unissued stock was not property of the estate, the issuance of common stock did not constitute a transfer of an interest in of the debtor, and therefore could not constitute a fraudulent transfer under section 544 of the Bankruptcy Code), *aff'd* 362 F.3d 593, 596 (9th Cir. 2004).

17.    Other courts, however, have reached contrary conclusions.  In *Global Crossing Estate Representative v. Winnick*, 2006 U.S. Dist. LEXIS 53785 (S.D.N.Y. Aug. 3. 2006), the district court found that the corporation at issue had a property interest in its unissued

7

stock, observing that "[g]iven a corporation's power to transfer stock to third parties in exchange for value, the argument that a corporation lacks an interest in the stock itself at the time of issuance blinks economic reality." *Id.* at *29. Judge Shannon adopted the reasoning of *In re Global Crossing* and found that, in the context of a motion to dismiss a fraudulent transfer action, a plaintiff adequately alleged that a transfer of unissued stock constituted a transfer of property of the debtor. *See Indus. Enters. of Am., Inc. v. Brandywine Consultants (In re Pitt Penn Holding Co.)*, 2011 Bankr. LEXIS 3560, at *28 (Bankr. D. Del. Sep. 16, 2011).

18.    While the Debtors believe that unissued shares are not property of the estate, and the closest case on point, *Mid-America*, specifically found that a debtor could issue shares without complying with the requirements of section 363, out of an abundance of caution, and given the *In re Pitt Penn Holding Co.* decision from this district, the Debtors seek the Court's approval of the requested relief.

## II.    This Court Should Authorize the Sale of Hertz's Unissued Shares under Sections 105(a) and 363(b) of the Bankruptcy Code

19.    The Court should authorize the Debtors' entry into a sale agreement and the sale of unissued shares under sections 105(a) and 363(b) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See 11 U.S.C. § 105(a). As noted above, Section 363(b)(1) authorizes courts, after notice and hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." See 11 U.S.C. § 363(b)(1); *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi*

8

*Kangyo Bank*, 242 B.R. at 153.   Once a debtor has articulated a valid business justification, the business judgment rule is applied to the Debtors' decision.  *Id*; *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *cf. Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

20.     Here, the decision to enter into the Sale Agreement and to sell unissued shares of Hertz's common stock is an exercise of the Debtors' sound business judgment.  The rise in the trading price of Hertz's shares indicates that the market believes that the shares have significant value.  The proposed sale of Hertz's unissued shares would allow the Company to raise up to and including $1.0 billion in gross proceeds, the net proceeds of which the Debtors could use general working capital purposes.  The sale would also allow the Debtors to raise capital on terms superior to any debtor-in-possession financing.  The stock issuance would not impose restrictive covenants on the Debtors and would be junior to claims of the Debtors' creditors.  Moreover, other than the 3.0% fee that would be owed to Jefferies and related transactional costs, the issuance of the shares would impose no payment or repayment obligations on the Debtors.  Accordingly, given the clear benefit to the Debtors' estates, the Court should approve the transaction pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

21.     The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the validity, extent, perfection, priority, allowability, enforceability, or character of any claim or any

AMERICAS 102986717

security interest which purportedly secures such claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a promise to pay any claim; (d) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and nothing herein otherwise affects the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease with any party; (f) granting third-party beneficiary status or bestowing any additional rights on any third party; or (g) being otherwise enforceable by any third party.

## **NOTICE**

22.    Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) the U.S. Notes Agent; (iii) the Senior Credit Agreement Agent; (iv) the administrative agent under the ALOC Facility; (v) the successor trustee under the Promissory Notes; (vi) the U.S. ABS Agent; (vii) the indenture trustee under the HFLF ABS Notes; (viii) the administrative agent and collateral agent under the U.S. Vehicle RCF; (ix) the indenture trustee under the European Vehicle Notes; (x) the administrative agent and collateral agent under the European ABS Notes; (xi) the indenture trustee and collateral agent under the Hertz Canadian Securitization Notes; (xii) the lender under the Donlen Canada Securitization Program; (xiii) the administrative agent and the security trustee under the Australian Securitization Notes; (xiv) the lender under the New Zealand RCF; (xv) the lender under the U.K. Financing Facility; (xvi) holders of the fifty (50) largest unsecured claims against

the Debtors (on a consolidated basis); (xvii) the Internal Revenue Service; (xviii) the Securities

and Exchange Commission; (xix) United States Attorney for the District of Delaware; (xx) any

such other party entitled to notice pursuant to Bankruptcy Rule 2002; and (xxi) the state

attorneys general for all states in which the Debtors conduct business. The Debtors submit that,

in view of the facts and circumstances, such notice is sufficient and no other or further notice

need be provided.

## **NO PRIOR REQUEST**

23.    No previous request for the relief sought herein has been made by the

Debtors to this Court or any other court.

11

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the relief requested in this Motion, the Order, and such other and further relief as is just and proper.

Dated: June 11, 2020

**RICHARDS, LAYTON & FINGER, P.A.**

*/s/ John H. Knight*
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Brett M. Haywood (No. 6166)
Christopher M. De Lillo (No. 6355)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Collins@rlf.com
Knight@rlf.com
Haywood@rlf.com
DeLillo@rlf.com
Noble@rlf.com

—and—

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice* )
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:     (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:     (212) 819-8200

cshore@whitecase.com
david.turetsky@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
Telephone:    (312) 881-5400
jzakia@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Aaron Colodny (admitted *pro hac vice*)
Andrew Mackintosh (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:    (213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
amackintosh@whitecase.com
doah.kim@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors-in-Possession*

2