UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------X

In re:

The Hertz Corporation, *et al.*,[1]

                    Debtors.

-----------------------------------------------------------------X

) Chapter 11
)
) Case No. 20-11218 (MFW)
)
) (Jointly Administered)
)
) **Objection Deadline: August 5, 2020, at 4:00 p.m. (ET)**
) **Hearing Date: August 12, 2020, at 10:30 a.m. (ET)**

**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO RETAIN AND EMPLOY BERKELEY RESEARCH GROUP, LLC, AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO JUNE 15, 2020**

The Official Committee of Unsecured Creditors (the "Committee") of The Hertz Corporation, *et al.*, (the "Debtors" or "Hertz"), submits this application (the "Application") for an order, substantially in the form attached hereto as Exhibit A, pursuant to Sections 328 and 1103 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of the Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the employment of Berkeley Research Group, LLC ("BRG"), as financial advisor to the Committee. In support of this Application, the Committee submits the Declaration of David Galfus (the "Galfus Declaration") which is incorporated herein as Exhibit B. In further support of this Application, the Committee respectfully represents as follows:

---

[1] The last four digits of The Hertz Corporation's federal tax identification number are 8568. Due to the large number of debtors in these chapter 11 cases, that are being jointly administered for procedural purposes, a complete list of the debtors and their federal tax identification numbers may be obtained on the website of the debtors' claims and noticing agent at https://restructuring.primeclerk.com/hertz.

**JURISDICTION**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for The District of Delaware,* dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Committee confirms its consent pursuant to Local Rule 9013-l(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The statutory predicates for the relief sought herein are sections 328 and 1103(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

**BACKGROUND**

3. On May 22, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Cases") with the Court. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

4. The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the Court's *Order Directing Joint Administration of the Chapter 11 Cases* (Dkt. No. 182), entered on June 27, 2020.

5. On June 11, 2020 (the "Formation Date"), the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. The Committee is presently comprised of the following members: (i) American Automobile Association, Inc.; (ii)

Emma Bradley; (iii) Janice Dawson; (iv) International Brotherhood of Teamsters; (v) Pension Benefit Guaranty Corporation; (vi) Sirius XM Radio Inc.; (vii) Southwest Airlines Co.; (viii) U.S. Bank National Association, as indenture trustee; and (ix) Wells Fargo Bank, NA, as indenture trustee. The Committee elected Southwest Airlines Co. to serve as Committee Chair.

6. On June 15, 2020, the Committee selected BRG to serve as its financial advisor. The Committee has also selected Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") and Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch" and together with Kramer Levin, "Counsel") to serve as its counsel, and UBS Securities LLC ("UBS") to serve as its investment banker.

**REQUESTED RELIEF AND REASONS THEREFOR**

7. The Committee respectfully requests entry of an order pursuant to sections 328, 330, and 1103(a) of the Bankruptcy Code authorizing BRG to perform financial advisory services for the Committee that will be necessary during these Cases. The Debtors are a large, complex enterprise, and the Committee requires the services of an experienced financial advisor such as BRG to enable the Committee to fulfill its fiduciary duties and to provide financial advisory services that are critical to the success of the case.

8. The Committee determined that the services of BRG are necessary to enable the Committee to assess and monitor the efforts of the Debtors and their professionals, to ensure that the Debtors are able to successfully reorganize (through a standalone reorganization and/or asset sale(s)), and to maximize the value of the Debtors' estates for the benefit of the unsecured creditors. Further, BRG is well-qualified and able to represent the Committee in a cost-effective, efficient and timely manner.

9. Immediately upon its selection, BRG commenced work on several time-sensitive

matters and promptly devoted substantial resources to these Cases pending submission and approval of this Application. In order to allow BRG to be compensated for work performed prior to and after the submission of this Application, the Committee seeks to employ BRG as its financial advisor *nunc pro tunc* to June 15, 2020.

