**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| The Hertz Corporation, *et al.,*[1] | ) | Case No. 20-11218 (MFW) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Hearing Date: August 12, 2020, at 10:30 a.m. (ET)** |
|  |  | **Objection Deadline: August 5, 2020 at 4:00 p.m. (ET)** |

------------------------------------------------------------------ X

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE HERTZ CORPORATION, ET AL., FOR ENTRY OF AN ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF UBS SECURITIES LLC AS INVESTMENT BANKER *NUNC PRO TUNC* TO JUNE 17, 2020 AND (II) WAIVING COMPLIANCE WITH CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned proceedings (the "**Chapter 11 Cases**") of The Hertz Corporation, *et al.,* the debtors and debtors-in-possession (collectively, the "**Debtors**"), by its members, hereby submits this application (the "**Application**"), pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") 2014-1 and 2016-2, for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") (a) authorizing the Committee to retain and employ UBS Securities LLC ("**UBS**") as its investment banker, *nunc pro tunc* to June 17, 2020, pursuant

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructuring.primeclerk.com/hertz.

to that certain engagement letter between UBS and the Committee dated as of July 21, 2020 (the "**Engagement Letter**"), a copy of which is appended hereto as **Exhibit B,** (b) waiving and modifying certain time-keeping requirements of Bankruptcy Rule 2016(a) and Local Rule 2016-2, and any applicable guidelines of the United States Trustee (the "**Trustee Guidelines**"), and (c) granting related relief.  In support of this Application, the Committee submits the Declaration of Elizabeth LaPuma, a Managing Director at UBS, attached hereto as **Exhibit C** (the "**LaPuma Declaration**").  In further support of this Application, the Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory and legal predicates for the relief requested herein are sections 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

## RELEVANT BACKGROUND

4.    On May 22, 2020 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  On May 27, 2020, the Court entered an order authorizing the joint administration and procedural consolidation of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

5.    On June 11, 2020, the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), pursuant to sections 1102(a) and (b) of Title 11 of the Bankruptcy Code, appointed the Committee [Dkt. No. 392].  The members of the Committee are: (i) American

Automobile Association, Inc., (ii) Emma Bradley, (iii) Janice Dawson, (iv) International Brotherhood of Teamsters, (v) Pension Benefit Guaranty Corporation, (vi) Sirius XM Radio Inc., (vii) Southwest Airlines Co., (viii) U.S. Bank National Association, as indenture trustee, and (ix) Wells Fargo Bank, NA, as indenture trustee.  The Committee elected Southwest Airlines Co. to serve as Committee Chair.

6.      On June 11, 2020, the Committee selected Kramer Levin Naftalis & Frankel LLP ("**Kramer Levin**") to serve as its lead bankruptcy counsel.  On June 15, 2020, the Committee selected Benesch, Friedlander, Coplan & Aronoff LLP to serve as Delaware counsel and Berkeley Research Group, LLC ("**BRG**") to serve as its financial advisor.  On June 17, 2020, the Committee selected UBS to serve as its investment banker.

## RELIEF REQUESTED

7.      By this Application, the Committee seeks authority to retain and employ UBS as investment banker to represent its interests regarding certain matters related to these Chapter 11 Cases pursuant to Sections 328 and 1103 of the Bankruptcy Code, and seeks entry of an order: (a) authorizing the Committee to retain and employ UBS as its investment banker, *nunc pro tunc*, to June 17, 2020, pursuant to the Engagement Letter, (b) modifying certain time-keeping requirements of Bankruptcy Rule 2016(a) and Local Rule 2016-2, and any applicable guidelines of the United States Trustee and (c) granting related relief.  The Engagement Letter describes (i) the various services that the Committee seeks to have UBS perform on its behalf during these Chapter 11 cases and (ii) the terms and conditions of UBS' proposed engagement by the Committee.

