## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| THE HERTZ CORPORATION, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 137, 204, 559** |

**THIRD AGREED ORDER (I) AUTHORIZING USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF TO PREPETITION SECURED PARTIES**

The Hertz Corporation ("Hertz") and the other debtors and debtors in possession in the above-captioned cases (collectively with Hertz, the "Debtors") have agreed with the Prepetition Secured Parties (as defined below) to entry of this third agreed order (the "Third Agreed Order") (i) authorizing use of cash collateral and (ii) granting adequate protection to the Prepetition Secured Parties of their respective interests in the Undisputed Prepetition Collateral (as defined below) and related relief.[2]

## RECITALS

A.      **Petition Date; Debtors-in-Possession.**  On May 22, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code") commencing

---

[1]      The last four digits of The Hertz Corporation's tax identification number are 8568.  The location of the Debtors' service address is 8501 Williams Road, Estero, FL 33928.  Due to the large number of debtors in these chapter 11 cases, which are jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2]      Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the *Motion of Debtors for Entry of Agreed Interim Orders (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection and Related Relief to Prepetition Secured Parties and Prepetition Sidecar Secured Parties* [ECF No. 137] (the "Motion").

these chapter 11 cases (the "Cases") with the United States Bankruptcy Court for the District of Delaware (this "Court").  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On June 11, 2020, the U.S. Trustee appointed a statutory committee of unsecured creditors (the "Committee").  No trustee or examiner has been appointed in these Cases.

B.      **Jurisdiction and Venue.**  This Court has core jurisdiction over the Cases, and the parties and property affected hereby, including the Prepetition Secured Parties and the Undisputed Prepetition Collateral, pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the relief granted herein are sections 361, 362, and 363 of the Bankruptcy Code, and Bankruptcy Rule 4001.

C.      **Notice.**  The Debtors have provided notice of the proposed Third Agreed Order, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) the U.S. Notes Agent; (iii) the Senior Credit Agreement Agent; (iv) the administrative agent under the ALOC Facility; (v) the successor trustee under the Promissory Notes; (vi) the U.S. ABS Agent; (vii) the indenture trustee under the HFLF ABS Notes; (viii) the administrative agent and collateral agent under the U.S. Vehicle RCF; (ix) the indenture trustee under the European Vehicle Notes; (x) the administrative agent and collateral agent under the European ABS Notes; (xi) the indenture trustee and collateral agent under the Hertz Canadian Securitization Notes; (xii) the lender under the Donlen Canada Securitization Program; (xiii) the administrative agent and the security trustee under the Australian Securitization Notes; (xiv) the lender under the New Zealand RCF; (xv) the lender under the U.K. Financing Facility; (xvi) the successor trustee under the Promissory Notes; (xvii) the indenture trustee and

2

collateral agent under the Prepetition Second Lien Notes; (xviii) Willkie Farr & Gallagher LLP as counsel to the ad hoc group of certain holders of the Company's Senior Notes (the "Ad Hoc Noteholder Group"); (xix) counsel to the Committee; (xx) the Internal Revenue Service; (xxi) the Securities and Exchange Commission; (xxii) the United States Attorney for the District of Delaware; (xxiii) the state attorneys general for all states in which the Debtors conduct business; (xxiv) any such other party entitled to notice pursuant to Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; and (xxv) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Under the circumstances, such notice of the proposed Third Agreed Order and the relief granted herein complies with Bankruptcy Rule 4001(a), and no other notice need be provided for entry of this Third Agreed Order.

D.    **The Debtors' Prepetition Indebtedness Under Corporate RAC, Letter of Credit Facilities and Senior Secured Second Priority Notes**.

(i)    **$700 Million Senior Term Loan Facility Due 2023 and $862 Million Senior Revolving Credit Facility Due 2021**.  Hertz and the Subsidiary Borrowers (as defined in the RAC Credit Agreement (as defined below)) from time to time party thereto, as borrowers, the several banks and other financial institutions from time to time parties thereto, as lenders, Barclays Bank PLC, as administrative agent and as collateral agent (in such capacities, the "RAC Loan Agent" and the RAC Loan Agent together with the other Credit Facility Secured Parties (as defined in the Guarantee and Collateral Agreement (as defined below)), the "RAC Secured Parties") and the other parties from time to time party thereto, are parties to that certain Credit Agreement, dated as of June 30, 2016 (as amended by the first amendment, dated as of February 3, 2017, the second amendment dated as of February 15, 2017, the third amendment dated as of November 2, 2017,

3

the limited waiver, forbearance and fourth amendment, dated as of May 4, 2020, and as further amended, amended and restated, supplemented or otherwise modified as of the date hereof, the "RAC Credit Agreement", and the RAC Credit Agreement collectively with any other agreements and documents executed or delivered in connection therewith, including the "Loan Documents", as defined therein, and each as amended, restated, supplemented, or otherwise modified as of the date hereof, the "RAC Loan Documents"). All Obligations (as defined in the Guarantee and Collateral Agreement (as defined below)) of the RAC Loan Parties (as defined below) in respect of the RAC Loan Documents, the Bank Product Agreements (as defined in the RAC Credit Agreement) entered into with Bank Products Providers and Bank Products Affiliates (each as defined in the Guarantee and Collateral Agreement) (collectively, the "First Lien Bank Products Agreements"), and Hedge Agreements (as defined in the RAC Credit Agreement) entered into with Hedging Providers and Hedging Affiliates (each as defined in the Guarantee and Collateral Agreement) (collectively, the "First Lien Hedge Agreements"), shall collectively be referred to herein as the "RAC Obligations".  Hertz, Rental Car Intermediate Holdings, LLC ("Holdings") and certain of their subsidiaries that are party to or otherwise obligated under the RAC Loan Documents are hereinafter collectively referred to as the "RAC Loan Parties".  As of the Petition Date, the RAC Obligations included (without limitation) the outstanding principal amount of the Term Loans (as defined in the RAC Credit Agreement) under the RAC Credit Agreement totaling approximately $656,250,000, the outstanding principal amount of the Revolving Loans (as defined in the RAC Credit Agreement) under the RAC Credit Agreement totaling approximately $615,000,000, the outstanding amounts of the L/C Obligations (as defined in the RAC Credit Agreement) totaling approximately $242,748,000, and the outstanding principal amount of First Lien Hedge Agreements totaling approximately $2,312,987.44, *plus* all accrued and hereafter

4

accruing and unpaid interest thereon and any additional fees and expenses of the RAC Secured Parties (including, without limitation, any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the RAC Credit Agreement) to the extent permitted under the applicable RAC Loan Documents.

(ii)     $400 Million Letter of Credit Facility Due 2021. Hertz as applicant, the several banks and other financial institutions from time to time party thereto as lenders and issuing lenders and Barclays Bank PLC, as administrative agent and as collateral agent (in such capacities, the "LC Agent," and together with the RAC Loan Agent, the "Prepetition First Lien Agents"), the LC Agent, together with the other "L/C Secured Parties" (as defined in the Guarantee and Collateral Agreement (as defined below)), the "LC Secured Parties", and the LC Secured Parties, together with the RAC Secured Parties, the "Prepetition First Lien Secured Parties") are party to that certain Letter of Credit Agreement, dated as of November 2, 2017 (as amended by the limited waiver, forbearance and first amendment, dated as of May 4, 2020, and as further amended and restated, supplemented or otherwise modified as of the date hereof, the "Letter of Credit Agreement", and the Letter of Credit Agreement collectively with any other agreements and documents executed or delivered in connection therewith, including the "Credit Documents", as defined therein, each as amended, restated, supplemented, or otherwise modified as of the date hereof, the "LC Credit Documents", together with the RAC Loan Documents, the First Lien Bank Products Agreements and the First Lien Hedge Agreements, the "Prepetition First Lien Loan Documents").  All Obligations (as defined in the Guarantee and Collateral Agreement) of the Debtors in respect of the LC Credit Documents shall collectively be referred to herein as the "LC Obligations" (together with the RAC Obligations, the "Prepetition First Lien Obligations").  Hertz, Holdings and certain of their subsidiaries that are party to or otherwise obligated under the LC

5

Credit Documents are hereinafter collectively referred to as the "LC Loan Parties" and, together with the RAC Loan Parties, the "Prepetition First Lien Loan Parties". As of the Petition Date, the LC Obligations included (without limitation) the amount of letters of credit issued and outstanding (including any unreimbursed amounts thereunder) under the Letter of Credit Agreement totaling approximately $299,031,000, *plus* all accrued and hereafter accruing and unpaid interest thereon and any additional fees and expenses (including, without limitation, any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Letter of Credit Agreement) to the extent permitted under the applicable LC Credit Documents.

