# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>THE HERTZ CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11218 (MFW)<br>(Jointly Administered) |

## PREPETITION SECURED PARTIES' STATEMENT AND RESERVATION OF RIGHTS IN RESPONSE TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO APPROVE STIPULATIONS GRANTING IT STANDING TO PROSECUTE CERTAIN CLAIMS

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the Debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of Debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

The undersigned counsel for (1) Barclays Bank PLC (the "Prepetition Agent"), as (a) administrative and collateral agent for the lenders under that certain Credit Agreement, dated as of June 30, 2016 (as amended, supplemented and modified from time to time prior to the date hereof, the "RAC Credit Agreement"), by and among the Debtors and the RAC Secured Parties (referred to as the "Secured Parties" in the RAC Credit Agreement); and (b) administrative and collateral agent under that certain Letter of Credit Agreement, dated as of November 2, 2017 (as amended, supplemented and modified from time to time prior to the date hereof, the "Letter of Credit Agreement"), by and among the Debtors and the LC Secured Parties (referred to as the "Secured Parties" in the Letter of Credit Agreement), and (2) the Ad Hoc Group of First Lien Term Loan Lenders,[2] (together with the RAC Secured Parties and LC Secured Parties, the "Prepetition First Lien Secured Parties"), respectfully submit this statement in response (the "Statement") to the *Official Committee of Unsecured Creditors' Motion to Approve Stipulations Granting It Standing to Prosecute Certain Claims* [ECF Dkt. 1141] (the "UCC Standing Motion"), and respectfully state as follows:

1. While the Prepetition First Lien Secured Parties have agreed to not oppose the UCC Standing Motion,[3] the Prepetition First Lien Secured Parties categorically refute the notion that the Official Committee of Unsecured Creditors ("UCC") or the Debtors are entitled to the relief requested in the proposed draft complaint attached to the UCC Standing Motion. The Prepetition First Lien Secured Parties maintain that they hold valid, perfected and unavoidable liens on, among other things, the cash, investment property and accounts referenced in the UCC

---

[2] The term "Ad Hoc Group of First Lien Term Loan Lenders" means certain lenders under the RAC Credit Agreement and Letter of Credit Agreement, represented by Arnold & Porter Kaye Scholer LLP.

[3] *See Third Agreed Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection and Related Relief to Prepetition Secured Parties* (the "Third Agreed Order") [ECF No. 1131], paragraph 3(l).

Standing Motion, and intend to vigorously defend the proposed litigation should the Court grant the UCC Standing Motion.

2. Indeed, as set forth in the Proofs of Claim attached as Exhibit A and Exhibit B, and based on the information the Debtors have provided to date, the Prepetition First Lien Secured Parties have a perfected secured interest in substantially all of the Debtors' assets including the vast majority of approximately $890 million of cash and investment property as of May 22, 2020 (the "Petition Date"). In addition to the valid lien that they hold with respect to the $580 million in investment property, the Prepetition First Lien Secured Parties have a valid lien on no less than $249.4 million that was in the Debtors' bank accounts at PNC Bank, Key Bank, and Regions Bank, as identifiable cash proceeds of Collateral. The Prepetition First Lien Secured Parties also have a valid lien on all of the Debtors' cash as of the Petition Date that, pursuant to the terms of the Third Agreed Order, is Undisputed Corporate Cash Collateral and Undisputed Donlen Cash Collateral, each term as defined in the Third Agreed Order. Pursuant to the Third Agreed Order, the Debtors have segregated this cash and these funds remain segregated in, respectively, the Segregated Lenders Account and the Segregated Undisputed Corporate Cash Collateral Account (as each such term is defined in the Third Agreed Order).[4]

---

[4] The Prepetition First Lien Secured Parties also have first liens on customer and fleet management receivables; investment property; real estate; airport concession agreements; the Hertz tradename and other intellectual property; certain unrestricted cash and cash equivalents; contracts pertaining to the above including franchise agreements, corporate customer agreements and fleet management agreements; the operating lease and service agreement with the non-Debtor special purpose entities that own the majority of the fleet vehicles and lease them to the Debtors; general intangibles pertaining to the above; and proceeds of all the foregoing (the "RAC/LC Granted Collateral"). *See* Proofs of Claim [Claim Nos. 3663, 3664] attached hereto as **Exhibit A**, and **Exhibit B**. The Secured Parties' interests also are secured by certain real property (the "Mortgaged Properties"), as well as a pledge of (1) stock of certain domestic and foreign subsidiaries, including the non-Debtor special purpose entities ("Vehicle SPEs") that own the majority of the fleet vehicles and lease them to the Debtors (the "Pledged Stock"), and (2) all intercompany notes with a principal amount in excess of $5 million (the "Pledged Notes," together with the RAC/LC Granted Collateral, Mortgaged Properties, and Pledged Stock, the "Collateral"). *See id.* The Secured Parties perfected their security interests in their Collateral by, among other things, filing UCC-1 financing statements, possessing certain certificated securities, filings made with the United States Copyright Office, and obtaining the relevant mortgages. *See id.*

3.	Moreover, the funds on deposit in accounts with certain of the Prepetition First Lien Secured Parties, including (without limitation) JP Morgan Chase Bank, Bank of America, Deutsche Bank, and Bank of Montreal are subject to the Prepetition First Lien Secured Parties' setoff rights under applicable law and the RAC Credit Agreement.

