## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: October 6, 2020 at 4:00 p.m. ET**<br>**Hr'g Date: October 13, 2020 at 10:30 a.m. ET** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING CERTAIN DEBTORS TO ENTER INTO SECURITIZATION DOCUMENTS, (II) MODIFYING THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF

The debtors and debtors in possession (collectively, the "**Debtors**," and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned cases hereby file this motion (the "**Motion**") for entry of an Order (I) Authorizing Certain Debtors to Enter into Securitization Documents, (II) Modifying the Automatic Stay, and (III) Granting Related Relief, substantially in the form attached hereto as **Exhibit A** (the "**Securitization Order**"). In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Jamere Jackson in Support of Debtors' Petitions and Requests for First Day Relief* (the "**First Day Declaration**"),[2] filed on May 24, 2020 and the *Declaration of Mark E. Johnson in Support of the Motion of Debtors for Entry of an Order (I) Authorizing Certain Debtors to Enter Into Securitization Documents, (II) Modifying the Automatic Stay, and (III) Granting Related Relief*

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, which are jointly administered for procedural purposes, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] Except as otherwise provided, capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

filed concurrently herewith (the "**Johnson Declaration**").  In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

<u>**JURISDICTION, VENUE AND PREDICATES FOR RELIEF**</u>

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined below) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief requested by this Motion are sections 105(a), 362, 363, and 364(c)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

3.      Pursuant to Rule 9013-1(f) of the Local Bankruptcy Rules, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

<u>**PRELIMINARY STATEMENT**</u>

4.      Debtor Donlen Corporation ("**Donlen Corp**") operates a vehicle leasing and fleet management solutions business in the United States and Canada, which includes purchasing vehicles for its customers on behalf of its non-Debtor subsidiaries and leasing them to its customers.  Donlen Corp generates revenue from fees it earns from (i) its customers for Donlen Corp's fleet management services and (ii) originating and servicing the leases and disposing of

2

vehicles owned by non-Debtor affiliates under the Donlen Servicing Agreements (as defined below).

5.    A critical aspect of Donlen Corp's business model is its ability to finance vehicles for customers, including replacements for currently-leased vehicles and new vehicles purchased for existing customers' fleet expansions or for new customers. Most of Donlen Corp's vehicles have been custom-built for Donlen Corp's customers, and Donlen Corp only orders vehicles after customers have placed orders and are prepared to lease such vehicles immediately upon receipt.

6.    Prior to the Petition Date, the vehicles leased to Donlen Corp's customers were either financed through an asset-backed securitization facility (the "**HFLF Securitization Facility**") issued by non-Debtor affiliate Hertz Fleet Lease Funding LP ("**HFLF**") or one of several separate syndicated facilities with certain lenders (such syndicated facilities, collectively with the HFLF Securitization Facility, the "**Prepetition Donlen ABS Facilities**"). Donlen Corp typically funded the entire purchase price of the vehicles ordered by its customers with its revenues or intercompany loans from The Hertz Corporation ("**THC**"). Newly-acquired vehicles (and the leases associated therewith) were allocated to one of the Prepetition Donlen ABS Facilities and increased the available funding thereunder. Following the addition of such vehicles to the Prepetition Donlen ABS Facilities, additional proceeds were drawn on the relevant facility. Those proceeds were then transferred to Donlen Corp to compensate it for the purchase of the vehicles and often used to repay the amounts advanced via the intercompany loan from THC. Thereafter, Donlen Corp serviced the leases associated with those vehicles and earned a servicing fee on account of that service from the Prepetition Donlen ABS Facilities.

AMERICAS 103257853

The Prepetition Donlen ABS Facilities therefore constituted a key source of liquidity and working capital for Donlen Corp and were critical to the operation of its business.[3]

7.       As a result of the Debtors' chapter 11 filings, one or more amortization events have occurred under the HFLF Securitization Facility and, as a result, collections from lease payments and vehicle dispositions that collateralize the HFLF Securitization Facility are required to be applied exclusively to repay the HFLF Securitization Facility and additional loan proceeds cannot be drawn from the HFLF Securitization Facility.  As a result, Donlen Corp no longer has access to the HFLF Securitization Facility to finance its purchase of vehicles for its customers in the ordinary course of its business.

8.       In consultation with their advisors, the Debtors determined that Donlen Corp's immediate capital need could be met in three different potential ways:

- An unsecured intercompany loan from THC, which would be afforded administrative priority status under the *Final Order (I) Authorizing, but not Directing, Debtors to (A) Continue Use of their Existing Cash Management System, Bank Accounts, Checks and Business Forms, (B) Pay Related Prepetition Obligations, (C) Continue Performance of Intercompany Transactions, and (D) Continue Hedging Practices; (II) Waiving the Section 345(b) Deposit and Investment Requirements; and (III) Granting Related Relief* [D.I. 586] (the "**Final Cash Management Order**").  This would merely shift the capital need from Donlen Corp to its parent, THC.  Donlen Corp has financed fleet purchases with the proceeds of intercompany loans from THC since the Petition Date, creating an intercompany loan balance of approximately $173 million as of the date of this Motion.  This arrangement has put significant stress on THC's own liquidity.

- Debtor-in-possession financing incurred by Donlen Corp which, in the current market, would be comparatively expensive.  Further, any DIP financing at Donlen Corp would likely require the grant of security interests over its assets and transfers of DIP proceeds to non-Debtors.

