# EXHIBIT 3

Page 1

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

- - -

```
KELLY A. GRADY,                    :
                                   : CIVIL ACTION
                                   : NOVEMBER TERM,
2015
        Plaintiff,                 :
                                   : NO. 151103380
    vs.                            :
                                   :
THE HERTZ CORPORATION; HERTZ       :
RENT-A-CAR PHILADELPHIA INTL.      :
AIRPORT; JOHN DOE(s),              :
                                   :
        Defendants.                :
```

- - -

October 16, 2016

- - -

Oral deposition of JOSEPH MICHAEL JAUSSI, taken pursuant to notice, held at 1845 Walnut Street, Suite 938, Philadelphia, Pennsylvania, commencing at 11:56 a.m., on the above date, before Jennifer P. Miller, RPR, CCR, CRR, and Notary Public for the Commonwealth of Pennsylvania, State of Delaware and the State of New Jersey.

Page 36

1   authorized, whether it was a final payment,
2   what it was?
3       A.   Rephrase the question.
4       Q.   You're here as a corporate designee
5   for Hertz --
6       A.   It was important because I sent an
7   email, right?
8       Q.   You're here as a corporate designee
9   for Hertz, correct?
10      A.   Correct.
11      Q.   You're here to testify as to what
12  Hertz knows; you understand that?
13      A.   Correct.
14      Q.   Also you're here also as a fact
15  witness to testify as what you know; do you
16  understand that?
17      A.   I don't really understand the fact
18  witness piece and I know there was discussion
19  in the beginning what I was, but...
20      Q.   You're testifying to things you know
21  and also what Hertz knows; do you understand
22  that?
23      A.   Understood.
24      Q.   You're telling me that Hertz does not

Page 37

1  know that what the $2500 roughly was for on
2  7/15/2013 that Ms. Grady made on her TD Bank
3  card ending in 0353 that was sent to Hertz?
4      A.   So what I know is that I inquired
5  about what the 2500 was, was it is a partial
6  collection, was it a full payment, was it all
7  that was authorized on the contract; and that's
8  what I inquired about.
9      Q.   So you're telling me, as you sit here
10 today, you're speaking, just so you know, as
11 Hertz's voice.  You're the corporate designee,
12 the person most knowledgeable from Hertz to
13 testify as to certain things.  You've been
14 identified as someone to speak to and you've
15 identified that there was and an email, that
16 you, as general manager, sent to Oklahoma City
17 billing to determine whether or not the 2500 on
18 7/15 was a final bill, partial payment, full
19 payment or what it is, correct?
20     A.   Correct.
21     Q.   And as you sit here today, you're
22 telling me that you personally do not know
23 whether or not that payment was a final
24 payment, or that payment was authorized, or

Page 38

1  that payment cleared, or that payment was a
2  partial payment or a full payment, correct?
3      A.   Correct.  ==All they stated from my==
4  ==recollection is that it was purged.  It's been==
5  ==purged.==  There's no further information that
6  could be provided because that contract had
7  been purged.
8      Q.   Who told you that?
9      A.   The respondee of the email that I
10 sent.
11     Q.   Who was the respondee?
12     A.   Vickie, I want to say Bright, but I'm
13 not 100 percent sure.
14     Q.   B-R-I-G-H-T?
15     A.   I can't spell it.  I believe it's
16 Vickie Bright.
17     Q.   What's her role?
18     A.   Corporate billing manager, I don't
19 know exactly what her roles and
20 responsibilities are.
21     Q.   Why didn't you print that email and
22 bring it here today pursuant to the request for
23 documents in your Notice of Deposition?
24     A.   Because my lawyer was on all

Page 69

1  theft package and all the overdue notes
2  associated with the transaction.
3      Q.   Do you know the name of the
4  individuals who were involved with putting
5  together the theft package regarding Ms. Kelly
6  Grady?
7      A.   Say -- state the question again.
8      Q.   Name the individuals who are involved
9  in putting together the theft package relating
10 to Ms. Kelly Grady?
11     A.   It's my understanding that Rich
12 Livingston was on vacation at the time.  Ken
13 Graeber put the package together after he
14 received all the pertaining information within
15 the package for Oklahoma City.
16     Q.   We deposed Mr. Rich Livingston
17 Tuesday.  He indicated that he doesn't put the
18 package together.  He just gets it from
19 Oklahoma City and then basically just couriers
20 it to the police.
21          Is it your understanding that
22 the corporate security manager or assistant
23 corporate security manager actually puts the
24 theft package together?  Or is it your

Page 70

1  understanding that the theft package is put
2  together in Oklahoma City and then sent to the
3  corporate security manager at the location
4  where the car was allegedly taken from?
5              MR. WOLF:  I'm going to object
6         to the characterization.  His testimony
7         will speak for itself.
8              You can answer.
9              THE WITNESS:  So it's my
10        understanding that Oklahoma City generates
11        the packet and all the pertaining
12        documents within it, feeds Ken Graeber or
13        Rich Livingston, right, and Ken Graeber or
14        Rich Livingston essentially print, file,
15        and go seek a police report claim or case
16        number.
17 BY MR. MALIFOY:
18     Q.   Okay.  So the theft package is
19 already completed in Oklahoma City before it's
20 sent to the corporate security manager at the
21 Hertz location where the car was allegedly
22 taken from, correct?
23     A.   That's my understanding, correct.
24     Q.   So who specifically by name do you