IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>The Hertz Corporation, *et al.*, | Chapter 11<br><br>Case No. 20-11218 (MFW)<br><br>(Jointly Administered)<br><br>Hearing Date: June 10, 2021 at 10:30 a.m.<br><br>Re: D.I. 4754 |

**GAMCO INVESTORS, INC.'S LIMITED OBJECTION TO CONFIRMATION
OF DEBTORS' PLAN CONTAINING THIRD-PARTY RELEASES**

GAMCO Investors, Inc. and its affiliates (collectively, "**GAMCO**") file this limited objection (the "**Objection**") to confirmation of Debtors' *First Modified Third Amended Joint Chapter 11 Plan of Reorganization of the Hertz Corporation and Its Debtor Affiliates* (the "**Operative Plan**") (D.I. 4754) based on the scope of third-party releases in Article VIII.D of the Operative Plan.[1]

**Introduction**

1. GAMCO currently holds common stock of Hertz Global Holdings, Inc. ("**Hertz**" or the "**Company**") and has continued to hold Company stock throughout the pendency of these Chapter 11 Cases. GAMCO has been actively involved from the inception of these Chapter 11 Cases on the basis that equity security holders of Hertz ("**Equity Holders**") should receive appropriate value for their interests through these Chapter 11 Cases.

2. GAMCO files this limited Objection to confirmation of the Operative Plan because the third-party releases in Article VIII.D – entitled "Releases by Holders of Claims and Interests"

---

[1] Capitalized terms undefined herein shall have the meaning ascribed to them in the Plan.

(the "**Third-Party Releases**") – purport to release pre-petition litigation claims (including potential federal securities law claims) (the "**Litigation Claims**") by Equity Holders against Hertz and its former directors and officers. There is no basis to release pending or potential Litigation Claims by existing Equity Holders based on the nominal consideration the Operative Plan provides – *i.e.*, $1.53 per share and up to 3% of the reorganized Company – and certainly no basis to release such claims by *former* Equity Holders who receive no consideration.

3. No prior version of any plan in these Chapter 11 Cases included third-party releases of claims by existing and potentially former Equity Holders. In in all prior versions, Equity Holders were not Releasing Parties. For example, on April 21, 2021, *Debtors filed the Fourth Modified Second Amended Joint Chapter 11 Plan of Reorganization of the Hertz Corporation and Its Debtor Affiliates* (D.I. 4077), which provided holders of "Section 510(b) Claims" (formerly Class 9 claims) were not entitled to vote and presumed to reject the Prior Plan. Accordingly, by definition, such holders were not Releasing Parties under the Third-Party Releases.

4. On May 12, 2021, Debtors filed the Operative Plan that, for the first time in these Chapter 11 Cases, newly classified Equity Holders' interests as "Subordinated 510(b) Interests" falling in Class 11 (Existing Hertz Parent Interest), thereby entitling them to vote on the Operative Plan and purportedly qualifying them as Releasing Parties. Moreover, the Disclosure Statement Order (D.I. 4111) provided claimants who filed Proofs of Claim based on Litigation Claims were entitled to vote on the Operative Plan but not receive a distribution.

5. To be clear, GAMCO does not object to the terms of the Operative Plan other than to the scope of the Third-Party Releases to the extent the Third-Party Releases and related provisions purport to bar pre-petition Litigation Claims by current and former Equity Holders under circumstances contrary to applicable law.

**Release Terms and Limited Objection**

6.     Section VIII.D of the Operative Plan provides, in relevant part:

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged each Debtor, Reorganized Debtor, and other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, DIP Financing, Equity Commitment, Interim Fleet Financing Facility, DFLF Facility, Canada Fleet Financing Facility, HVF Facility Documents, HVF II Facility, HVF II Facility Documents, Donlen Sale, HHN Restructuring, HIL Facility, the Commitment Letter, the Donlen Canada Securitization Facility, the Australian Securitization Facility, the Lombard Vehicle Financing Facility, the Second Lien Note Documents, the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, the Plan Support Agreement, the Equity Commitment Documents, any Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

7.     The definition of "Released Party" in the Operative Plan includes:

(i) the Debtors; (ii) the Reorganized Debtors; (iii) each of the Debtors' Estates; (iv) each of the Plan Sponsors; (v) the Committee; (vi) each of the Committee Members, solely in its capacity as a Committee Member; (vii) each of the Equity Commitment Parties; (viii) the Unsecured Notes Trustees; (ix) the 7.000% Unsecured Promissory Notes Trustee; (x) the ABS Released Parties; (xi) the Plan Support Parties; and (xii) with respect to each of the foregoing Entities in clauses (i) through (xi), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys,

accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in its capacity as such.