### A. Qualifications of Professionals

10. BRG has significant qualifications and experience in providing the services contemplated herein. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing restructuring, transaction advisory, litigation support, solvency, and valuation assistance and providing a focus on viable solutions that maximize value for companies and creditors, typically in distressed business settings. BRG has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational restructurings across a wide array of industries. BRG Corporate Finance provides services including forensic analysis, plan development and implementation, and advice on sale/merger transactions. Moreover, the professionals at BRG have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases, including Verity Health System of California; Neiman Marcus Group Ltd. LLC; rue21, inc.; Southern Foods Group, LLC (a.k.a. Dean Foods); Nine West Holdings, Inc., Sports Authority Holdings, Inc.; Borden Dairy Company; The Weinstein Company, Real Industry/ Real Alloy, Specialty Retail Shops Holding Corp. (a.k.a. Shopko), Peabody Energy Corporation, Sabine Oil & Gas Corp, The WetSeal, LLC; Samuels Jewelers, M&G USA Corporation, Arch Coal Inc., Brookstone Holding Corp., MF Global Holdings, Ltd., Chrysler (a.k.a. Old Carco LLC), Molycorp Inc., Reichhold Holdings US, Inc., Refco, Inc., Tropicana Entertainment, LLC, Spiegel Inc., W.R. Grace, Penson Worldwide, SemGroup, and

Nortel.[2]

11.     The Committee chose BRG to act as its financial advisor in these Cases based in large part on the experience outlined above. The Committee believes that BRG's services are necessary to enable the Committee to assess and monitor the Debtors' restructuring efforts in furtherance of the Committee's obligations to protect the interests of and maximize value for all unsecured creditors. Moreover, based on the experience of BRG's professionals in large, complex chapter 11 cases, the Committee believes that BRG is well-qualified to provide such services in a cost-effective, efficient and timely manner.

**B.      Services to be Provided**

12.     BRG will provide such financial advisory services to the Committee as the Committee deems appropriate and necessary in order to advise the Committee during the course of these Cases. The services to be rendered by BRG, which services may be subject to modification at the Committee's request, are necessary to enable the Committee to faithfully execute its statutory duties to unsecured creditors.

13.     Subject to further order of this Court, the Committee has requested that BRG render financial advisory services with respect to the following areas:

   a) Assisting the Committee in analyzing and sensitizing any business plan proposed by the Debtors, including, for example, revenue and expense projections, fleet utilization, operating arrangements and contracts, cost saving opportunities;

   b) Assisting Counsel in the investigation of the secured lenders' liens and identifying any unencumbered assets;

   c) Analyzing the Debtors' securitization arrangements, related flow of funds and impact on business operations;

---

[2] The professionals were employed in certain of these engagements prior to joining BRG.

d) Advising and assisting the Committee with respect to the use of cash collateral;

e) Evaluating relief requested in cash management motion, including proper controls related to and financial transparency into intercompany transactions;

f) Advising and assisting the Committee in its analysis and monitoring of the Debtors' and non-Debtor affiliates' historical, current, and projected financial affairs, including, public filings, schedules of assets and liabilities and statement of financial affairs, intercompany transactions, and performance on a location by location basis;

g) Monitoring liquidity throughout the case, including scrutinizing cash disbursements to non-Debtor entities;

h) Developing a periodic monitoring report to enable the Committee to effectively evaluate the Debtors' financial performance relative to projections and any relevant operational issues on an ongoing basis;

i) Advising and assisting the Committee and Counsel in reviewing and evaluating any court motions, applications, or other forms of relief, filed or to be filed by the Debtors, or any other parties-in-interest;

j) Analyzing both historical and ongoing related party transactions of the Debtors and non-Debtor affiliates;

k) Assist with the development and review of a cost/benefit analysis with respect to the assumption or rejection of various executory contracts and leases;

l) Advising and assisting the Committee in identifying and/or reviewing any preferential payments, fraudulent conveyances, and other potential causes of action that the Debtors' estates may hold against insiders and/or third parties;