## UBS' QUALIFICATIONS

8.      The Committee's selection of UBS as investment banker reflects the Committee's belief that UBS' global expertise providing investment banking services and in

particular UBS' restructuring group experience in providing investment banking services to financial distressed companies, creditors, committees, equity holders, asset purchasers and other constituencies in connection with complex in and out of court proceedings make UBS the best and most impactful candidate for the services to be provided in these cases, and that the proposed fee structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of these Chapter 11 Cases.

9.      UBS is an internationally recognized investment banking and financial advisory firm.  UBS is the indirect subsidiary of UBS Group AG ("**UBS AG**").  UBS AG and its subsidiaries, branches and affiliates, including UBS (collectively, "**UBS Group**") provide a wide range of investment banking, commercial banking and other financial services (including wealth, asset and investment management, corporate finance and sales, trading, and research) through its various business groups, including through UBS AG's global investment banking business group, of which UBS is a part (collectively, the "**UBS Investment Bank**").  UBS is registered as a broker-dealer with the Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.

10.     The Committee has selected UBS to perform investment banking services necessary and desirable in these Chapter 11 Cases on behalf of the Committee.  UBS has extensive experience providing investment banking services to financially distressed companies and to creditors, equity holders and other constituencies in reorganization proceedings and complex financial restructurings, both in-court and out-of-court.

11.     For instance, UBS is providing or has provided investment banking and other services in connection with the restructuring of *In re Frontier Communications Corporation,*

20-22476 (RDD) (Bankr. S.D.N.Y.), *In re VIP Cinema Holdings, Inc.*, 20-10345 (MFW) (Bankr. D. Del. 2020), and *In re RAIT Funding, LLC*, 19-11915 (BLS) (Bankr. D. Del. 2019).

## SCOPE OF INVESTMENT BANKING SERVICES

12.    UBS believes that its services will not duplicate the services that other professionals will be providing to the Committee in these Chapter 11 Cases. Although UBS will carry out unique functions, it will use reasonable efforts to coordinate with the Committee's other retained professionals to avoid the unnecessary duplication of services. The Committee firmly believes that UBS will provide these necessary investment banking services in a cost-effective, efficient and expert manner.

13.    Subject to the Court's approval, the Committee anticipates that it will be necessary for UBS to perform the following investment banking services, among others, pursuant to the Engagement Letter, as mutually agreed upon by UBS and the Committee:[2]

a)  Review and analyze the Debtors' business, operations, properties, financial condition and prospects;

b)  Analyze the Debtors' business plans, financial projections and forecasts;

c)  Assist the Committee in analyzing the Debtors' debt capacity, enterprise value, alternative capital structures (including any refinancings), assets and liabilities, various restructuring scenarios, and strategic alternatives;

d)  Review and analyze any plan of reorganization, disclosure statement and any liquidation analyses relating to the Debtors, including, if applicable, the development and analysis of any plan of reorganization proposed by the Committee;

e)  Advise and assist the Committee in reviewing and evaluating any motions, applications or other forms of relief filed or to be filed by the Debtors or any other parties-in-interest in the Bankruptcy Cases;

---

[2]    To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

f)   Analyze and monitor any prior, pending and future sale processes and transactions and assets, the reasonableness of such processes and the consideration received;

g)   Analyze the Debtors' assets and liabilities, and potential recoveries to creditor constituencies under various scenarios;

h)   Analyze intercompany and/or related party transactions of the Debtors and non-Debtor affiliates;

i)   Advise and assist the Committee with respect to any debtor-in-possession financing arrangements, including assist the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any chapter 11 plan(s) or otherwise;

j)   Representing the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing;

k)   Attend Committee meetings and Bankruptcy Court hearings as may be required;

l)   Provide the services of testifying experts, including testimony and expert reports, as requested by the Committee, such services to be paid for at the testifying experts' ordinary hourly rate, which, as it relates to UBS' expected testifying expert Elizabeth LaPuma, is $1,375 per hour;

m)   Review and provide an analysis of any valuation of the Debtors or their assets; and

n)   Such other investment banking services in connection with a Restructuring (as defined below) as UBS and the Committee may agree.