(iii)    Prepetition First Lien Collateral.  Holdings, Hertz and certain of its subsidiaries, as "Guarantors" (as defined in the Guarantee and Collateral Agreement), have granted security interests in the Security Collateral (as defined in the Guarantee and Collateral Agreement) to secure the Prepetition First Lien Obligations (the "Prepetition First Lien Security Collateral"), pursuant to that certain Guarantee and Collateral Agreement, dated as of June 30, 2016 (as amended by the Amended and Restated Guarantee and Collateral Agreement, dated as of November 2, 2017, and as further amended, amended and restated, supplemented or otherwise modified through the date hereof, the "Guarantee and Collateral Agreement") by and among Hertz, Holdings and the other Guarantors from time to time party thereto in favor of Barclays Bank PLC, as Common Collateral Agent (as defined therein).  Additionally, each Guarantor (as defined in the Guarantee and Collateral Agreement) has unconditionally and irrevocably guaranteed the prompt and complete payment and performance of the Prepetition First Lien Obligations.  Separately, certain of the Prepetition First Lien Loan Parties have granted liens on certain real property owned in fee by such Prepetition First Lien Loan Parties by way of mortgages, and/or deeds of trust in

connection with the Prepetition First Lien Obligations (the "Prepetition First Lien Mortgages"). Also, the Prepetition Loan Parties have granted liens on certain risk retention interests of the Grantors and proceeds including distributions thereon (a) under the HVF II U.S. ABS Program, (x) the Class RR Notes issued as part of the Series 2013-A Notes, a series of variable-funding notes issued by Hertz Vehicle Financing II LP; and (y) the Class RR Notes issued as part of each of the following series of medium-term notes issued by Hertz Vehicle Financing II LP: (i) Series 2017-1; (ii) Series 2017-2; (iii) Series 2018-1; (iv) Series 2018-2; (v) Series 2018-3; (vi) Series 2019-1; (vii) Series 2019-2; and (viii) Series 2019-3; and (b) under the Donlen U.S. ABS Program, the Class RR Notes issued as part of the Series 2013-2 Notes, a series of variable-funding notes issued by Hertz Fleet Lease Funding LP (such notes described in clauses (a) and (b), the "Risk Retention Interests") and, together with the Prepetition First Lien Mortgages and the Prepetition First Lien Security Collateral, the "Prepetition First Lien Collateral").

(iv)    Senior Secured Second Priority Notes.    Hertz, as issuer (the "Prepetition Notes Issuer"), the Subsidiary Guarantors (as defined in the Prepetition Second Lien Indenture (as defined below)) under the Prepetition Second Lien Indenture, BOKF National Association as successor trustee to Wells Fargo Bank, National Association, as trustee (the "Prepetition Second Lien Trustee"), and BOKF, National Association, as successor to Wells Fargo Bank, National Association, as note collateral agent (the "Prepetition Second Lien Collateral Agent" and, together with the Prepetition First Lien Agents, the "Prepetition Agents"), in each case for the benefit of the "Holders" (as defined in the Prepetition Second Lien Indenture) (such Holders, together with the Prepetition Second Lien Trustee and the Prepetition Second Lien Collateral Agents, the "Prepetition Second Lien Secured Parties", and the Prepetition Second Lien Secured Parties together with the Prepetition First Lien Secured Parties, the "Prepetition Secured

7

Parties") are party to that certain Indenture and First Supplemental Indenture, both dated as of June 6, 2017 (together, as amended, restated, amended and restated, supplemented, waived, or otherwise modified as of the date hereof, the "Prepetition Second Lien Indenture," and the Prepetition Second Lien Indenture collectively with any other agreements and documents executed or delivered in connection therewith, including the Prepetition Second Lien Collateral Agreement (as defined below), and each such document as amended, restated, amended and restated, supplemented, waived and/or otherwise modified as of the date hereof, the "Prepetition Second Lien Notes Documents", and together with the Prepetition First Lien Loan Documents, the "Prepetition Loan Documents"). All Obligations (as defined in the Prepetition Second Lien Indenture or the other Prepetition Second Lien Notes Documents) of the Debtors shall collectively be referred to herein as the "Prepetition Second Lien Obligations", and together with Prepetition First Lien Loan Obligations, as the "Prepetition Loan Obligations". The Prepetition Notes Issuer issued those certain Senior Secured Second Priority Notes due 2022 in the original aggregate principal amount of $1,250,000,000 pursuant to the Prepetition Second Lien Indenture (the "Prepetition Second Lien Notes"). As of the Petition Date, the aggregate outstanding principal amount of the Prepetition Second Lien Obligations included the outstanding principal amount under the Prepetition Second Lien Indenture totaling $350,000,000 *plus* all accrued and hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Second Lien Indenture) to the extent permitted under the applicable Prepetition Second Lien Notes Documents. Hertz and certain of its subsidiaries, as "Grantors" (as defined in the Prepetition Second Lien Collateral Agreement) have granted security interests in the Security Collateral (as defined in the Prepetition Second Lien Collateral Agreement) to secure the

8

Prepetition Second Lien Obligations (the "<u>Prepetition Second Lien Security Collateral</u>") pursuant to that certain Collateral Agreement, dated as of June 6, 2017 (as further amended, amended and restated, supplemented or otherwise modified through the date hereof, the "<u>Prepetition Second Lien Collateral Agreement</u>", and together with the Guarantee and Collateral Agreement, the "<u>Prepetition Collateral Agreements</u>") by Hertz and the other Grantors from time to time party thereto in favor of BOKF, National Association as successor to Wells Fargo Bank, National Association, as Note Collateral Agent (as defined therein).  Separately, certain of the Prepetition Notes Issuer and Subsidiary Guarantors have granted liens on certain real property owned in fee by such Prepetition Notes Issuer and Subsidiary Guarantors by way of mortgages, and/or deeds of trust in connection with the Prepetition Second Lien Obligations (the "<u>Prepetition Second Lien Mortgages</u>").  Also, the Prepetition Notes Issuer and Subsidiary Guarantors have granted liens on the Risk Retention Interests (the Risk Retention Interests, together with the Prepetition Second Lien Mortgages and the Prepetition Second Lien Security Collateral, the "<u>Prepetition Second Lien Collateral</u>" and, together with the Prepetition First Lien Collateral, the "<u>Undisputed Prepetition Collateral</u>").

(v)      <u>Undisputed Prepetition Collateral; Certain Cash Collateral</u>.

(a)      <u>Undisputed Corporate Cash Collateral</u>.      Undisputed Prepetition Collateral and the Prepetition Secured Parties' "cash collateral" (as defined in the Bankruptcy Code) includes (x) certain cash on deposit as of the Petition Date in (i) the account number *4295 maintained by JP Morgan Chase in the name of Hertz (the "<u>JPMC Account</u>"), (ii) the account number *7509 maintained by JP Morgan Chase in the Name of THC (the "<u>THC AP Account</u>"), (iii) the account number *6506 maintained by JP Morgan Chase in the name of DTG Operations, Inc. (the "<u>DTG AP Account</u>"), and (iv) the accounts listed on **Exhibit B** to the *Second*

9

*Agreed Interim Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection and Related Relief to Prepetition Secured Parties* [ECF No. 559] (the "Second Agreed Order"),[3] (y) certain receivables and payments received after the Petition Date on account of certain contracts and agreements entered into and completed prior to the Petition Date[4] (other than the Donlen Collateral (as defined below)), which receivables and payments have been and shall continue to be deposited into the Segregated Undisputed Corporate Cash Collateral Account (as defined below), and (z) cash proceeds, if any, of Undisputed Prepetition Collateral received prior to and after the Petition Date (such cash collateral, the "Undisputed Corporate Cash Collateral"). Subject to the limitations contained in Paragraph 3(l) of this Third Agreed Order, the Debtors, the Committee and the Ad Hoc Noteholder Group reserve all rights to challenge such transfers or whether the amounts referenced in (y) and (z) constitute Undisputed Corporate Cash Collateral. As of the Petition Date, the balance of the JPMC Account was $27,546,033.71, the balance of the THC AP Account was $5,598,288.48, and the balance of the DTG AP Account was $1,760,271.78.