4.	The UCC Standing Motion even admits that the Prepetition First Lien Secured Parties have a lien on at least $580 million of money market securities that the Debtors held in investment accounts as of the Petition Date. *See* UCC Standing Motion ¶ 5 ("The Committee also contends that, during the Preference Period, and while THC was insolvent, THC transferred unpledged Cash to money market funds in return for money market securities ***to which the Collateral Agents' liens attached***." (emphasis added)); *see also id.* Ex. 4 ¶¶ 4, 42-47, 83-88, 92-95 (proposed complaint alleging same); *cf.* Decl. of Jamere Jackson In Support of Debtors' Petitions and Requests For First Day Relief (May 24, 2020) ("First Day Decl.") (ECF No. 28) ¶ 45 (acknowledging the Prepetition First Lien Secured Parties' interest in investment property, which under the relevant security agreement includes money market securities). The UCC Standing Motion concedes that the Prepetition First Lien Secured Parties' lien exists and seeks, among other relief, standing to bring an adversary proceeding to avoid such admitted lien. *See id.* ¶ 1.

5.	Importantly, whether there is any basis to avoid the Prepetition First Lien Secured Parties' liens can be determined only by way of an adversary proceeding. *See* Fed. R. Bankr. 7001; *cf. In re Whitehall Jewelers Holdings, Inc.*, 2008 WL 2951974, at *6 (Bankr. D. Del. July 28, 2008) (citing *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray Ruffin)*, 530 F.3d 230, 242 (3d Cir. 2008). Therefore, regardless of the filing and ultimate disposition of the UCC Standing Motion, the Prepetition First Lien Secured Parties' admitted liens ***are and will remain valid and***

***not avoided*** unless and until the UCC meets its extraordinary burden to avoid the admitted liens pursuant to an adversary proceeding.

6. This due process right is particularly important here given the Debtors' recent announcement that they are commencing a marketing process to obtain debtor in possession ("DIP") financing, which financing would, of course, need to be approved by the Court after notice and a hearing. The Prepetition First Lien Secured Parties' liens, however, cannot be determined or avoided in the context of a motion to approve DIP financing, as the Prepetition First Lien Secured Parties are entitled to a "fundamentally different, and heightened, level of procedural protections" when determining the validity, priority, or extent of a lien. *In re Mansaray Ruffin*, 530 F.3d at 242. Accordingly, for purposes of the DIP financing process and any proceedings regarding it, the Prepetition First Lien Secured Parties have an uncontested lien on substantially all of the Debtors' cash and investment property, including without limitation the $580 million "to which the Collateral Agents' liens attached." *See* UCC Standing Motion ¶ 5. Moreover, neither the UCC Standing Motion or the allegations in the draft complaint should be allowed to "end run" the UCC's and Debtors' explicit agreement in Third Agreed Order that "nothing … shall alter any applicable standards, burdens of proof or procedures … that any party bears with respect to issues related to adequate protection, including in connection with any DIP Financing Motion, lien validity, or avoidance." *See* Third Agreed Order ¶ 3(k).

7. The Prepetition First Lien Secured Parties expressly reserve all rights, including the right to amend or supplement this Statement on any and all bases.

Dated: September 2, 2020
    Wilmington, Delaware

                                              */s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 651-7700
Email: dabbott@mnat.com

- and -

**LATHAM & WATKINS LLP**

George Davis (admitted *pro hac vice*)
Suzzanne Uhland (admitted *pro hac vice*)
Christopher Harris (admitted *pro hac vice*)
Adam Ravin (admitted *pro hac vice*)
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
E-mail:  George.Davis@lw.com
        Suzzanne.Uhland@lw.com
        Christopher.Harris@lw.com
        Adam.Ravin@lw.com

- and -

Heather Waller (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 777-7700
Facsimile: (312) 993-9767
E-mail:  heather.waller@lw.com

*Counsel to Barclays Bank PLC*

- and -

*/s/ David M. Fournier*
**TROUTMANT PEPPER HAMILTON SANDERS LLP**
David B. Stratton (No. 960)
David M. Fournier (No. 2812)
Evelyn J. Meltzer (No. 4581)
Hercules Plaza
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390

-and-

**ARNOLD & PORTER KAYE SCHOLER LLP**
Michael D. Messersmith (admitted *pro hac vice*)
Michael B. Solow (admitted *pro hac vice*)
Brian J. Lohan (admitted *pro hac vice*)
70 West Madison Street Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

*Co-counsel to the Ad Hoc First Lien Group*