---

[3]       The Prepetition Donlen ABS Facilities are described in further detail in paragraphs 33-35 of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing, but not Directing, the Debtors to (A) Continue Use of their Existing Cash Management System, Bank Accounts, Checks and Business Forms, (B) Pay Related Prepetition Obligations, (C) Continue Performance of Intercompany Transactions, and (D) Continue Hedging Practices; (II) Waiving the Section 345(b) Deposit and Investment Requirements; and (III) Granting Related Relief* [D.I. 19] (the "**Cash Management Motion**").

AMERICAS 103257853

- A new securitization facility incurred at a newly-formed non-Debtor affiliate of Donlen Corp, which would fund the acquisition of vehicles on a similar basis as the HFLF Securitization Facility in exchange for a security interest in the non-Debtor affiliate's vehicles, the leases related thereto, and the sale proceeds thereof.

9.      The Debtors and their advisors concluded that the third option, a new securitization facility, is in the best interest of the Debtors' estates.  After reaching out to multiple parties regarding the opportunity, the Debtors obtained four proposals from three parties for a new asset-backed securitization facility to be issued by Donlen Fleet Lease Funding LLC, a new bankruptcy remote indirect subsidiary of Donlen Corp (such subsidiary, the "**Issuer**"). After lengthy arm's length negotiations, the Debtors have obtained a commitment from Barclays Bank PLC ("**Barclays**," and together with its successor and assigns, the "**Noteholders**") to purchase through Sheffield Receivables Company, LLC up to $400,000,000 of the Issuer's floating rate asset backed variable funding notes pursuant to a new securitization facility (the "**Postpetition Donlen ABS Facility**") governed by (i) that certain Base Indenture (the "**Base Indenture**") between the Issuer and The Bank of New York Mellon Trust Company, N.A., as the indenture trustee (in such capacity, the "**Indenture Trustee**") and (ii) that certain Series 2020-1 Indenture Supplement among the Issuer, Donlen Corp, as servicer and administrator, DNRS II (as defined below), as initial beneficiary, Barclays Bank PLC, as administrative agent (in such capacity, the "**Administrative Agent**"), certain committed purchasers, conduits purchasers and funding agents for the purchaser groups party thereto, and the Indenture Trustee (the "**Indenture Supplement**," and together with the Base Indenture, the "**Postpetition Donlen ABS Indenture**").

10.      The Postpetition Donlen ABS Facility is fundamentally different from the majority of receivables-securitization programs approved by this and other bankruptcy courts, in

AMERICAS 103257853

which the applicable Debtors were (i) selling an asset of the estate to a non-debtor entity and (ii) asking the court to approve the granting of protective liens and security interests on the Debtors' assets.  Here, because the purchased vehicles are property of the non-Debtor Donlen Trust, the Debtors are not asking the Court for the authorization to transfer any estate assets.  Instead, the Debtors merely request that the Court authorize certain Debtors (Donlen Corp and THC) to enter into ancillary transaction documents pursuant to which (i) Donlen Corp will service certain vehicles and fleet leases allocated to the Pledged SUBI (as defined below) and provide other administrative services to the Issuer in the ordinary course in exchange for market rate fees, (ii) THC will provide, on customary terms, a guaranty of the performance of Donlen Corp's obligations under such transaction documents, in each case in the context of a financing transaction under which a non-Debtor is the sole primary obligor and on substantially similar terms as in the context of the Prepetition Donlen ABS Facilities, and (iii) Donlen Corp will provide the Donlen Limited Guaranty (as defined below), a "bad boy" guaranty that will only be triggered by the occurrence of certain events, including breaches of provisions that are fundamental to the transaction (e.g., gross negligence of Donlen Corp, a bankruptcy filing by the non-Debtor parties to the Securitization Documents, or other actions to impair the Noteholders' liens).

11.    The Postpetition Donlen ABS Facility is a raise of new money by non-Debtors for the benefit of non-Debtors and Debtors, which will allow Donlen Corp to continue providing its clients with a modern and customized fleet and collecting the revenue generated from the corresponding fleet management and servicing fees associated with those vehicles. Providing new vehicles to its customers is essential to Donlen Corp retaining those customers and obtaining new customers. In addition to fees paid to Donlen Corp under the DFLF SUBI Servicing

AMERICAS 103257853

Agreement Supplement (as defined below), available proceeds from the Postpetition Donlen

ABS Facility can be upstreamed to Donlen Corp, which, in each case, will provide needed

capital and permit Donlen Corp to, among other things, repay obligations owed to THC on

account of postpetition intercompany loans for vehicle purchases.  Accordingly, the Debtors are

seeking the relief requested herein.

## RELIEF REQUESTED

12.     By this Motion, pursuant to sections 105(a), 362, 363 and 364(c)(1) of the

Bankruptcy Code, the Debtors request that the Court enter the Securitization Order

(i) authorizing certain Debtors to enter into the Securitization Documents to which they are

party, (ii) granting superpriority administrative claim status to certain claims thereunder, and (iii)

granting related relief.