8. The definition of "Releasing Party" in the Operative Plan includes:

all Holders of Claims or Interests that vote to accept the Plan [and] all Holders of Claims or Interests that are entitled to vote on the Plan who vote to reject the Plan and do not affirmatively opt out of the third party releases provided for in Article VIII.D by checking the box on the applicable Ballot indicating that they opt not to grant such releases in the Plan submitted on or before the Voting Deadline.

9. Based on the foregoing, the Third-Party Releases and attendant definitions purport to release all claims (including Litigation Claims) by any current Equity Holder against Hertz and any of its current or former directors and officers. It is unclear whether Debtors intend to argue that the Litigation Claims of former Equity Holders who sold prior to the Voting Record Date (April 21, 2021) are similarly released, but the Disclosure Statement Order appears to contemplate such release by *at least* former Equity Holders who filed Proofs of Claim based on Litigation Claims (*see* D.I. 4111 ¶ 21).

10. However, the Third-Party Releases here are contrary to settled law for at least three reasons, all of which should be viewed through the prism of this Court's recognition that that "[w]hile the Third Circuit has not barred third party releases, it has recognized that they are the exception, not the rule." *In re Washington Mutual, Inc.*, 442 B.R. 314, 351 (Bankr. D. Del. 2011) (citing *In re Continental Airlines*, 203 F.3d 203, 212–14 (3d Cir. 2000).

11. *First*, as this Court has recognized, "any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases." *Washington Mutual*, 442 B.R. at 355. Those who are not entitled to vote or fail to return a ballot cannot manifest intent. *Id*. Therefore, the Third-Party Releases are impermissible to the extent Debtors intend the releases to apply to (i) current Equity Holders who

4

voted against the Operative Plan or failed to return a ballot; or (ii) former Equity Holders who were not entitled to vote on the Operative Plan.

12. *Second*, this Court has recognized that if "shareholders are not getting any distribution under the Plan, there is no consideration for the releases of third parties." *Id*. Here it is unclear whether the very nominal consideration received by current Equity Holders – $1.53 per share and 3% of a company they previously owned – is adequate to support the Third-Party Releases. Rather than debate the current value when compared to pre-petition losses, the better and more equitable course is simply to exclude from the Third-Party Releases any pre-petition Litigation Claims by Equity Holders.

13. *Third,* "there is no basis for granting third party releases of the Debtor's officers and directors" where "[t]he only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan." *Id*. at 354. Here there is no basis for the Third-Party Releases to bar current or former Equity Holders' Litigation Claims against Hertz's directors and officers (both current and former) where it is clear they undertook activities in these Chapter 11 Cases that were "nothing more than what is required of directors and officers of debtors in possession." *Id*.

14. For the foregoing reasons, GAMCO objects to confirmation of the Operative Plan to the extent the Third-Party Releases and related provisions purport to bar Litigation Claims by current and former Equity Holders.

Dated:   June 1, 2021                              Respectfully submitted,

FARNAN LLP


*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com


Andrew J. Entwistle (*pro hac vice*)
ENTWISTLE & CAPPUCCI LLP
401 Congress Ave., Suite 1170
Austin, Texas 78701
(512) 710-5960
aentwistle@entwistle-law.com


Joshua K. Porter (*pro hac vice*)
ENTWISTLE & CAPPUCCI LLP
230 Park Avenue, 3rd Floor
New York, NY 10169
(212) 894-7282
jporter@entwistle-law.com

*Counsel for GAMCO Investors, Inc.
and its affiliates*