m) Assisting the Committee in analyzing potential recoveries to unsecured creditors under various scenarios;

n) Assisting in negotiating a plan of restructuring and disclosure statement and if applicable, the development and analysis of any bankruptcy plans proposed by the Committee;

o) Monitoring the Debtors' claims management process, including analyzing claims and guarantees, rejection damages, estimating claims as appropriate and summarizing claims by Debtor entity;

p) Advising and assisting the Committee in its assessment of the Debtors' employee needs and related costs including any recent employee bonuses or retention payments, any proposed KERP or KEIP and any issues related to collective bargaining agreements;

q) Providing support for UBS and Counsel as necessary to address issues related to the any future debtor-in-possession financing and any subsequent exit financing;

r) Providing assistance to UBS and Counsel in any sale processes or monetization of miscellaneous assets;

s) Assessing the Debtors' international operations and the impact of any insolvency proceedings in foreign countries;

t) Working with the Debtors' tax advisors to ensure that any restructuring or sale transaction is structured to minimize tax liabilities to the estate;

u) Working with the Debtors' tax advisors to maximize the value of U.S. and international tax attributes;

v) Participating in meetings and discussions with the Committee, the Debtors, and the other parties-in-interest and with their respective professionals and attending court hearings as may be required;

w) Providing the services of testifying experts, including testimony and expert reports, as requested by the Committee, such services to be paid for at the testifying experts' ordinary hourly rates; and

x) Performing other matters as may be requested by the Committee or Counsel from time to time, including: preparing litigation or forensic analyses that have not yet been identified but as may be requested by the Committee and its Counsel.

C. **No Duplication of Services**

14. The services to be provided by BRG will be at the request and direction of the Committee so as to avoid duplicative efforts among the Committee's professionals retained in this case. As indicated in the Galfus Declaration, BRG acknowledges that UBS has been selected by the Committee to perform investment banking services for the Committee. The investment

banking services that UBS is to provide to the Committee (*e.g.*, potential DIP and exit financing, sale process) are separate and distinct from the restructuring and financial advisory services that BRG will be providing to the Committee (e.g. claims and lien analysis, contract assumption/rejection analysis, cash management monitoring). The Committee has approved a delineation of responsibilities between BRG and UBS to achieve case efficiencies and avoid duplication of efforts. Moreover, BRG has been a co-advisor before and thus they have experience ensuring that best practices are maintained in the provision of services to the Committee.

15. BRG intends to communicate regularly with the Committee and its legal advisors to ensure that the actual financial advisory services performed are appropriate based on the status of the case and needs of the Committee. BRG will coordinate all tasks with Counsel and UBS to achieve case efficiencies and avoid duplication of efforts. The Committee believes it is necessary to employ BRG as its financial advisor to render the foregoing professional services. In light of BRG's substantial experience and expertise and the complex nature of the Debtors' business and financial affairs, the Committee believes that BRG is well qualified to advise it in these bankruptcy cases.

    **D.**    **Use of Contractors**

16. Notwithstanding anything in this Application to the contrary, BRG shall (i) to the extent that it uses the services of independent contractors or subcontractors (the "Contractors") in these Cases, pass-through the cost of Contractors to the Debtors at the same rate that BRG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks and compensation procedures as required for BRG; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

E.   **Limitation of Liability**

17. Except in the case of conduct by BRG or its agents involving gross negligence, willful misconduct, reckless misconduct, or fraud, BRG shall not be liable under this agreement to the Committee or their respective successors, assigns or affiliates for damages in excess of the amount of the fees paid hereunder to BRG. The terms of this paragraph shall survive the termination of this agreement and such commitments shall extend upon the terms set forth in this paragraph to any controlling person, director, officer, employee or affiliate of BRG.