14.    BRG and UBS will coordinate all of their services to the Committee to avoid or minimize any unnecessary duplication of services and any potential burden on the Debtors and their professional advisors.  BRG and UBS each have experience serving alongside other advisors to the same client and ensuring that best practices are maintained in the provision of services to the Committee.  Due to the complexity of the Debtors' Chapter 11 Cases, and the nature and scope

of the Debtors' operations and capital structure, the Committee has chosen to employ UBS to provide investment banking services and to retain BRG to provide financial advisory services.

## PROFESSIONAL COMPENSATION

15.     The Committee understands that investment bankers such as UBS do not customarily charge for their services on an hourly basis other than in connection with expert testimony.  Instead, they charge a monthly advisory fee plus an additional fee contingent on the occurrence of a specific transaction.  The Committee understands and agrees that, subject to the Court's approval, UBS will be entitled to be compensated in accordance with the following customary structure for its services pursuant to, and as further explained by, the Engagement Letter (the "**Fee Structure**"):

a)      **Monthly Fees:** Commencing as of the Effective Date, whether or not a Restructuring (as defined below) is consummated, a nonrefundable monthly fee of $200,000 (the "Monthly Fee"), the first of which shall be due and paid by the Debtors upon approval of this Agreement by the Bankruptcy Court and thereafter on each monthly anniversary of the Effective Date, prorated for any partial month.  Twenty-five percent (25%) of the Monthly Fees actually paid after 10 months from the Effective Date shall be credited (without duplication) against any Completion Fee (as defined below) payable hereunder.

b)      **Completion Fee:** A fee (a "Completion Fee") shall be payable to UBS upon the effective date of any Restructuring in the amount of $6,500,000.

16.     As used in this Agreement, the term "Restructuring" shall mean, collectively, (i) any restructuring, reorganization, rescheduling, recapitalization or repayment of all or more than a majority of the Debtors' liabilities, including, without limitation, through a plan of reorganization or liquidation (as may be modified from time to time, a "Plan") confirmed in the Bankruptcy Cases, or any other change of control of the Debtors, whether in a section 363 sale (including via credit bid) or through a Plan or otherwise and whether in one or a series of

transactions, or any transaction similar to the foregoing; or (ii)(a) any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which a majority of the business, equity or assets of the Debtors are, directly or indirectly, sold, purchased or combined with another entity, or (b) any transaction that involves the disposition in one or a series of related transactions, of all or more than a majority of the assets or businesses of the Debtors or their subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, the formation of a joint venture, partnership or similar entity, or any similar transaction.  In addition to any fees that may be paid to UBS under the Engagement Letter, the Engagement Letter provides that, whether or not any restructuring occurs, the Debtors shall reimburse UBS for all out-of-pocket expenses (including reasonable fees and expenses of its counsel) incurred in connection with its engagement by the Committee (the "**Expenses**").

17.    The Committee believes that the Fee Structure and Expenses set forth in the Engagement Letter are reasonable.  The Fee Structure and Expenses appropriately reflect the nature of the services to be provided by UBS and the fee structures typically utilized by leading investment banking firms of similar stature to UBS for comparable engagements, both in and out of court.  The Fee Structure and Expenses are consistent with UBS' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  Moreover, the Fee Structure is reasonable in light of (a) investment banker charges for comparable services both in and out of the chapter 11 context, (b) industry practice, (c) UBS' global expertise and experience with respect to investment banking services and (d) the nature and scope of work to be performed by UBS in these cases. In particular, the Committee believes that

the Fee Structure creates a proper balance between fixed monthly fees and contingency fees, and that the Fee Structure was negotiated at arms' length.