(b)    Undisputed Donlen Cash Collateral.    Debtor Donlen Corporation ("Donlen"), is (x) a "Grantor" under the Guarantee and Collateral Agreement and the Prepetition Second Lien Collateral Agreement and (y) a "Guarantor" under the Guarantee and Collateral Agreement and the Prepetition Second Lien Indenture, and has pledged, among other things, its Accounts in respect of Receivables arising from or otherwise relating to fleet management services (excluding any such Accounts that have been sold or otherwise transferred (and not transferred back to Donlen) in connection with a Special Purpose Financing (as defined

---

[3]    The Undisputed Corporate Cash Collateral (as defined below) and Sidecar Cash Collateral (as defined in the Motion) in such accounts has been segregated in the Segregated Lenders Account (as defined below).

[4]    Such contracts and agreements include, without limitation, customer vehicle lease agreements entered into prior to the Petition Date.

in the Guarantee and Collateral Agreement and the Prepetition Second Lien Collateral Agreement, respectively, *provided* that any money, securities or other consideration received by any Grantor as consideration for the sale or transfer of such Receivables constitute Undisputed Prepetition Collateral), the Contracts pertaining thereto and the Proceeds thereof (as each term is defined in the Guarantee and Collateral Agreement and the Prepetition Second Lien Collateral Agreement, respectively), for the benefit of the Prepetition Secured Parties (collectively, the "Donlen Collateral"). The Donlen Collateral constitutes Undisputed Prepetition Collateral and payments received by Donlen on account of the Donlen Collateral is the Prepetition Secured Parties' cash collateral (the "Undisputed Donlen Cash Collateral").

(c)    Disputed Cash. The Debtors assert that all of the Debtors' cash on hand as of the Petition Date, and all or substantially all of the cash generated by the Debtors after the Petition Date and cash held in other deposit accounts, money market accounts and/or investment accounts, in each case other than Undisputed Corporate Cash Collateral, Undisputed Donlen Cash Collateral and Sidecar Cash Collateral (as defined in the Motion), is and will be unencumbered (the "Disputed Cash") and is therefore neither Undisputed Prepetition Collateral nor the Prepetition Secured Parties' cash collateral. The Prepetition Secured Parties assert to the contrary and have therefore reserved the right to assert that all or a portion of the Disputed Cash constitutes their cash collateral, and that they are entitled to adequate protection for the Debtors' use of such cash collateral. As used in and for the purposes of this Third Agreed Order, the terms "Undisputed Prepetition Collateral", "Undisputed Corporate Cash Collateral" and "Undisputed Donlen Cash Collateral" shall not include the Disputed Cash, *provided, however,* that all or a portion of the Disputed Cash may ultimately be included within the terms "Undisputed Prepetition Collateral", "Undisputed Corporate Cash Collateral", and/or "Undisputed Donlen Cash

11

Collateral," solely to the extent this Court ultimately concludes, by entry of an unstayed order (only so long as such determination remains in effect and is not reversed), that all or a portion of the Disputed Cash constitutes cash collateral of the Prepetition Secured Parties; *provided further, however,* that (i) nothing contained in this paragraph shall preclude the Debtors, the Committee or the Ad Hoc Noteholder Group from asserting that all or a portion of the Undisputed Prepetition Collateral, Undisputed Corporate Cash Collateral, and/or Undisputed Donlen Cash Collateral constitutes unencumbered cash, and (ii) the Prepetition Secured Parties', the Debtors', the Committee's and the Ad Hoc Noteholder Group's rights are reserved with respect to the characterization of (a) the accounts referenced in this paragraph as deposit accounts, money market accounts, and/or investment accounts, and (b) the funds in such accounts as cash and/or investments.

E.      **Formation of Ad Hoc Groups.**  Certain term lenders under the RAC Credit Agreement are members of an *ad hoc* group represented by Arnold & Porter Kaye Scholer LLP and Houlihan Lokey Capital, Inc. (the "Ad Hoc First Lien Group").  Certain Holders of the Prepetition Second Lien Notes are members of an *ad hoc* group represented by Akin Gump Strauss Hauer & Feld LLP and TRS Advisors LLC (the "Ad Hoc Second Lien Group" and, together with the Ad Hoc First Lien Group, the "Ad Hoc Groups").

F.      **Adequate Protection for Prepetition Secured Parties.**  Pursuant to this Third Agreed Order, the Debtors have agreed to provide the Prepetition Secured Parties with the adequate protection and the Prepetition Secured Parties have agreed to consent to the Debtors' use of the Undisputed Donlen Cash Collateral, in each case solely to the extent set forth herein, pursuant to sections 361, 362, 363, and 507 of the Bankruptcy Code, and in each case through (a) the entry of a further order issued by the Court following the Further Hearing (defined below) to

12

be held, if such hearing proves necessary, on January 13, 2021, at which the Court would consider the extent to which the Prepetition Secured Parties are entitled to adequate protection of their interests and enter an order with respect to such issue (the "<u>Adequate Protection Determination Order</u>") or January 14, 2021 if no Adequate Protection Motion is filed by the date set forth in Paragraph 6(a), and the Further Hearing is not held, or (b) such other date as set forth in a separate order of this Court (such period the "<u>Second Adequate Protection Period</u>"); *provided* that, with respect to the matters not determined by the Court in advance of the Adequate Protection Determination Order, entry of the Adequate Protection Determination Order shall not prejudice the Debtors', the Committee's, or the Ad Hoc Noteholder Group's ability to bring a Challenge Proceeding (as defined below), subject to the limitations contained in Paragraph 3(l) of this Third Agreed Order.  Neither the Debtors, the Prepetition Secured Parties, the Committee, nor the Ad Hoc Noteholder Group will be prejudiced by the relief set forth herein, in light of the protections and reservations set forth in this Third Agreed Order.

G.      **Relief Essential; Good Cause; Best Interest.**  The Prepetition Secured Parties have asserted that, absent grant of the relief set forth in the Third Agreed Order, the Prepetition Secured Parties will be irreparably harmed without the requested adequate protection from any dissipation and/or diminution in value of their interests in the Undisputed Prepetition Collateral pending entry of the Adequate Protection Determination Order.  The Debtors have asserted that the ability of the Debtors to continue to use the Undisputed Donlen Cash Collateral is vital to the Debtors, their estates, creditors and other parties in interest.  The Debtors have further asserted that the liquidity to be provided through the use of the Undisputed Donlen Cash Collateral will assist the Debtors in continuing to operate their businesses in the ordinary course and preserve the value of their businesses.  For purposes of this Third Agreed Order only and for no other

13

purpose including the Further Hearing, the Court concludes that entry of this Third Agreed Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the sustained operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful restructuring.

NOW, THEREFORE, based on the record before this Court, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.      **Entry of Third Agreed Order.**  Upon the entry of this Third Agreed Order, and subject to the terms of and solely to the extent set forth herein, the Prepetition Secured Parties are entitled to adequate protection of their interests in the Undisputed Prepetition Collateral, without prejudice to the rights of the Debtors, the Committee, the Prepetition Secured Parties, or the Ad Hoc Noteholder Group to request modified or additional adequate protection upon a properly noticed motion (and without prejudice to the rights of any party to seek shortened notice of such motion) to this Court to be heard at the Further Hearing.

2.      **Authorization of Use of Undisputed Donlen Cash Collateral.**  Subject to the terms hereof, Donlen is hereby authorized to use Undisputed Donlen Cash Collateral solely in the ordinary course of business, and in accordance with past practices, for Donlen's working capital requirements, Donlen's general corporate purposes and the allocated costs and expenses of administering Donlen's chapter 11 case through and including the Second Adequate Protection Period.

3.      **Adequate Protection.**  In addition to the reporting and access obligations set forth in **Exhibit A**, as adequate protection for the asserted interests of the Prepetition Secured Parties in the Undisputed Prepetition Collateral (including the Undisputed Corporate Cash Collateral and

14

Undisputed Donlen Cash Collateral) through and including the Second Adequate Protection Period, each of the Prepetition Agents, for itself and on behalf of the Prepetition Secured Parties, shall receive the following adequate protection:

(a)    <u>Segregation of Undisputed Corporate Cash Collateral</u>.    Consistent with the requirements and obligations contained in the *Agreed Interim Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection and Related Relief to Prepetition Secured Parties* [ECF No. 204] (the "<u>First Agreed Order</u>"), on or about June 4, 2020, the Debtors established (i) an account (with account number ending in *2198) in the name of THC with J.P. Morgan Chase Bank ("<u>JPMC</u>") and subject to, in the case of the Prepetition First Lien Secured Parties, the perfected first-priority liens in favor of the Prepetition First Lien Agents, in the case of the Prepetition Second Lien Secured Parties, the perfected second-priority liens, in each case in favor of the applicable Prepetition Agent, and in the case of the Prepetition Sidecar Parties (as defined in the Motion), the perfected *pari passu* first-priority lien in favor of the Sidecar Agent (the "<u>Segregated Lenders Account</u>") and (ii) an account (with account number ending in *2206) in the name of THC with JPMC and subject to the perfected first-priority liens in favor of the Prepetition First Lien Agents, in the case of the Prepetition Second Lien Secured Parties, the perfected second-priority liens, in each case in favor of the applicable Prepetition Agent (the "<u>Segregated Undisputed Corporate Cash Collateral Account</u>").  On or about June 4, 2020, the Debtors transferred the cash collateral comprising either the Undisputed Corporate Cash Collateral or Sidecar Cash Collateral that was in the JPMC Account, THC AP Account, and DTG AP Account as of the Petition Date into the Segregated Lenders Account.  Consistent with the requirements and obligations contained in the Second Agreed Order, Hertz transferred the Undisputed Corporate Cash Collateral that was in the accounts listed on **Exhibit B** to the Second