## LOCAL RULE 4001-2 DISCLOSURES

13.     Local Bankruptcy Rule 4001-2(a)(i) requires a debtor to: (a) recite whether the

proposed form of the financing order contains certain provisions of the type enumerated therein;

(b) identify the location of such provisions in the proposed financing order; and (c) justify the

inclusion of such provisions in the proposed financing order.  *See* Del. Bankr. L.R. 4001-2(a)(i).

In accordance with Local Bankruptcy Rule 4001-2(a)(i), the Debtors hereby disclose the below

provisions:

> a.      *Provisions that grant cross collateralization (Local Bankruptcy Rule 4001-2(a)(i)(A)).*  There are no such provisions.
>
> b.      *Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien (Local Bankruptcy Rule 4001-2(a)(i)(B)).*  There are no such provisions.
>
> c.      *Section 506(c) rights (Local Bankruptcy Rule 4001-2(a)(i)(C)).*  There are no such provisions.

7

d.    *Provisions that immediately grant the prepetition secured creditor liens on the Debtor's claims and causes of action arising under sections 544, 545, 548, and 549 (Local Bankruptcy Rule 4001-2(a)(i)(D)).* There are no such provisions

e.    *Provisions deeming prepetition debt to be postpetition debt (Local Bankruptcy Rule 4001-2(a)(i)(E)).* There are no such provisions.

f.    *Carve-Out (Local Bankruptcy Rule 4001-2(a)(i)(F)).* There are no such provisions.

g.    *Non-Consensual Priming (Local Bankruptcy Rule 4001-2(a)(i)(G)).* There are no such provisions.

h.    *Section 552(b)(1)( rights (Local Bankruptcy Rule 4001-2(a)(i)(H)).* There are no such provisions.

## FACTUAL BACKGROUND

### A.    General Background

14.    On May 22, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"), which are jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 11, 2020, the Office of the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code. [D.I. 392].

15.    Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the First Day Declaration, which is incorporated herein by reference.

AMERICAS 103257853

B.      **Securitization Structure**

        1.      *Purchase and Ownership of Vehicles*

16.      As is described more fully in the Cash Management Motion, and as is customary for fleet management companies, the fleet of vehicles used in Donlen Corp's operations is titled in the name of a Delaware statutory trust, non-Debtor Donlen Trust. The majority of the vehicles are historically purchased by DNRS II LLC ("**DNRS II**"), a wholly-owned non-Debtor subsidiary of Donlen Corp, with the proceeds of a capital contribution from Donlen Corp.  The vehicles are titled in the name of Donlen Trust, which retains legal title to the vehicles.  Once titled in the name of Donlen Trust, vehicles are allocated to either an undivided trust interest (the "**UTI**") in Donlen Trust that is owned by DNRS II or various special units of beneficial interests (each, a "**SUBI**") in Donlen Trust.  The UTI or a SUBI, as the case may be, comprises the beneficial interest in the portfolio of trust assets allocated to the UTI or SUBI.

17.      Upon purchase, newly-acquired vehicles (and the leases associated therewith) are held as property of the UTI before being allocated to a specific SUBI, at which point they become beneficially owned by the holder of such SUBI and, in the case of the HFLF Securitization Facility, became collateral for the noteholders thereunder.  The allocation of additional vehicles to a SUBI increases the value thereof and, in the case of the HFLF Securitization Facility (prior to the occurrence of the amortization event under the HFLF Securitization Facility caused by the filing of these Chapter 11 Cases), increased the amount of capacity available to be borrowed in accordance with an agreed-upon advance rate and borrowing base calculation.  These additional draws, in turn, allowed the non-Debtors prepetition to distribute available cash to Donlen Corp for use in Donlen Corp's business, including the purchase of vehicles for Donlen Corp's lessee-customers and, thus, preserve Donlen Corp's cash.

AMERICAS 103257853

### 2.     *Donlen Servicing Agreements and THC Guaranties*

18.     Donlen Trust leases the vehicles titled in its name to Donlen Corp's customers. Donlen Corp has serviced, and continues to service, those leases in accordance with that certain Amended and Restated Servicing Agreement, dated as of July 31, 2001 (as amended from time to time, the "**Master Servicing Agreement**"), by and between Donlen Trust and Donlen Corp, as servicer. Under the Master Servicing Agreement and certain servicing supplements thereto from time to time (together with the Master Servicing Agreement, the "**Donlen Servicing Agreements**"), Donlen Corp has had, and continues to have, the duty on behalf of Donlen Trust to (i) acquire vehicles, (ii) originate leases, (iii) collect and post payments, (iv) respond to customer inquiries, (v) dispose of returned vehicles, (vi) pay the costs of disposing of the returned vehicles, (vii) obtain new certificates of title, (viii) prepare tax returns, (ix) enforce leases, and (x) perform other associated tasks. Pursuant to section 2.7 of the Master Servicing Agreement, Donlen Trust appointed Donlen Corp as its agent and bailee to retain possession of the leases, certificates of title, and any other related items that from time to time come into possession of Donlen Corp. Each beneficiary of Donlen Trust (including each owner, pledgee, or assignee of the UTI or any SUBI) is a third-party beneficiary of the Master Servicing Agreement.

19.     THC has guaranteed the obligations of Donlen Corp under certain agreements under the Prepetition Donlen ABS Facilities, including the Donlen Servicing Agreements, pursuant to certain performance guaranties entered into prepetition.