18. The Committee has agreed that BRG shall not be liable for any delays resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

19. Except in the case of conduct by BRG or its agents involving gross negligence, willful misconduct, reckless misconduct, or fraud, the Committee has agreed that the parties shall not be liable to each other for any consequential, incidental, special or punitive damages, nor shall BRG be liable for direct compensatory damages in excess of the fees actually received by BRG for the performance of services hereunder.

F.   **Disinterestedness of Professionals**

20. To the best of the Committee's knowledge and based upon and subject to the disclosures made in the Galfus Declaration filed contemporaneously herewith, BRG (inclusive of its affiliates, subsidiaries and parent entities) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and the Committee is satisfied that (i) BRG represents no interest adverse to the Committee, the Debtors, their estates, or any other party in interest in the matters upon which it is to be engaged and that its employment is in the best interest of the estates;

(ii) BRG together with its Managing Directors and Directors do not have any financial interest in or business with the Debtors; (iii) BRG has no connection with the U.S. Trustee or any other person employed in the office of the U.S. Trustee; and (iv) BRG has no connection with the bankruptcy judge approving the employment of BRG as the Committee's financial advisor. BRG has not provided, and will not provide, any professional services to the Debtors, any other creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these Cases.

21. From time to time, BRG may be asked to value and manage the liquidation of assets of investment funds. Such investment funds could, from time to time, take positions in debt or equity of the Debtors, without BRG's knowledge or consent. BRG has no pecuniary interest in such investment funds, nor will BRG profit from the value realized from the sale of such funds' interests in the Debtors. Under such circumstances, if BRG is providing valuation work on any debt or equity securities of the Debtors for any investment fund for the duration of this engagement, then the BRG employees undertaking such work will be restricted and have no access to the confidential information of the Debtors. Moreover, to the extent any employees of BRG are utilized on this engagement for valuation expertise (and, accordingly, given access to confidential information of the Debtors), for the duration of this engagement those employees will not perform any valuation work on any debt or equity securities of the Debtors for any investment fund.

G. **Professional Compensation**

22. BRG advised the Committee that it intends to charge its standard hourly rates for professional services rendered, plus reimbursement of actual and necessary expenses incurred by BRG. The professional fees shall be calculated by multiplying the hours worked by the standard hourly billing rates in effect for the specific personnel involved. The hourly rates charged by BRG

for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided. In the ordinary course of business, BRG periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

23. BRG has advised the Committee that its fees will be commensurate with the fees charged to its other clients and in other cases of this size (provided such clients are billed hourly). BRG will maintain records with respect to any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases. Records will be organized by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Committee. BRG has also advised the Committee that it intends to make application to the Court for allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the 1996 U.S. Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Unser 11 U.S.C. 330* (the "UST Guidelines") and the terms of any order establishing procedures for interim compensation that may be entered in this case. BRG's compensation for services rendered on behalf of the Committee shall be fixed by the Court after due application.

24. For professional services, fees are based on BRG's standard hourly rates. The proposed rates of compensation, subject to final Court approval, are the customary hourly rates in effect when services are performed by the professionals and paraprofessionals who provide services to the Committee. The current standard hourly rates for BRG personnel that are anticipated to work on this engagement are as follows:

11

|  | 2020 |
|---|---|
| Managing Director | $825 - $1,095 |
| Director | $625 - $835 |
| Professional Staff | $295 - $740 |
| Support Staff | $125 - $260 |

25. These standard hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective. The standard hourly rates for the BRG experts anticipated to be assigned to this engagement are as follows: Christopher Kearns ($1,095), Bob Duffy ($1,095), Elliot Fuhr ($1,095), David Galfus ($1,040), Joseph D'Ascoli ($995), Mackenzie Shea ($995), Bob Butler ($885), Joe Woodmansee ($635), and Kristen Oats ($740) (together with the assigned professional staff the "Engagement Team"). BRG believes that its standard hourly rates are at or below those of firms it considers its peers.