18.     UBS' industry and restructuring experience, its capital markets knowledge, financing-related skills, and mergers and acquisitions capabilities, some or all of which may be required by the Committee during the term of UBS' engagement, were important factors in determining the Fee Structure.  The ultimate benefit to the Committee of UBS' services could not be measured merely by reference to the number of hours to be expended by UBS' professionals in the performance of such services.  Moreover, the Fee Structure takes into consideration UBS' anticipation that it will need to provide a substantial commitment of professional time and effort in order to perform its duties under the Engagement Letter and in light of the fact that such commitment may foreclose other opportunities for UBS.  Further, the actual time and commitment required of UBS and its professionals to render services to the Committee may vary substantially from week to week or month to month, creating "peak load" issues for the firm.  As reflected above, the Engagement Letter sets forth the fixed and contingent fees that are to be payable to UBS.

19.     In light of the Fee Structure's fixed fee component, the Committee requests that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the submission and approval of fee applications, UBS' professionals be excused from maintaining time records in 1/10th of an hour increments.  UBS will nonetheless maintain summary time records, in half-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.  Courts in other large chapter 11 cases have excused flat-fee professionals from timekeeping requirements under similar circumstances.

*See, e.g., In re Southland Royalty Co. LLC*, Case No. 20-10158 (KBO) (Bankr. D. Del. May 7, 2020), ECF No. 404; *In re Dura Automotive Sys., LLC*, Case No. 19-12378-KBO (Bankr. D. Del. Dec. 19, 2019), ECF No. 453; *In re Emerge Energy Servs. LP*, Case No. 19-11563 (KBO) (Bankr. D. Del. Sept. 25, 2019), ECF No. 406; *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Aug. 7, 2019), ECF No. 927; *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. July 1, 2019), ECF No. 370; *In re The NORDAM Group, Inc.*, Case No. 18-11699 (MFW) (Bankr. D. Del. Sep. 19, 2018), ECF No. 301; *In re M & G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Jan. 5, 2018), ECF No. 624.

20.    During the pendency of these Chapter 11 Cases, UBS will apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Proposed Order and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

## INDEMNIFICATION AND CONTRIBUTION

21.    As part of the overall compensation payable to UBS under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification and contribution obligations by the Debtors to UBS from and against any claims, liabilities, losses, damages, costs and expenses, as incurred, related to or arising out of or in connection with UBS' services under the Engagement Letter.[3]  Such terms of indemnification, as modified by the Proposed Order, reflect

---

[3]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

the customary qualifications and limits on such terms for investment bankers such as UBS in chapter 11 cases.

22.     The Committee believes such provisions are customary and reasonable for UBS' engagement.  Further, UBS and the Committee believe that such provisions are comparable to those generally obtained by investment banking firms of similar stature to UBS and for comparable engagements, both in and out of court.

23.     Accordingly, as part of this Application, the Committee requests that the Court approve the Indemnification Agreement subject to the modifications set forth in the Proposed Order.

24.     Thus, because of UBS' expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that UBS has devoted and will continue to devote to this engagement, the Committee requests that the Court approve the Fee Structure pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate UBS' final compensation and reimbursement of expenses in these Chapter 11 Cases under the standards of section 328(a) of the Bankruptcy Code rather than under those of section 330 of the Bankruptcy Code, subject to UBS filing any required fee applications in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the U.S. Trustee Guidelines as modified by the Proposed Order.

**BASIS FOR RELIEF**

25.     The Committee seeks authority to employ and retain UBS as their investment banker under section 1103(a) of the Bankruptcy Code, which provides in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment . . . of

one or more attorneys, accountants, or other agents, to represent or perform services" for the Committee.  11 U.S.C. § 1103(a).

26.    In addition, the Committee seeks approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure and the indemnification provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Committee "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).  Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*), 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted); *see also Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors* (*In re Smart World Techs. LLC*), 383 B.R. 869, 874 (S.D.N.Y. 2008) (citing *In re Nat'l Gypsum Co.*).  Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  *See, e.g.*, *In re Chaparral Energy, Inc.*, Case No. 16-11144 (LSS) (Bankr. D.

Del. June 10, 2016); *In re Energy & Exp. Partners, Inc.*, Case No. 15-44931 (RFN) (Bankr. N.D.

Tex. Feb. 8, 2016).