15

Agreed Order (in the amounts listed therein) to the Segregated Lenders Account.  The Debtors shall continue to segregate and maintain the Undisputed Corporate Cash Collateral in the Segregated Lenders Account during the Second Adequate Protection Period, except as provided in the final order entered in respect of the relief requested in the *Motion of Debtors for Entry of Agreed Final Order (I) Authorizing Use of Sidecar Cash Collateral for Repayment in Full of Prepetition Sidecar Credit Facility, (II) Granting Adequate Protection to the Prepetition Sidecar Secured Parties and (III) Granting Related Relief* [ECF No. 789] for the Sidecar Repayment (as defined therein).  The Debtors shall continue to segregate and maintain Undisputed Corporate Cash Collateral consisting of certain receivables and payments received after the Petition Date on account of certain contracts and agreements entered into and completed prior to the Petition Date in the Segregated Undisputed Corporate Cash Collateral Account during the Second Adequate Protection Period.[5]  The Debtors shall not use or further encumber any Undisputed Corporate Cash Collateral or commingle Undisputed Corporate Cash Collateral in the Segregated Undisputed Corporate Cash Collateral Account during the Second Adequate Protection Period with any other funds, except as provided in this Third Agreed Order, absent further order of this Court.  The Debtors have provided the Prepetition Secured Parties, the Committee, and Ad Hoc Noteholder Group with read-only electronic access to the Segregated Lenders Account and Segregated Undisputed Corporate Cash Collateral Account, and shall continue to provide such access during the Second Adequate Protection Period, or otherwise provide weekly reporting identifying the nature and amount of all transactions related to the Undisputed Corporate Cash Collateral in a form and manner that will allow the Prepetition Secured Parties and the Committee

---

[5] On or about June 8, 2020, the Debtors transferred proceeds of a sale of real estate assets in Oklahoma City that occurred on May 22, 2020 from the JPMC Account to the Segregated Cash Collateral Account.

to confirm the Debtors' compliance with the requirements and limitations imposed by this paragraph.

       (b)       <u>Segregation and Limitation on Use by Donlen of Undisputed Donlen Cash Collateral/Segregation of Proceeds Received on Account of Risk Retention Interests</u>. Consistent with the requirements and obligations contained in the First Agreed Order, on or about June 4, 2020, the Debtors established an account (with account number ending *3501) with JPMC and subject to the perfected first-priority liens in favor of the Prepetition First Lien Agents and, in the case of the Prepetition Second Lien Secured Parties, the perfected second-priority liens, in each case in favor of the applicable Prepetition Agent (the "<u>Segregated Donlen Account</u>"), and transferred the Undisputed Donlen Cash Collateral to that account. The Debtors shall continue to segregate and maintain Undisputed Donlen Cash Collateral in the Segregated Donlen Account, and shall not use Undisputed Donlen Cash Collateral for the payment of any cost or expense of any other Debtor or commingle Undisputed Donlen Cash Collateral with any other funds, in each case during the Second Adequate Protection Period absent further order of the Court. The Debtors have provided the Prepetition Secured Parties, the Committee and the Ad Hoc Noteholder Group with read-only electronic access to the Segregated Donlen Account, and shall continue to provide such access during the Second Adequate Protection Period, or otherwise provide weekly reporting identifying the nature and amount of all transactions related to the Undisputed Donlen Cash Collateral in a form and manner that will allow the Prepetition Secured Parties and the Committee to confirm the Debtors' compliance with the limitations imposed by this paragraph. Donlen's compliance with its obligation to segregate Undisputed Donlen Cash Collateral shall have no bearing on and is irrespective of its servicing and other obligations under that certain Amended and Restated Servicing Agreement, dated as of July 31, 2001, by and between Donlen, as servicer,

17

and the Donlen Trust, as amended, and any supplements thereto, including, but not limited to, remitting lease payments and other lease proceeds to the syndication investors in the ordinary course of its business during these Chapter 11 Cases. From and after the date of this Third Agreed Order, the Debtors shall segregate all cash received on account of the Risk Retention Interests (the "Risk Retention Proceeds"), if any, and deposit such cash into a separate account established solely for such purpose.

(c)    Agreement on Use of Disputed Cash. The Debtors previously maintained certain amounts in money market accounts at HSBC with account numbers 6059 and 6060 (the "HSBC Accounts") and Federated Bank with account numbers 5, 68 and 636 (the "Federated Accounts" and the amounts previously maintained in the HSBC Accounts and Federated Accounts and/or any securities issued by the correlative money market funds evidencing the HSBC Accounts and Federated Accounts, collectively the "Money Market Accounts Cash").[6] Pursuant to the terms of the *Final Order (I) Authorizing, but not Directing, Debtors to (A) Continue Use of their Existing Cash Management System, Bank Accounts, Checks and Business Forms, (B) Pay Related Prepetition Obligations, (C) Continue Performance of Intercompany Transactions, and (D) Continue Hedging Practices; (II) Waiving the Section 345(b) Deposit and Investment Requirements; and (III) Granting Related Relief* [ECF No. 586] (the "Final Cash Management Order"), the Debtors received a limited waiver of section 345(b) of the Bankruptcy Code to maintain the Money Market Accounts Cash in the HSBC Accounts and Federated Accounts. Prior to expiration of that waiver, the Debtors transferred and/or invested the Money Market

---

[6]    Although the Prepetition Secured Parties assert that the investments held in these accounts constitute "cash collateral" under the Bankruptcy Code, nothing contained in this Third Agreed Order is intended to constitute an admission by the Prepetition Secured Parties, the Debtors, the Committee, or the Ad Hoc Noteholder Group regarding the nature of such amounts or their status under the applicable Prepetition Loan documents and all parties reserve all rights regarding such amounts.

Accounts Cash in accounts and/or in funds maintained at HSBC (with account number 6060), Federated Bank (with account number 68), and BlackRock (with account numbers 60, 62, 1107) (the "Compliant Money Market Accounts") that meet the requirements of section 345(b) of the Bankruptcy Code and Local Rule 4001-3.  The amounts contained in the Compliant Money Market Accounts shall constitute Money Market Accounts Cash for purposes of this Third Agreed Order, *provided* that the transfer of the Money Market Accounts Cash to the Compliant Money Market Accounts (or any subsequent transfer to any other account) shall not alter, affect or prejudice (i) the Prepetition Secured Parties' rights with respect to the Money Market Accounts Cash, and liens thereon or perfection thereof, or (ii) the rights of the Debtors, the Committee and the Ad Hoc Noteholder Group with respect to the Money Market Accounts Cash, any lien thereon (if any) or the perfection thereof, or to argue whether the Money Market Accounts Cash constitutes Undisputed Prepetition Collateral.  During the Second Adequate Protection Period, the Debtors (a) agree not to use the Money Market Accounts Cash or the Risk Retention Proceeds to fund their working capital expenses, general corporate purposes and the allocated costs and expenses of administering their Chapter 11 Cases absent (i) the Debtors' reasonable determination in their business judgment that available amounts in accounts other than the Compliant Money Market Accounts, the Segregated Lenders Account, the Segregated Corporate Cash Collateral Account, the Segregated Sidecar Account,[7] and the Segregated Donlen Account (such available cash, the "Available Cash") would be likely to total less than $55 million in the aggregate, (ii) providing prior written notice to the Prepetition Secured Parties, the Committee, and the Ad Hoc

---

[7]    Nothing in this Third Agreed Order shall limit the Debtors' ability to utilize proceeds of sales of Sidecar Pledged Vehicles (as defined therein) as set forth in the *Motion of Debtors for Entry of Agreed Final Order (I) Authorizing Use of Sidecar Cash Collateral for Repayment in Full of Prepetition Sidecar Credit Facility, (II) Granting Adequate Protection to the Prepetition Sidecar Secured Parties, and (III) Granting Related Relief* [ECF No. 789].