### 3.     *Application of Proceeds and Collection Accounts*

20.     In return for its various obligations under the Donlen Servicing Agreements, Donlen Corp has been paid, and continues to be paid, a servicing fee by various non-Debtors. Donlen Corp's duties include billing and collecting lease payments from customers, identifying

the SUBI or UTI to which such payments are required to be allocated, and remitting those payments to the ultimate beneficiary of such SUBI or the UTI (whether a third party investor or DNRS II).  Cash collected from lessees and vehicle dispositions is deposited in Donlen Corp's main concentration account ending in 4979 (the "**Lockbox Account**"), which is governed by that certain Amended Master Lockbox Agreement, dated as of April 12, 2002 (as amended from time to time, the "**Lockbox Agreement**"), by and among JP Morgan (as successor to Bank One, NA), as lockbox bank and agent for the program parties (the "**Lockbox Agent**"), Donlen Corp, and each program party which from time to time becomes a party thereto.  The program parties to the Lockbox Agreement have each acknowledged that such program party has a security interest in and control of the Lockbox Account only to the extent of amounts therein allocable to the SUBI or UTI of such program party and, in any event, such control is limited by the rights and obligations of Donlen Corp under the Lockbox Agreement.  The Lockbox Agreement further provides that the Lockbox Agent acts as agent of the program parties and to accept, hold and process amounts on deposit in the Lockbox Account during the period (if any) during which Donlen Corp's rights to make withdrawals or direct transfers from the Lockbox Account is suspended by a program party in accordance with the terms thereof.

### C.    Postpetition Intercompany Loans

21.    The filing of these Chapter 11 Cases caused an amortization event under the Prepetition Donlen ABS Facilities, causing them to go into runoff mode. This cut off a crucial source of financing for the non-Debtor subsidiaries of Donlen Corp and required THC to provide approximately $173 million in intercompany loans to Donlen Corp up to the date of this Motion to finance the purchase of new vehicles for Donlen Corp's customers. The postpetition obligations owed by Donlen Corp to THC pursuant to these intercompany loans remain

AMERICAS 103257853

outstanding and, if they are unaddressed, will likely result in a strain on THC's own liquidity.

22.    Since the Petition Date, Donlen Corp has originated approximately $175 million of lease units for current customers.  Taking into account Donlen Corp's current level of originated leases and the expected lease originations and vehicle purchases over the next seven months, the Debtors and their financial advisors estimate that, by the end of March 2021, the total capital need for Donlen Corp will approximate $475 million.

23.    As described in more detail in the Johnson Declaration, shortly after the Petition Date, the Debtors began exploring options for Donlen Corp to obtain the capital it needs to operate its business and serve its customers without relying on THC for such capital.  In consultation with Moelis & Company LLC and its other advisors, the Debtors determined that the best path to doing so was obtaining a new asset-backed securitization facility secured by Donlen Trust's vehicles not yet allocated to a Prepetition Donlen ABS Facility.  In June 2020, the Debtors solicited indications of interest from seven parties, including all lenders from the Company's existing HFLF Securitization Facility lending group and other commercial banks, inside and outside the Debtors' capital structure, as well as one placement agent that proposed two different capital market transactions.[4] Of those parties, three submitted a total of four different securitization financing proposals. The Debtors engaged in several rounds of negotiations with each of the parties that led to meaningful improvements of the legal and economic terms of the proposals. After careful consideration and upon the advice of their advisors, the Debtors' board of directors approved the terms of the proposed Postpetition Donlen ABS Facility with Barclays.

---

[4]    The universe of potential lenders in the fleet leasing securitization space is limited when compared to other types of financing.

**D.      Certain Obligations of the Debtors Under the Securitization Documents**

24.      The structure and terms of the Postpetition Donlen ABS Facility will substantively mirror those of the prepetition HFLF Securitization Facility.  The primary source of payment for the Postpetition Donlen ABS Facility will be (i) payments under a pool of fleet leases between non-Debtor Donlen Trust, as lessor, and unaffiliated third-party obligors, as lessees, and (ii) proceeds from the sales of the related vehicles.  Those leases and vehicles will be allocated to a special unit of beneficial interest (the "**Pledged SUBI**") in Donlen Trust that will be owned by the Issuer and pledged as collateral to secure the Postpetition Donlen ABS Facility.  In addition to the Pledged SUBI, the Issuer will pledge its rights under the transaction documents as collateral for the Postpetition Donlen ABS Facility.  A demonstrative showing the various components of the Postpetition Donlen ABS Facility is attached hereto as **Exhibit B**.

25.      As was the case under the Prepetition Donlen ABS Facilities, Donlen Corp will be required to enter into a supplement to the Master Servicing Agreement that is substantially similar to the existing Donlen Servicing Agreements. Donlen Corp will be obligated under the DFLF SUBI Servicing Agreement Supplement  to, among other things, (a) perform its obligations under the Master Servicing Agreement (including to provide an indemnity to Donlen Trust and the trustees of Donlen Trust for liabilities incurred as a result of Donlen Corp's negligent acts or omissions in connection with the performance of its obligations) and (b) indemnify the Issuer (as holder of the Pledged SUBI) from and against losses arising out of (i) the failure of Donlen Corp to comply in any material respect with applicable law with respect to the servicing or collection of any lease or vehicle allocated to the Pledged SUBI, (ii) the failure by Donlen Corp to perform in any material respect its duties or obligations as servicer under the DFLF SUBI Servicing Agreement Supplement, (iii) any dispute, claim, offset, or defense of any

13

lessee to the payment of amounts under its lease by reason of the action or inaction of Donlen Corp, and (iv) the commingling of collections allocable to the Pledged SUBI with any of Donlen Corp's funds.