26. Consistent with BRG's policy with respect to its other clients, BRG will charge for all other services provided and for other charges and disbursements incurred in rendering services to the Committee. These customary items include, among other things, travel and lodging expenses, business meals, costs of reproduction, research, communications, legal counsel, any applicable sales or excise taxes and other direct expenses. Internal costs or overhead costs and document production services (including regular secretarial and word processing time) will not be charged for separately.

27. BRG will also request compensation for any time and expenses (including, without limitation, reasonable legal fees and expenses, except in the case of legal fees pertaining to any fee defense) that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings, including, without limitation, those other than the instant matter, as a result

of BRG's performance of these services.

28. BRG acknowledges that neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to Counsel), shall be liable for the fees, expenses or other amounts payable to BRG.

29. Regardless of the time and manner of interim compensation, BRG understands that, subject to this Court's orders, BRG will be required to follow the procedures for final allowance of fees at the end of the Cases.

30. No promises have been received by BRG, nor any employee or independent contractor thereof, as to payment or compensation in connection with these Cases other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the employees and independent contractors of BRG regarding the sharing of revenue or compensation, neither BRG nor any of its employees or independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Rule 2016.

### *NUNC PRO TUNC* RELIEF

31. The Committee requests that BRG's retention be made effective as of June 15, 2020, in order to allow BRG to be compensated for the work it performed for the Committee as of and following the date it was retained and prior to the Court's consideration and approval of this Application. Due to the size, short timeline, and complex nature of these Cases, as well as the significant relief sought by the Debtors during the early stages of these Cases, there was an immediate need for BRG to perform services for the Committee upon its retention. The Committee submits that under the circumstances, and to avoid the irreparable harm to the Debtors' estates that may occur if BRG is not immediately retained, retroactive approval to June 15, 2020, the date of BRG's retention, is warranted

**NOTICE**

32. Notice of this Application is being given to the following parties: (i) the Debtors; (ii) proposed counsel to the Debtors; (iii) the U. S. Trustee; (iv) the U.S. Notes Agent; (v) the Senior Credit Agreement Agent; (vi) the agent under the L/C Facility; (vii) the administrative agent under the ALOC Facility; (viii) the successor trustee under the Promissory Notes; (ix) the U.S. ABS Agent; (x) the indenture trustee under the HFLF ABS Notes; (xi) the administrative agent and collateral agent under the U.S. Vehicle RCF; (xii) the indenture trustee under the European Vehicle Notes; (xiii) the administrative agent and collateral agent under the European ABS Notes; (xiv) the indenture trustee and collateral agent under the Hertz Canadian Securitization Notes; (xv) the lender under the Donlen Canada Securitization Program; (xvi) the administrative agent and the security trustee under the Australian Securitization Notes; (xvii) the lender under the New Zealand RCF; (xviii) the lender under the U.K. Financing Facility; (xix) holders of the fifty largest unsecured claims against the Debtors (on a consolidated basis); (xx) the Internal Revenue Service; (xxi) the Securities and Exchange Commission; (xxii) the United States Attorney General for the District of Delaware; (xxiii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); (xxiv) the state attorneys general for all states in which the Debtors conduct business; and (xxv) all parties that have requested service pursuant to Bankruptcy Rule 2002 (together the "Notice Parties"). The Committee respectfully submits that in light of the nature of the relief requested and the circumstances surrounding these Cases, no other or further notice is required or necessary.

**NO PRIOR REQUEST**

33. No prior application has been made in this or any other court.

34. The Committee submits that this Application does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above and, accordingly, submits that no brief is necessary.

*[Remainder of the Page Left Intentionally Blank]*

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A, granting the relief requested herein as well as such other and further relief as the Court deems just and proper.

Dated: July 22, 2020

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE
HERTZ CORPORATION, *et al.*

_____
By: James Sheppard on behalf of Southwest Airlines Co., in its capacity as Chair of the Official Committee of Unsecured Creditors of The Hertz Corporation, *et al.*

_____