27.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (amendment emphasized).  This change makes clear that the Committee is able

to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure,

with bankruptcy court approval.

28.     The Engagement Letter appropriately reflects (i) the nature and scope of

services to be provided by UBS, (ii) UBS' substantial experience with respect to investment

banking services and (iii) the Fee and Expense Structures typically utilized by UBS and other

leading financial advisors and investment bankers that do not bill their clients on an hourly basis.

29.     Similar fixed and contingency fee arrangements have been approved and

implemented by courts in other large chapter 11 cases.  *See, e.g., In re Dura Automotive Sys., LLC*,

Case No. 19-12378-KBO (Bankr. D. Del. Dec. 19, 2019), ECF No. 453; *In re Emerge Energy

Servs. LP*, Case No. 19-11563 (KBO) (Bankr. D. Del. Sept. 25, 2019), ECF No. 406; *In re Imerys

Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Aug. 7, 2019), ECF No. 927; *In re

Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. July 1, 2019), ECF No. 370; *In

re The NORDAM Group, Inc.*, Case No. 18-11699 (MFW) (Bankr. D. Del. Sep. 19, 2018), ECF

No. 301; *In re M & G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Jan. 5, 2018), ECF No. 624.[4]

30.     Accordingly, the Committee believes that UBS retention on the terms and conditions proposed herein is appropriate.

## DISINTERESTEDNESS

31.     The Committee seeks to appoint UBS as its investment banker in accordance with sections 328(a) and 1103 of the Bankruptcy Code.  Section 328(a) authorizes a committee appointed under section 1102 of the Bankruptcy Code, with the court's approval, to employ a "professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 1103, in turn, requires that an attorney employed to represent a committee "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103.

32.     In connection with its proposed retention by the Committee in these Chapter 11 Cases, UBS reviewed relationships between it and the individuals and entities that UBS has been informed by the Debtors may have an interest in these Chapter 11 Cases (the "**Potential Parties in Interest**"), and such parties are listed on Schedule 1 to the LaPuma Declaration.  UBS has informed the Committee that in its view it:

> (a)     does not hold or represent an interest adverse to the Committee, the Debtors, or the estates in these Chapter 11 Cases;
>
> (b)     is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code; and

---

[4]     Because of the voluminous nature of the orders cited in this Application, they are not attached to the Application.  Copies of these orders are available upon request to the Committee's proposed counsel.

(c)    has no connection with the Committee, the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee in these Chapter 11 Cases, except as may be disclosed in the LaPuma Declaration.

33.    UBS has fully informed the Committee of its ongoing representations as described in the LaPuma Declaration and the Committee has consented to UBS' continued representation of such entities in matters unrelated to these proceedings.

34.    UBS has informed the Committee that UBS will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise in these Chapter 11 Cases.  If any new relevant facts or relationships are discovered or arise, UBS will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

35.    The Committee submits that for all the reasons stated above and in the LaPuma Declaration, the retention and employment of UBS as investment banker to the Committee is warranted under sections 328(a) and 1103.  Further, as described in the LaPuma Declaration, UBS does not represent any entity in connection with the Debtors' cases other than the Committee, is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and does not represent or hold any interest adverse to the interests of the Debtors' estates with respect to the matters for which it is to be employed.  Based on the foregoing and the LaPuma Declaration, UBS is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code.

## NOTICE

36.    Notice of this Application shall be given to: notice of this Motion to the following parties and/or their respective counsel, as applicable: (i) the U.S. Trustee; (ii) counsel to the Debtors; and (iii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## <u>NO PREVIOUS REQUEST</u>

37.     No previous request for the relief sought herein has been made by the Committee to this or any other court.

[Remainder of the Page Intentionally Left Blank]

WHEREFORE the Committee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 22, 2020

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE HERTZ CORPORATION, *ET AL.***

By:_____

James Sheppard on behalf of Southwest Airlines Co., in its capacity as Chair of the Official Committee of Unsecured Creditors of The Hertz Corporation, *et al.*