Noteholder Group (which notice may be by email to counsel), no later than 5 days before the Debtors' intended use of the Money Market Accounts Cash or as may be agreed among the Debtors, the Committee, the Ad Hoc Noteholder Group and the Prepetition Secured Parties, and (iii) the Debtors' agreement to draw from the Compliant Money Market Accounts an amount sufficient to bring Available Cash to at least $100 million; *provided, however,* that in the event that any Money Market Accounts Cash is subsequently determined by a final, unstayed order of this Court (only so long as such determination remains in effect and is not reversed) to be cash collateral of the Prepetition Secured Parties, the Prepetition Secured Parties shall be granted a dollar-for-dollar replacement lien with respect to unencumbered cash of the Debtors equal to the amount of such utilized Money Market Accounts Cash that the Court has determined to be cash collateral of the Prepetition Secured Parties by such final unstayed order of this Court, *provided* that nothing herein shall prejudice the right of the Debtors, the Committee or the Ad Hoc Noteholder Group to argue as part of the Further Hearing or otherwise that the Prepetition Secured Parties shall be granted a lien solely to the extent of a diminution in the aggregate value of their interests in the Prepetition First Lien Collateral and Prepetition Second Lien Collateral, respectively; and (b) shall be precluded from effectuating Intercompany Transactions (as such term is defined in the motion corresponding to the Final Cash Management Order filed at ECF No. 19 comprising cash transfers between Debtors and non-Debtors (in each case other than Donlen and its subsidiaries) that exceed $10 million in any single or related series of transfers without (i) the prior written approval of the Prepetition First Lien Agents (at the direction of the Required Lenders (as defined in the RAC Loan Documents) and after consultation with the Second Lien Secured Parties) and the Committee, and consultation with the Ad Hoc Noteholder Group, in each case which shall be sought on not less than 72 hours' notice or such shorter time

20

as is commercially practicable or as may be agreed among the Debtors and the Prepetition Secured Parties, or (ii) entry of a further order of this Court; *provided* that nothing herein shall alter or otherwise affect (A) the Debtors' burden or rights with respect to such an order or the relief requested therein, including the Debtors' ability to argue that the relief requested should be approved as a reasonable exercise of the Debtors' business judgment or be permitted as an ordinary course transaction or (B) the rights of any non-consenting party whose consent is required in (i) to oppose such an order or relief.  Nothing herein shall relieve the Debtors of any obligations they may have with respect to the Prepetition Secured Parties or the Committee under the Final Cash Management Order.

(d)     <u>Prepetition Secured Parties' Adequate Protection Replacement Liens</u>.  Pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, each of the Prepetition Agents, for itself and on behalf of the applicable Prepetition Secured Parties for which it acts as agent or trustee, is granted (effective and perfected upon the date of the First Agreed Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), solely to the extent of the aggregate diminution in the value other than a diminution caused by any payments made to the Prepetition Secured Parties as adequate protection (collectively, "<u>Diminution in Value</u>") of the applicable Prepetition Secured Parties' interests in the Undisputed Prepetition  Collateral (which term, for the avoidance of doubt, shall include any Disputed Cash that is subsequently found by final, unstayed order of this Court (only so long as such determination remains in effect and is not reversed) to be cash collateral of the Prepetition Secured Parties and shall exclude any Undisputed Prepetition Collateral, Undisputed Corporate Cash Collateral, and/or Undisputed Donlen Cash Collateral that is subsequently found by final, unstayed order of this Court (only so long as such determination remains in effect and is

21

not reversed) to constitute unencumbered cash), from and after the Petition Date, if any, replacement security interests in and liens upon (the "Adequate Protection Liens") the Undisputed Prepetition Collateral and all of the Debtors' presently owned or after acquired assets and property (collectively, the "Adequate Protection Collateral"); *provided* that "Adequate Protection Collateral" shall specifically (i) exclude any of the Debtors' prepetition commercial tort claims and any claims or causes of action arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code or any other avoidance or similar action under the Bankruptcy Code or similar state law (each, an "Avoidance Action"), and (ii) include, only and to the extent allowed in the Adequate Protection Determination Order, any of the proceeds of the foregoing excluded assets; *provided further* that "Adequate Protection Collateral" shall specifically exclude non-residential real property leases unless liens thereon would be expressly permitted by the applicable lease (but Adequate Protection Collateral shall in all cases include all proceeds of such non-residential real property leases).  The Adequate Protection Liens shall be senior and prior to (i) all other security interests therein and liens thereon, other than valid, perfected and non-avoidable liens (other than the liens securing the Prepetition Loan Obligations) in existence immediately prior to the Petition Date including, for the avoidance of doubt, the Prepetition Sidecar Liens (as defined in the Sidecar Interim Order), and (ii) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and shall be *pari passu* to the Sidecar Adequate Protection Liens (as defined in the Motion); *provided* that the Prepetition Secured Parties, solely in their capacities as holders of Adequate Protection Liens, shall solely have rights to distributions on account thereof in connection with a confirmed plan of reorganization, a confirmed plan of liquidation, in connection with a proceeding under Chapter 7

22

of the Bankruptcy Code or otherwise, and shall have no rights to additional adequate protection or remedies (including, without limitation, enforcement), and waive the right to object to or otherwise oppose (or support any third party in objecting to or otherwise opposing) any debtor-in-possession financing, including on a priming basis, secured by liens which are senior and prior in right of payment to the Adequate Protection Liens, including any carve-out for payment of fees and expenses of the Clerk of this Court, the Office of the United States Trustee, and any persons or firms retained by the Debtors and the Committee approved in connection with such debtor-in-possession financing.  Notwithstanding anything to the contrary set forth herein, no provision of this Third Agreed Order shall (i) prime, create a right or interest that is *pari passu*, diminish or affect any right (including the surety's right of subrogation), claim, lien, interest or remedy at law or in equity with any surety for any of the Debtors or any non-debtor affiliates of any of the Debtors as against any person, entity, asset or the proceeds thereof, whether arising under or in connection with surety bonds or instruments issued by any such surety, or arising under contract, statute or by operation of law, by virtue of equitable lien, equitable subrogation or otherwise, all of which rights, claims, liens, interests, defenses and remedies are not waived or released and are reserved without limitation or (ii) prime or make subordinate to any liens granted to any party hereby to any statutory liens of taxing authorities (collectively, the "Tax Liens"), to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the taxing authorities are fully preserved.  Notwithstanding anything to the contrary set forth herein, no provision of this Third Agreed Order shall encumber (i) any vehicles that are not owned by the Debtors, (ii) charges collected from customers that the Debtors are required to hold in trust for the benefit of the authorities that operate airports and airport rental car facilities, pursuant to the terms of the

23

applicable concession agreement, local ordinance, or state law, and (iii) funds in the JP Morgan Chase Bank N.A. Lockbox Account (ending #4979) that have been allocated to a syndication SUBI and are beneficially owned by a syndication investor.

(e)      Prepetition Secured Parties' Adequate Protection 507(b) Claims.  In addition to the foregoing Adequate Protection Liens, in recognition of their rights to adequate protection of their respective interests in the Undisputed Prepetition Collateral pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, each of the Prepetition Agents, for itself and for the benefit of the applicable Prepetition Secured Parties for which it acts as agent or trustee, is granted, solely to the extent of the Diminution in Value of the applicable Prepetition Secured Parties' interests in the Undisputed Prepetition Collateral, from and after the Petition Date, if any, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code (the "Prepetition Secured Parties' 507(b) Claims"), with priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (other than the Prepetition Sidecar Parties' 507(b) Claims (as defined in the Motion), which shall rank *pari passu* with the Prepetition First Lien Secured Parties' 507(b) Claim, and section 507(b) claims in favor of certain holders of HVF II ABS Notes on account of casualty claims, which shall rank senior to the Prepetition First Lien Secured Parties' 507(b) Claim and the Prepetition Sidecar Parties' 507(b) Claim).