26.     In addition, pursuant to the DFLF SUBI Servicing Agreement Supplement, Donlen Corp will be obligated to purchase from the Issuer (as holder of the Pledged SUBI) any lease and the related vehicle with respect to which certain representations of Donlen Corp are untrue when made and cannot be remedied.  Donlen Corp will also provide customary indemnities in its capacity as administrator of the Issuer for losses caused by breaches of representation or covenants by Donlen Corp under the Postpetition Donlen ABS Facility.

27.     Donlen Corp will also perform its duties as administrator for the Issuer, and provide other additional services required, under the DFLF Administration Agreement (as defined below). In doing so, Donlen Corp earns certain monthly fees and makes certain indemnities to the Issuer, the Indenture Trustee, individually and on behalf of the Noteholders, pursuant to such agreement.

28.     Donlen Corp will also amend or supplement the existing Lockbox Agreement and related collateral agreements to account for the new Postpetition Donlen ABS Facility.

29.     Further, THC will provide one or more performance guaranties (the "**THC Performance Guaranty**") pursuant to which it will guarantee the performance by Donlen Corp of its obligations under the Securitization Documents.

30.     Finally, Donlen Corp will enter into a "bad boy" guaranty (the "**Donlen Limited Guaranty**") whereby Donlen Corp agrees to pay the losses of the Administrative Agent, the Committed Purchasers, the Conduit Purchasers, and the Funding Agents (as such terms are defined in the Indenture Supplement) or to guarantee the obligations of the Issuer under the

14

Securitization Documents upon the occurrence of certain bad or egregious acts and acts that would otherwise undermine the bankruptcy-remote and special purpose nature of the Issuer, DNRS II and the Donlen Trust.  Such acts include, but are not limited to: (i) the filing of bankruptcy or a similar insolvency proceeding by the Issuer, DNRS II or the Donlen Trust, (ii) fraud, malfeasance, intentional misrepresentation, gross negligence, misappropriation of funds, theft, noncompliance with Requirements of Law (as defined in the Donlen Limited Guaranty), willful misconduct or bad faith by Donlen Corp, DNRS II, Donlen Trust, or the Issuer, (iii) any incurrence of debt or liens by the Issuer other than pursuant to the Securitization Documents, (iv) any failure to vest, or delay in vesting a first priority perfected security interest in certain specified collateral free and clear of Liens, other than Permitted Liens (each as defined in the Base Indenture), and (v) any amendment to the organizational documents and governing documents of the Issuer, DNRS II or the Donlen Trust other than as contemplated under the Securitization Documents or otherwise agreed by the Noteholders.

31.    In connection with the entry into the Postpetition Donlen ABS Facility, the Debtors seek approval of superpriority administrative claims against Donlen Corp and THC in favor of the Issuer, the Indenture Trustee (for itself and for the benefit of the Noteholders), and each Noteholder (together, the "**Indemnitees**"), in each case, with respect to Donlen Corp's obligations under the Donlen Limited Guaranty, and with respect to THC's obligations under the THC Performance Guaranty (such claims, the "**Securitization Superpriority Claims**"), which Securitization Superpriority Claims shall be subject and subordinate only to (i) a carve-out for payment of fees and expenses of the Clerk of this Court, the U.S. Trustee, and any persons or firms retained by the Debtors and the Committee approved in connection with any debtor-in-possession financing approved by the Court (the "**Carve-Out**"), (ii) the Prepetition Secured

AMERICAS 103257853

Parties' 507(b) Claims,[5] (iii) the Casualty Superpriority Claims,[6] and (iv) any claims granted superpriority status under any debtor-in-possession financing facility authorized pursuant to section 364 of the Bankruptcy Code in these Chapter 11 Cases (clauses (i) through (iv), collectively, the "**Senior Superpriority Claims**").

### E.    Documentation

32.    The transaction documents that would effectuate the Postpetition Donlen ABS Facility include, but are not limited to, the following agreements and instruments (as amended, restated, supplemented, or otherwise modified from time to time together, the "**Securitization Documents**"):

- Base Indenture, substantially in the form attached hereto as **<u>Exhibit C</u>**;

- Indenture Supplement, substantially in the form attached hereto as **<u>Exhibit D</u>**;

- Counterpart to the Lockbox Agreement among the Indenture Trustee and the Lockbox Agent, attached as **<u>Exhibit E</u>**;

- SUBI Servicing Agreement Supplement to the Amended and Restated Servicing Agreement, among Donlen Trust, DNRS II, the Issuer, and Donlen Corp (the "**DFLF SUBI Servicing Agreement Supplement**"), substantially in the form attached hereto as **<u>Exhibit F</u>**;

---

[5]    "**Prepetition Secured Parties' 507(b) Claims**" has the meaning (i) set forth in the *Agreed Interim Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection and Related Relief to Prepetition Secured Parties* [Docket No. 204], the *Second Agreed Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection and Related Relief to Prepetition Secured Parties* [D.I. 559], the *Third Agreed Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection and Related Relief to Prepetition Secured Parties* [D.I. 1131] and (ii) superpriority adequate protection claims granted to prepetition secured parties pursuant to any future order entered by the Court in these Chapter 11 Cases in a manner generally consistent with the superpriority adequate protection claims granted to prepetition secured parties in the orders referenced in the preceding clause (i).