(f)      Relative Priority of the Adequate Protection Liens and the Prepetition Secured Parties' 507(b) Claims.  The relative rights and lien and payment priorities, as applicable, between the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties with respect to the respective Prepetition Secured Parties' Adequate Protection Liens and the Prepetition Secured Parties' 507(b) Claims are governed by (i) that certain Collateral Agency and

24

Intercreditor Agreement, dated as of November 2, 2017 (as amended, amended and restated, supplemented or otherwise modified as of the date hereof, the "Collateral Agency and Intercreditor Agreement") entered into by and among Barclays Bank PLC as (a) administrative agent and collateral agent under the RAC Loan Documents and LC Credit Documents, and (b) common collateral agent for the Prepetition First Lien Secured Parties and acknowledged and agreed to by Hertz, as borrower, the Subsidiary Borrowers (defined therein) and Subsidiary Guarantors (defined therein) in respect of the Prepetition First Liens, and (ii) that certain Intercreditor Agreement dated as of June 6, 2017 (as amended, amended and restated, supplemented or otherwise modified as of the date hereof, the "Base Intercreditor Agreement" and, together with the Collateral Agency and Intercreditor Agreement, the "Intercreditor Agreements") entered into among Barclays Bank PLC, as the collateral agent for the Prepetition First Lien Secured Parties, and BOKF, National Association, as successor to Wells Fargo Bank, National Association, as note collateral agent under the Prepetition Second Lien Collateral Agreement.  The Intercreditor Agreements are enforceable to the fullest extent provided by Section 510(a) of the Bankruptcy Code.  Such Intercreditor Agreements, any other intercreditor agreement or subordination agreement between and/or among the Prepetition Agents, any Prepetition Secured Party, and any other applicable intercreditor or subordination provisions contained in any credit agreement, security agreement, indenture or related document, (A) shall remain in full force and effect, (B) shall continue to govern the relative priorities, rights and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted, or amounts payable, by the Debtors under

25

this Third Agreed Order or otherwise and the modification of the automatic stay), and (C) shall not be amended, altered or modified by the terms of this Third Agreed Order.

(g)       Interest; Professional Fee Payments to Prepetition Secured Parties.  The Debtors shall (A) on a monthly basis within ten (10) business days of receipt of an invoice sent to the Debtors and the Committee and otherwise pursuant to the notice and objection procedures set forth in Paragraph 5(a) below, pay or reimburse in cash as adequate protection, to (i) the Prepetition First Lien Agents, the reasonable fees, costs and expenses of Latham & Watkins LLP (other than fees, costs and expenses incurred by Latham & Watkins LLP as counsel to Deutsche Bank AG, New York Branch as administrative agent with respect to those certain Asset Backed Notes issued by Hertz Vehicle Financing II LP, Series 2013-A), Morris, Nichols, Arsht & Tunnell LLP, and AlixPartners LLP, (ii) the Ad Hoc First Lien Group, the reasonable fees, costs and expenses of Arnold & Porter Kaye Scholer LLP, Pepper Hamilton LLP, and Houlihan Lokey Capital, Inc., (iii) the Prepetition Second Lien Trustee, the reasonable fees, costs and expenses of Arent Fox LLP, and their Delaware counsel, (iv) the Prepetition Second Lien Collateral Agents, the reasonable fees, costs and expenses of Arent Fox LLP, and their Delaware counsel, and (v) the Ad Hoc Second Lien Group, the reasonable fees, costs and expenses of Akin Gump Strauss Hauer & Feld LLP, Cole Schotz, P.C., and TRS Advisors LLC; *provided* that, notwithstanding anything contained in this Third Agreed Order, the Debtors are not authorized, absent further order of the Court, to pay any transaction fee or success fee to any professional entitled to payment under this paragraph 3(g); (B) pay to the Prepetition First Lien Agents, as adequate protection, an amount equal to the monthly interest that would accrue on the Prepetition First Lien Obligations under the Prepetition First Lien Loan Documents, as applicable, (i) in the case of Revolving Loans and Tranche B-1 Loans (each as defined and set forth in the RAC Credit Agreement), calculated

26

on a per annum basis by reference to the Eurocurrency Rate (as defined in the RAC Credit Agreement) (assuming a one-month Interest Period, with the rate set two business days prior to the first day of each month) plus 3.25% on the Revolving Loans and 2.75% on the Tranche B-1 Term Loans (each as defined and set forth therein) and without giving effect to any default interest provisions therein, in each case in accordance with the terms of the Prepetition First Lien Loan Documents and (ii) (A) in the case of Reimbursement Amounts (as defined in the RAC Credit Agreement), calculated on a per annum basis by reference to the ABR (as defined in the RAC Credit Agreement) plus 2.25% on the Reimbursement Amounts (as defined in the RAC Credit Agreement) and (B) in the case of Reimbursement Amounts (as defined in the LC Credit Agreement), calculated on a per annum basis by reference to the ABR (as defined in the LC Credit Agreement) plus 2.25% on the Reimbursement Amounts (as defined in the LC Credit Agreement), in each case, in accordance with the terms of the Prepetition First Lien Loan Documents on the first business day of each month beginning on September 1, 2020 and ending on January 1, 2021 (with, e.g., the payment on September 1, 2020 being an amount equal to September interest plus an amount equal to interest accrued during August in excess of the amount paid on August 1, 2020, the payment on October 1, 2020 being an amount equal to October interest plus an amount equal to interest accrued during September in excess of the amount paid on September 1, 2020, the payment on November 1, 2020 being an amount equal to November interest plus an amount equal to interest accrued during October in excess of the amount paid on October 1, 2020, the payment on December 1, 2020 being an amount equal to December interest plus an amount equal to interest accrued during November in excess of the amount paid on November 1, 2020, and the payment on January 1, 2021 being an amount equal to January interest plus an amount equal to interest accrued during December in excess of the amount paid on

27

December 1, 2020), *provided* that the Prepetition First Lien Secured Parties reserve all rights to assert that additional amounts of interest have accrued under section 506(b) of the Bankruptcy Code; (C) (i) pay in kind, as adequate protection, an amount equal to the specific portion of interest that will accrue on the Prepetition Second Lien Obligations from September 1, 2020 through January 31, 2021, without giving effect to any default interest provisions in the Prepetition Second Lien Indenture, which amount shall be reduced on a dollar-for-dollar basis by the amount paid pursuant to clause (C)(ii) of this paragraph, and (ii) pay in cash, as adequate protection, on December 1, 2020, an amount equal to half of the interest that would have accrued on the Prepetition Second Lien Obligations from July 1, 2020 through November 30, 2020, without giving effect to any default interest provisions in the Prepetition Second Lien Indenture;[8] *provided* that the Prepetition Second Lien Secured Parties reserve all rights to assert that additional amounts of interest have accrued under section 506(b) of the Bankruptcy Code (other than for any payments in cash made pursuant to clause (C)(ii) of this paragraph); *provided, further* that payments in cash made pursuant to clause (C)(ii) of this paragraph shall be subject to disgorgement, recharacterization or reallocation as payments of principal, interest or otherwise; and (D) pay as adequate protection any fees, commissions and other charges (including, but not limited to, the Letter of Credit Commissions (as defined in the LC Credit Agreement) and any fees, commissions and other charges set forth in Section 3.3 of the LC Credit Agreement) associated with the undrawn Letters of Credit (as defined in the LC Credit Agreement), and any fees, commissions and other charges (including, but not limited to, L/C Fees (as defined in the

---

[8]    For the avoidance of doubt, the amount paid in cash or in kind pursuant to this clause (C) shall be calculated on a monthly basis as one-sixth of the semi-annual interest amount for the applicable interest period.

28

RAC Credit Agreement) and letter of credit commissions set forth in Section 4.5(a) of the RAC Credit Agreement) associated with the undrawn Letters of Credit (as defined in the RAC Credit Agreement), in each case, that arise during the pendency of the Chapter 11 Cases; *provided* that payments made pursuant to each of sub-clauses (A), (B), (C) and (D) above, as applicable, shall be made without further notice (except as provided in Paragraph 4(a) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before this Court; *provided further* that in each case (B), (C), and (D) above, the Debtors, the Committee. and the Ad Hoc Noteholder Group reserve all rights to assert that the requirements of Section 506(b) of the Bankruptcy Code have not been met and that such interest has not accrued or that the Prepetition Secured Parties are not otherwise entitled to such interest; *provided further* that the payment of the amounts set forth above as adequate protection shall be without prejudice to whether any such payments should be recharacterized or reallocated as payments of principal, interest or otherwise.  Upon receipt of the payments set forth in this paragraph, the Prepetition First Lien Agents shall be authorized to distribute such payments to the Prepetition First Lien Secured Parties.  Payments of any of the amounts set forth in this paragraph (as well as payments set forth in the corresponding paragraph of the Second Agreed Order), other than the amounts set forth in clause (C)(ii) of this paragraph 3(g), shall not be subject to disgorgement, *provided* that the Debtors, the Committee, and the Ad Hoc Noteholder Group reserve all rights to assert that any of the payments set forth in this paragraph shall be recharacterized or reallocated as payments of principal or, in the case of amounts set forth in clause (C)(ii), disgorged, or in the case of payments in kind, eliminated entirely from inclusion in the amount of the claim upon a determination of this Court that either the Prepetition First Lien Secured Parties or the Prepetition Second Lien Secured Parties do not have fully secured claims (in which case such remedy may

29

be applied to the applicable undersecured party).  Payments made pursuant to this paragraph 3(g) shall be made from funds in the Segregated Undisputed Corporate Cash Collateral Account.