[6]    "**Casualty Superpriority Claims**" has the meaning set forth in the *Order Temporarily Resolving Certain Matters Related to the Master Lease Agreement, Setting a Schedule for Further Litigation Related Thereto in 2021 and Adjourning Hearing on the Debtors' Motion for Order Rejecting Certain Unexpired Vehicle Leases Effective Nunc Pro Tunc to June 11, 2020 Pursuant to Sections 105 and 365(a) of the Bankruptcy Code (Docket No. 390) Sine Die* [D.I. 805].

AMERICAS 103257853

- Administration Agreement among the Issuer, Donlen Corp, and the Indenture Trustee (the "**DFLF Administration Agreement**"), substantially in the form attached hereto as **Exhibit G**;

- SUBI Supplement to the Origination Trust Agreement, among DNRS II, the Issuer, Donlen Corp, U.S. Bank National Association, and U.S. Bank Trust National Association, substantially in the form attached hereto as **Exhibit H**;

- Amended and Restated Limited Liability Company Agreement of the Issuer, substantially in the form attached hereto as **Exhibit I**;

- Contribution and Assignment Agreement between DNRS II and the Issuer, substantially in the form attached hereto as **Exhibit J**;

- Joinder Agreement to Interparty Agreement by the Indenture Trustee and accepted and agreed to by Donlen Corp, substantially in the form attached hereto as **Exhibit K**;

- Back-Up Administration Agreement, among Donlen Corp, the Issuer, Lord Securities Corporation and the Indenture Trustee, substantially in the form attached hereto as **Exhibit L**;

- Back-Up Servicing Agreement, among Donlen Trust, DNRS II, Donlen Corp, the Issuer, the Indenture Trustee and Wells Fargo Bank, National Association, substantially in the form attached hereto as **Exhibit M**;

- Collateral Agency Supplement to the Collateral Agency Agreement, among Donlen Trust, Donlen Corp, DNRS II, the Issuer and the Indenture Trustee, substantially in the form attached hereto as **Exhibit N**;

- Donlen Limited Guaranty, substantially in the form attached hereto as **Exhibit O**;

- THC Performance Guaranty, substantially in the form attached hereto as **Exhibit P**;

- Fee Letter, executed by and among the Issuer, Donlen Corp, the Administrative Agent, the Funding Agent with respect to each Purchaser Group (as defined in the Indenture Supplement) and each Committed Purchaser (the "**Donlen Fee Letter**"), substantially in the form attached hereto as **Exhibit Q**;

- Work Fee Letter, executed by Barclays Bank PLC and agreed and accepted by DNRS II (the "**Work Fee Letter**"), attached hereto as **Exhibit R**;

AMERICAS 103257853

- Fee Letter, executed by and among the Issuer and Donlen Corp, as Class RR Committed Purchaser and Funding Agent (as defined in the Indenture Supplement), substantially in the form attached hereto as **Exhibit S**; and

- Any other document necessary to effectuate the Postpetition Donlen ABS Facility, as each may be amended, restated, supplemented, or otherwise modified from time to time.

F.    **Pricing, Fees and Expenses**

33.    In connection with the Securitization Documents, DNRS II and/or the Issuer has agreed to pay certain fees to the Trustee and the initial Noteholders on the terms set forth in the Postpetition Donlen ABS Facility, pursuant to the Donlen Fee Letter and other Securitization Documents.  The key economic terms of the Postpetition Donlen ABS Facility include the following:

- Initial Commitment Size: $200 million;

- Maximum Commitment Size: $400 million;

- A gross blended advance rate (which is the rate at which the Committed Note Purchasers (as defined in the Indenture Supplement) will fund against the contracted value of the collateral) of approximately 85.00% with respect to the Class A Notes and the Class B Notes (in each case as defined in the Indenture Supplement);

- A required reserve account of 0.75% of the Maximum Commitment Size, as adjusted for cash and certain permitted investments and deficiencies (if any);

- A program fee rate of (i) 1.875% from the closing of the Postpetition Donlen ABS Facility to the day prior to the Commitment Termination Date (as defined in the Indenture Supplement) and (ii) 3.375% on and after the Commitment Termination Date

- An unused fee rate ranging from 0.60% to 0.65%, for each class of notes issued pursuant to the Postpetition Donlen ABS Indenture, with the default rate set at (i) 1.50% per annum for the Class A Notes and the Class B Notes and (ii) 5.75% per annum for the Class RR Notes (as defined in the Indenture Supplement); [7]

- Certain additional fees set forth in the Donlen Fee Letter, including (i) an upfront fee of 0.5% of the Initial Commitment Size, to be paid at the closing of the Postpetition Donlen ABS Facility, (ii) a subsequent fee if the applicable

---

[7] Notwithstanding the above, the Class C Notes will be issued at a 0.0% rate.

AMERICAS 103257853

commitments are further increased post-closing up to the Maximum Commitment Size, and (iii) an administrative agent fee.