(h)    Reservation of Rights Regarding Adequate Protection.  The rights of the Debtors, the Prepetition Secured Parties, the Committee, and the Ad Hoc Noteholder Group to assert that the adequate protection granted under this Third Agreed Order or under the First Agreed Order or Second Agreed Order should be modified, increased, limited or revoked (in whole or in part), including retroactively to the Petition Date as set forth herein, from and after the date of a further order of the Court are hereby expressly preserved, and the Court reserves the right to modify, increase, limit, or revoke (in whole or in part) all such adequate protection and to order any relief the Court deems appropriate in connection therewith.  The Court shall be empowered to modify or revoke the adequate protection provided pursuant to the First Agreed Order, the Second Agreed Order or this Third Agreed Order, including retroactively, as set forth herein, to the extent that an unstayed order of this Court is entered: (a) (i) that determines any issues regarding the asserted liens on Prepetition Collateral, including that any such liens are subject to avoidance under the Bankruptcy Code or limited, invalidated, or declared unenforceable under the Bankruptcy Code or under any other applicable law or under any agreement by which the Prepetition Secured Parties are bound, and (ii) pursuant to which any such liens are avoided, invalid, limited, or unenforceable (following such avoidance or determination, the "Invalid Collateral"); or (b) that disallows, avoids, invalidates, limits, or holds unenforceable any claim asserted by the Prepetition Secured Parties (the "Invalid Claim"); or (c) that determines either that the Debtors' accounts and/or all or some of the Debtors' cash or other assets are unencumbered or are subject to the valid lien of the Prepetition Secured Parties; or (d) that makes any determination that the adequate protection afforded to the Prepetition Secured Parties under the First Agreed Order, the Second

30

Agreed Order, or this Third Agreed Order does not appropriately correlate to the diminution in value (if any) in the Prepetition Secured Parties' interests in the Prepetition First Lien Collateral and Prepetition Second Lien Collateral, respectively, which for the avoidance of doubt shall not include any diminution caused by any payments made to the Prepetition Secured Parties as adequate protection; or (e) that determines that any adequate protection payments (whether in cash, in kind, or otherwise) made pursuant to the First Agreed Order, the Second Agreed Order or this Third Agreed Order should be recharacterized or reallocated as payments of principal or otherwise (with respect to the Prepetition First Lien Secured Parties) or, with respect to the accrual of any payments, eliminated (with respect to the Prepetition Second Lien Secured Parties) or, with respect to cash payments made pursuant to paragraph 3(g)(C)(ii), disgorged, recharacterized or reallocated as payments of principal, interest or otherwise.  To the extent the Court makes a determination as to any of (a) through (e) in the preceding sentence then, as applicable, retroactive to the Petition Date (or such other later date as determined by the Court), (i) the Prepetition Secured Parties shall not be deemed to have (x) any claim on account of any Invalid Claim or (y) any lien on any Invalid Collateral, (ii) the characterization of the Debtors' accounts and/or whether any assets of the Debtors are unencumbered shall be as determined by the Court, including for purposes of determining the extent of any diminution in value, Adequate Protection Lien or 507(b) claim, (iii) the Prepetition Secured Parties shall not be entitled to any 507(b) claims with respect to any diminution in value of such Invalid Collateral, (iv) the value of the replacement liens provided to the Prepetition Secured Parties pursuant to the First Agreed Order, the Second Agreed Order, and Paragraph 3(d) of this Third Agreed Order shall not include any diminution in value with respect to such Invalid Collateral; *provided, however*, that there shall be no impact on replacement liens vis-à-vis any collateral that is not Invalid Collateral, and (v) adequate protection

31

interest payments (whether in cash, in kind or otherwise), or any portion thereof, made pursuant to the First Agreed Order, the Second Agreed Order, or this Third Agreed Order may be recharacterized or reallocated as payments of principal or otherwise (with respect to the Prepetition First Lien Secured Parties) or, with respect to the accrual of any payments, eliminated (with respect to the Prepetition Second Lien Secured Parties) or, with respect to cash payments made pursuant to paragraph 3(g)(C)(ii), disgorged, and any other adequate protection payments, or any portion thereof, previously made may be recharacterized or reallocated.  For the avoidance of doubt, the Adequate Protection Liens and 507(b) claim are provided solely to the extent of Diminution in Value, if any, from and after the Petition Date as such Diminution in Value is determined by an unstayed order of the Court.

(i)      Reservation of Rights With Respect to Lien Validity, Diminution in Value, and Nature of Payments.  The Court is making no findings as to (i) validity, priority, perfection, enforceability, avoidability, allowance, or the extent of the Prepetition Secured Parties' liens and claims, and (x) the Debtors, the Committee, and the Ad Hoc Noteholder Group reserve all rights to contest the validity, priority, enforceability, avoidability allowance, or extent of such liens and claims and (y) the Prepetition Secured Parties do not waive and expressly reserve all rights with respect to the foregoing and their interest in any other purported collateral; (ii) whether and to what extent any diminution in value of the Prepetition Secured Parties' interests in the purported prepetition collateral has occurred; or (iii) the nature or characterization of any adequate protection payments made pursuant to the First Agreed Order, the Second Agreed Order, or this Third Agreed Order; and the Debtors, Prepetition Secured Parties, Committee and Ad Hoc Noteholder Group reserve all rights with respect the preceding clauses (ii) and (iii).

32

(j)        Reservation of Rights to Seek DIP Financing.  Nothing contained in this Third

Agreed Order shall prejudice (i) the Debtors' rights to seek debtor-in-possession financing,

including on a priming basis, through the filing of a motion with the Court (a "DIP Financing

Motion") or to assert any arguments in connection therewith, (ii) the rights of the Prepetition

Secured Parties to assert any defenses or arguments available under applicable law with respect

thereto (other than in their capacity as holders of Adequate Protection Liens, which shall be

subject to the limitations contained in the First Agreed Order, the Second Agreed Order, and this

Third Agreed Order), or (iii) the Debtors', Committee's or Ad Hoc Noteholder Group's rights to

seek entry of an order of this Court determining either that (x) the Disputed Cash and/or other

prepetition collateral is, in fact, unencumbered, or (y) any liens on any prepetition collateral are

subject to avoidance under the Bankruptcy Code or limited, invalidated, or declared

unenforceable under the Bankruptcy Code, or under any applicable law, or under any agreement

by which the Prepetition Secured Parties are bound (such order, the "Lien Determination Order"),

or (iv) the rights of the Prepetition Secured Parties to object procedurally and substantively to any

hearing or motion to consider DIP Financing or any hearing or motion to consider a request for

entry of a Lien Determination Order or such order itself, and nothing in this Third Agreed Order

shall alter any burden of proof or procedural requirements as to any issue.  For the avoidance of

doubt, nothing in this Third Agreed Order shall prejudice the Debtors', the Committee's, or the

Ad Hoc Noteholder Group's rights to seek to have a hearing in connection with the consideration

of the Lien Determination Order held on the same day as the hearing on any proposed debtor-in-

possession financing or any other particular day, or the rights of the Prepetition Secured Parties

to object thereto on substantive or procedural grounds, including arguing that (a) any such order

can only be entered pursuant to an adversary proceeding and not by a noticed hearing, and (b) any

hearing requesting entry of a Lien Determination Order must occur on a different day than any hearing requesting entry of an order with respect to DIP Financing; *provided* that entry of the Lien Determination Order (other than to the extent explicitly set forth in the Lien Determination Order) shall not prejudice the Debtors', the Committee's, or the Ad Hoc Noteholder Group's ability to bring a Challenge Proceeding (as defined below).

(k)    <u>Burden of Proof and Related Issues.</u>  For the avoidance of doubt, nothing contained in this Third Agreed Order shall alter any applicable standards, burdens of proof or procedures (including, but not limited to, the procedures contained in Bankruptcy Rule 7001 to the extent applicable) that any party bears with respect to issues related to adequate protection, including in connection with any DIP Financing Motion, lien validity, or avoidance.