34.    In addition to the foregoing terms, the Donlen Fee Letter agreed to in connection with the Postpetition Donlen ABS Facility contemplates certain additional structuring fees owed to the Administrative Agent, the terms of which are commercially sensitive and proprietary in nature. The Debtors therefore propose to file the Donlen Fee Letter attached hereto as **Exhibit Q** in redacted form pursuant to the *Motion of Debtors for Entry of an Order Authorizing the Debtors to File Under Seal and Redact Confidential Information in the Exhibits to the Donlen Securitization Motion* filed concurrently herewith.  The Debtors have also agreed to pay the fees, costs, and disbursements of the Agent's counsel in connection with the Securitization Documents pursuant to the Work Fee Letter.  The Debtors submit that the fees and other payment terms under the Securitization Documents are fair, reasonable, and customary for financings of this type.

## BASIS FOR RELIEF

### A.    Entry into the Securitization Documents Is Authorized Under Sections 363(b) and 105 of the Bankruptcy Code.

35.    The Debtors are authorized to enter into the Securitization Documents pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code allows a debtor, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Debtors' decisions to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986) (implicitly

19

adopting the "sound business purpose" test of *Lionel Corp.* and requiring good faith); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business purpose" test in the *Abbotts Dairies* decision).

36.    Once a debtor articulates a reasonable basis for its business decision, "courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task. Delaware courts have said that it may be accomplished by showing either irrationality or inattention.").

37.    The Debtors further submit that entry into the Securitization Documents to which they are party as a standard component of the Postpetition Donlen ABS Facility is also authorized under section 105(a) of the Bankruptcy Code, which affords the court expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' estates. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings") (citation omitted); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir.

AMERICAS 103257853

2010) ("It is well settled that the court's power under § 105(a) is broad.") (citation omitted); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to 'craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain.'") (citations omitted). Accordingly, the Debtors submit that their entry into the Securitization Documents and performance thereunder is also authorized under section 105(a) of the Bankruptcy Code.

38.     The Debtors have determined, in their business judgment, that entering into the Securitization Documents to effectuate the entry into the Postpetition Donlen ABS Facility by non-Debtor affiliates and the resulting capital made available by the Postpetition Donlen ABS Facility is the best available option to address Donlen Corp's capital needs under the circumstances.  As noted above, the Debtors believe that entering into the Securitization Documents will yield a significant benefit to their estates because they will be able to upstream significant amounts of capital to Donlen Corp at a fraction of the costs they would have incurred if attempting to raise such financing at the Debtors' level due to the limited pool of unencumbered assets available, the expensive market for DIP financing, and the resulting need to transfer cash from Debtors to non-Debtor affiliates. Further, this will relieve Donlen Corp of the need to further borrow from THC and will result in upstreamed funds being used by Donlen Corp to repay obligations owed to THC. Accordingly, the Debtors submit that the relief requested in this Motion constitutes the sound exercise of the Debtors' business judgment, is in the best interest of the Debtors, their estates, their creditors, and all parties in interest, and thus should be granted by this Court under sections 105(a) and 363(b) of the Bankruptcy Code.

AMERICAS 103257853

**B.      The Indemnitees Should Be Granted Superpriority Administrative Claims Pursuant to Section 364(c)(1) of the Bankruptcy Code**

39.      In addition, amounts owing from Donlen Corp and THC to the Indemnitees  on account of the applicable Debtor's obligations, including indemnities and other contingent obligations under the Securitization Documents (including the THC Performance Guaranty and the Donlen Limited Guaranty) are, if owed, essentially extensions of credit to the Debtors until they are paid.  As a condition to the entry into the Postpetition Donlen ABS Facility, Barclays required that the obligations of Donlen Corp pursuant to the Donlen Limited Guaranty and of THC pursuant to the THC Performance Guaranty owing to the Indemnitees be granted superpriority administrative claim status, pursuant to section 364(c) of the Bankruptcy Code. As agreed among the parties to the Postpetition Donlen ABS Facility, the Securitization Superpriority Claims will be junior to the Senior Superpriority Claims.

40.      Pursuant to section 364(c) of the Bankruptcy Code, the Court may authorize the grant of a superpriority claim, after notice and a hearing, upon a finding that the debtors are "unable to obtain unsecured credit allowable under section 503(b)(l)" of the Bankruptcy Code. 11 U.S.C. § 364(c). To satisfy the requirements of section 364(c) of the Bankruptcy Code, courts consider whether (a) the debtor made reasonable effort, but failed, to obtain unsecured credit under sections 364(a) and 364(b) of the Bankruptcy Code, (b) the credit transaction benefits the debtor as necessary to preserve estate assets, and (c) the terms of the credit transaction are fair, reasonable, and adequate, given the circumstances of the debtor and proposed lender. *See In re Republic Airways Holdings Inc.*, 2016 Bankr. LEXIS 1927, at *11 (Bankr. S.D.N.Y. 2016); *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312–13 (Bankr. D. Del. 2011); *In re Aqua Assoc.*, 123 B.R. 192, 195–99 (Bankr. E.D. Pa. 1991).   However, section 364 imposes no duty to seek credit from every possible lender. *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987)

22

(citation omitted). A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Reading Tube Indus.*, 72 B.R. at 331-32 (holding that a debtor must make an effort to show that less onerous postpetition financing was unavailable); *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (finding that a debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