(l)    <u>Requirements with Respect to Challenge Proceedings</u>.  Provided that it is commenced at any time prior to the Challenge Date (as defined below), the Committee and/or the Ad Hoc Noteholder Group may bring a proceeding or proceedings against the Prepetition Secured Parties (x) challenging the amount, validity, perfection, enforceability, priority or extent of the prepetition liens and/or claims of the Prepetition Secured Parties, or (y) otherwise asserting or prosecuting any action for preference, fraudulent transfers or conveyance, or other avoidance power claims against the Prepetition Secured Parties on behalf of the Debtors' estates (any such proceeding, a "<u>Challenge Proceeding</u>").  Commencing a Challenge Proceeding shall include filing a proceeding (including by motion) and/or, to the extent necessary, commencing a proceeding to establish standing to file a Challenge Proceeding, including by motion, stipulation, or otherwise, provided that the Prepetition Secured Parties shall be precluded from opposing any standing sought or asserted by the Committee with respect to a Challenge Proceeding.  "<u>Challenge Date</u>" shall mean the later of (x) the date which is sixty (60) calendar days following the date

34

upon which the Adequate Protection Determination Order is entered, (y) such later date as the Court may set after notice and a hearing, or (z) such later date to which the parties hereto may agree.  For the avoidance of doubt, the Debtors shall have standing to, and may, bring any Challenge Proceeding(s), and/or may support granting standing to another party to bring any Challenge Proceeding(s).  Notwithstanding anything to the contrary herein, the rights of all parties in interest to file any pleadings at any time (whether by motion, adversary proceeding, objection, or otherwise) with respect to the purported collateral or claims or liens of the Prepetition Secured Parties that is not a Challenge Proceeding are hereby preserved.

4.      **Automatic Postpetition Lien Perfection.**  This Third Agreed Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the Adequate Protection Liens (without prejudicing the possibility that the Adequate Protection Liens may be modified or invalidated by further order of this Court) without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any Adequate Protection Collateral, or (c) taking any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, each Prepetition Agent may, in its sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents in respect of the Adequate Protection Liens, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date.  Without limiting the

35

foregoing, the Prepetition Agents may, each in their discretion, file a photocopy of this Third

Agreed Order as a financing statement with any recording officer designated to file financing

statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor

has real or personal property, and in such event, the subject filing or recording officer shall be

authorized and hereby is directed to file or record such copy of this Third Agreed Order.

       5.     **<u>Other Rights and Obligations</u>.**

       (a)    <u>Notice of Professional Fees</u>.  Professionals for the Prepetition Secured Parties and

the Ad Hoc Groups (including professionals engaged by counsel to such parties) (collectively, the

"<u>Lender Professionals</u>") shall not be required to submit invoices to this Court or any other party

in interest other than the Debtors, the Committee, and the United States Trustee.  Copies of

summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by

the Debtors to the United States Trustee, and such other parties as this Court may direct.  The

summary invoices shall include the number of hours billed (except for financial advisors

compensated on other than an hourly basis) and be sufficiently detailed to enable a determination

as to the reasonableness of such fees and expenses; *provided, however*, that such summary

invoices may be redacted to the extent necessary to delete any information subject to the attorney-

client privilege, any information constituting attorney work product, or any other confidential

information, and the provision of such summary invoices shall not constitute any waiver of the

attorney-client privilege or of any benefits of the attorney work product doctrine or other

applicable privilege.  If the Debtors, the United States Trustee or the Committee file with the

Court and serve on the Lender Professionals a written objection (a "<u>Fee Objection</u>") to the

reasonableness of the fees and expenses of any of the Lender Professionals within ten (10)

business days of receipt of such invoices by the Debtors, and such objection is not resolved

consensually by the parties, the Bankruptcy Court shall promptly hear and determine such Fee Objection.  Any failure by any such party to file a Fee Objection within such ten (10) business day period shall constitute a waiver of any right of such party to object to the applicable invoice. Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the particular items or categories of fees, costs, and expenses that are the subject of the objection.  The Debtors shall timely pay in accordance with the terms and conditions of this Third Agreed Order (i) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (ii) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed.

(b)     _Enforceability_.  This Third Agreed Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable effective immediately upon execution hereof; _provided_ that nothing herein shall prejudice the Debtors', the Committee's or the Ad Hoc Noteholder Group's ability to bring a Challenge Proceeding.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Third Agreed Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Third Agreed Order.

(c)     _Cash Collateral_.  The Court is making no findings in this Third Agreed Order as to the validity, priority, perfection, enforceability, avoidability or extent of the Prepetition Secured Parties' liens upon or security interests in the Debtors' "cash collateral" (as defined in section 363(a) of the Bankruptcy Code), if any.  Whether or not any of the Debtors' assets are "cash

37

collateral" of the Prepetition Secured Parties, the Debtors are hereby authorized to use Undisputed Donlen Cash Collateral during the Second Adequate Protection Period in accordance with the terms of the Bankruptcy Code, this Third Agreed Order and any other applicable orders of the Court.  To the extent that the Court determines that any cash or other amounts held by the Debtors constitutes cash collateral of the Prepetition Secured Parties then such cash or other amounts shall be Undisputed Corporate Cash Collateral or Undisputed Donlen Cash Collateral, as the case may be, as of the later of (a) the Petition Date and (b) the date such Undisputed Corporate Cash Collateral or Undisputed Donlen Cash Collateral became cash collateral.  Any postpetition expenditures or disbursements of cash by the Debtors prior to the date of such determination shall be deemed to have been made first from cash other than the Undisputed Corporate Cash Collateral.

(d)    For the avoidance of any doubt, any time periods set forth in this Order for the Debtors to provide notice, consult with, or obtain the consent of another party may be shortened by mutual written agreement of the Debtors and the other party (such agreement may be in the form of an email communication).

(e)    Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Third Agreed Order.

6.    **Further Hearing**.

(a)    By no later than 4:00 p.m. (Eastern) on December 9, 2020 (the "Motion Deadline"), the Prepetition Secured Parties shall file with the Court (i) the proposed form of Adequate Protection Determination Order and (ii) one or more motions seeking adequate protection of their interests (each an "Adequate Protection Motion") pursuant to Section 363(e) of the Bankruptcy

38

Code and Bankruptcy Rule 4001(b) and provide proper notice of each of the foregoing to the requisite parties in interest.  Provided that any Adequate Protection Motion is filed by the Motion Deadline, the hearing to consider such motion(s) shall be scheduled before this Court on January 13, 2021, at 10:30 a.m. (prevailing Eastern time) (the "<u>Further Hearing</u>").

(b)    The Debtors and any other parties in interest shall file any responses to the Prepetition Secured Parties' Adequate Protection Motion(s) by December 29, 2020.

(c)    The Prepetition Secured Parties and any other parties in interest shall file any replies by January 10, 2021.

7.    **<u>Section 552(b)</u>**.  Each of the Prepetition Agents, for itself and on behalf of the applicable Prepetition Secured Parties for which it acts as agent or trustee, shall be entitled, in respect of the Donlen Collateral, to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and, only and to the extent allowed in the Adequate Protection Determination Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agents or the Prepetition Secured Parties with respect to the proceeds, product, offspring or profits of the Donlen Collateral; *provided, however,* that nothing herein shall or shall be deemed to prejudice the rights of the Prepetition Secured Parties with respect to any other rights they may assert under Section 552(b) of the Bankruptcy Code or the rights of the Debtors, the Committee, or the Ad Hoc Noteholder Group to oppose any such assertion or assert any rights of their own under Section 552(b) of the Bankruptcy Code.

8.    **<u>Proof of Claim</u>**.  Without prejudice to the ability of any of the Agents or the Prepetition Secured Parties to file additional proofs of claim, and without prejudice to any claim objections that might have been raised absent the authority granted to the Agents by this paragraph 7, each of the Prepetition Agents is authorized in its sole discretion to file a single master proof of

claim against Hertz on account of their respective Prepetition Loan Obligations without the necessity of filing duplicative proofs of claim against other of the Debtors who are obligors or guarantors with respect to such obligations.

9.      **No Third Party Rights**.  Except as explicitly provided for herein, this Third Agreed Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

10.     **Implementation; Status of Prior Adequate Protection Orders**.  The Debtors and the Prepetition Secured Parties are authorized and empowered to take all actions necessary to implement the provisions of this Third Agreed Order.  Unless a particular provision of the First Agreed Order or the Second Agreed Order (collectively, the "**Prior Orders**") are inconsistent with a specific term of this Third Agreed Order (in which case this Third Agreed Order shall govern), nothing contained in either of the Prior Orders shall be affected by entry of this Third Agreed Order.

11.     **Retention of Jurisdiction.**  This Court has and will retain jurisdiction to enforce this Third Agreed Order according to its terms.

40

**Dated: August 25th, 2020**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**