41.    Whether a debtor has made sufficient efforts to obtain credit on an unsecured basis is determined on a case-by-case basis, and debtors are granted particular flexibility when time is of the essence. *In re Reading Tube Indus.*, 72 B.R. at 332. When few lenders are likely to be able and willing to extend the necessary credit, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (approving section 364(d) financing and finding that other financing was unavailable when debtor approached three other lenders), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117 (N.D. Ga. 1989); *see also In re Ames Dep't Stores, Inc.*, 115 B.R. at 40 (approving financing facility and holding that the debtor made reasonable efforts to satisfy the standards of section 364(c) of the Bankruptcy Code where it approached four lending institutions, was rejected by two, and selected the most favorable of the two offers it received). Finally, in analyzing whether section 364(c) relief is appropriate, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties." *See In re Ames Dep't Stores, Inc.*, 115 B.R. at 37 (citations omitted).

AMERICAS 103257853

42.     The Securitization Superpriority Claims meet the standard imposed under section 364(c) and should be approved thereunder. The Securitization Superpriority Claims are among the concessions that the Debtors were required to make to enter into the Securitization Documents and the Postpetition Donlen ABS Facility and, for the reasons stated above, entry into the Postpetition Donlen ABS Facility is necessary to preserve the value of the Debtors' estates. *See*, Johnson Declaration, at 14.  *See also, In re W. Pac. Airlines, Inc.*, 223 B.R. 567, 572 (Bankr. D. Colo. 1997) (approving postpetition financing agreement under section 364(c) and (d), because of the benefit that the financing would provide to the debtors' estates).  Moreover, as set forth in the Johnson Declaration, in connection with the marketing process for ABS financing for non-Debtors, none of the potential lenders were willing to facilitate the issuance of asset-backed securities that were equal to or more favorable than those provided by Barclays under the Postpetition Donlen ABS Facility.  Additionally, the terms of the Postpetition Donlen ABS Facility are favorable to the Debtors because the new debt being incurred is at the level of isolated non-Debtor affiliates, and thus meet the "fair, reasonable, and adequate" requirement under section 364(c). *See In re Farmland Indus., Inc.*, 294 B.R. 855, 885-86 (Bankr. W.D. Mo. 2003) (finding that amendments to DIP facility were "fair, reasonable, and adequate" even though they represented a "hard bargain" because "[c]hapter 11 post-petition financing is fraught with dangers for creditors," and so "debtors may have to enter into hard bargains to acquire (or continue to receive) the funds needed for reorganization") (internal quotation marks omitted). Finally, the obligations of the Debtors that give rise to the Securitization Superpriority Claims are contingent and limited in nature and, therefore, unlikely to accumulate in a significant amount.  Based on the foregoing, the Securitization Superpriority Claims meet the requirements of section 364(c) and should be granted by the Court.

24

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

43.    To implement the foregoing successfully, and given the nature of the relief requested herein, the Debtors respectfully request a finding that (x) the notice requirements under Bankruptcy Rules 2002, 4001, 6004(a) and 9014 are met and (y) the 14-day stay under Bankruptcy Rules 6004(a) and 6004(h) is waived.

## NOTICE

44.    The Debtors have provided notice of the hearing and the relief requested in the Securitization Motion to: (i) the U.S. Trustee; (ii) the U.S. Notes Agent; (iii) the Senior Credit Agreement Agent; (iv) the agent under the L/C Facility; (v) the administrative agent under the ALOC Facility; (vi) the successor trustee under the Promissory Notes; (vii) the U.S. ABS Agent; (viii) the indenture trustee under the HFLF ABS Notes; (ix) the administrative agent and collateral agent under the U.S. Vehicle RCF; (x) the indenture trustee and collateral agent under the Hertz Canadian Securitization Notes; (xi) the lender under the Donlen Canada Securitization Program; (xii) the indenture trustee and collateral agent under the 2L Notes; (xiii) the Ad Hoc Noteholder Group; (xiv) the Official Committee of Unsecured Creditors; (xv) the Internal Revenue Service; (xvi) the Securities and Exchange Commission; (xvii) the United States Attorney for the District of Delaware; (xviii) the state attorneys general for all states in which the Debtors conduct business; (xix) the Airport Authorities that are counterparties to the Agreements or counsel to such Airport Authorities; and (xx) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

AMERICAS 103257853

## NO PRIOR REQUEST

45.    No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant the relief requested in this Motion, enter the Securitization Order, and award such other and further relief as is just and proper.

AMERICAS 103257853

Dated: September 22, 2020

*/s/ Brett M. Haywood*
**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Brett M. Haywood (No. 6166)
Christopher M. De Lillo (No. 6355)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Collins@rlf.com
Knight@rlf.com
Haywood@rlf.com
DeLillo@rlf.com
Noble@rlf.com

—and—

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:     (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
Andrew T. Zatz (admitted *pro hac vice*)
Andrea Amulic (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:     (212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com
azatz@whitecase.com
andrea.amulic@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
Telephone:     (312) 881-5400
jzakia@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Aaron Colodny (admitted *pro hac vice*)
Andrew Mackintosh (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone:     (213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
amackintosh@whitecase.com
doah.kim@whitecase.com

*Co-Counsel to the Debtors and*
*Debtors-in-Possession*

AMERICAS 103257853